1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   WHITNEY JONES ROY, Cal Bar No. 211541
2  wroy@sheppardmullin.com
   VALERIE E. ALTER, Cal Bar No. 239905
3  valter@sheppardmullin.com
   JAMES M. GLASSMAN, Cal Bar No. 342135
4  jglassman@sheppardmullin.com
   350 South Grand Avenue, 40th Floor
5  Los Angeles, California 90071
   Telephone:  213.620.1780
6  Facsimile:  213.620.1398

7  *Attorneys for Kedrin E. Van Steenwyk in*
   *her capacities as Successor Trustee of the*
8  *Donald H. Van Steenwyk and Elizabeth A.*
   *Van Steenwyk 1996 Revocable Trust and*
9  *Survivor's Trust and as Executor of the*
   *Will of Elizabeth Van Steenwyk, and*
10 *Adelaida Cellars, Inc.*

11 *[Additional counsel listed after signature blocks]*

12                UNITED STATES DISTRICT COURT

13       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

14

15 MATTHEW D. VAN STEENWYK,          Case No. 2:24-cv-07401-FLA (AJRx)
   Individually, as Trustee and Beneficiary
16 of The Matthew Van Steenwyk GST    **DEFENDANTS' REQUEST FOR**
   Trust and The Matthew Van Steenwyk **JUDICIAL NOTICE IN SUPPORT**
17 Issue Trust, and as Co-Trustee of The **OF MOTION TO STAY**
   Gretchen Marie Van Steenwyk-Marsh
18 GST Trust and The Gretchen Marie Van  Judge:  Fernando L. Aenlle-Rocha
   Steenwyk-Marsh Issue Trust and      Courtroom:  6B
19 GRETCHEN VAN STEENWYK-
   MARSH,                              Trial Date:  Not Set

20          Plaintiffs,               Hearing Date: February 28, 2025
                                      Hearing Time: 1:30 p.m.
21     v.

22 KEDRIN E. VAN STEENWYK,
   Individually, as Successor Trustee of the
23 Donald H. Van Steenwyk and Elizabeth
   A. Van Steenwyk 1996 Revocable Trust
24 and Survivor's Trust, and as Executor of
   the Estate of Elizabeth Van Steenwyk;
25 DANIEL CARTER; KIERAN
   DUGGAN; PAMELA PIERCE;
26 JOSEPH MCCOY; S. WESTLEY
   SHEDD; STEPHEN ORR; GORDON
27 THOMSON; TRENTON THORNOCK;
   ROBERT KERR; ADELAIDA
28 CELLARS, INC., a California

corporation; APPLIED
TECHNOLOGIES ASSOCIATES, INC.,
a California corporation; SCIENTIFIC
DRILLING INTERNATIONAL, INC. a
Texas corporation; and ATA RANCHES,
INC., a Delaware corporation,

        Defendants.

SMRH:4903-5227-8789

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF MOTION TO STAY

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Defendants Kedrin E. Van Steenwyk in her individual capacity, in her capacity as Successor Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust and Survivor's Trust, in her capacity as Executor of the Will of Elizabeth Van Steenwyk, and Adelaida Cellars, Inc. (collectively, "Defendants"), hereby request that the Court take judicial notice of the following court records, true and correct copies of which are attached hereto, in support of Defendants' concurrently filed Motion to Stay:

**Exhibit A:**  A copy of the San Luis Obispo Superior Court's docket as of December 11, 2024 from the case styled *Matthew Van Steenwyk v. Kedrin Van Steenwyk et al.*, Case No. 23CVP-0146.

**Exhibit B:**  A complaint dated April 28, 2023 filed in the San Luis Obispo Superior Court case styled *Matthew Van Steenwyk v. Kedrin Van Steenwyk et al.*, Case No. 23CVP-014.

**Exhibit C:**  A second amended complaint dated December 8, 2023 filed in the San Luis Obispo Superior Court case styled *Matthew Van Steenwyk v. Kedrin Van Steenwyk et al.*, Case No. 23CVP-014.

**Exhibit D:**  A court order regarding a motion for a bond, motion to stay, and demurrer dated November 15, 2023 filed in the San Luis Obispo Superior Court case styled *Matthew Van Steenwyk v. Kedrin Van Steenwyk et al.*, Case No. 23CVP-014.

**Exhibit E:**  An order to show cause dated May 22, 2024 filed in the San Luis Obispo Superior Court case styled *Matthew Van Steenwyk v. Kedrin Van Steenwyk et al.*, Case No. 23CVP-014.

**Exhibit F:**  A request for dismissal dated August 27, 2024 filed in the San Luis Obispo Superior Court case styled *Matthew Van Steenwyk v. Kedrin Van Steenwyk et al.*, Case No. 23CVP-014.

**Exhibit G:**   A motion for reconsideration dated December 8, 2023 filed in the San Luis Obispo Superior Court case styled *Matthew Van Steenwyk v. Kedrin Van Steenwyk et al.*, Case No. 23CVP-014.

**Exhibit H:**   A copy of an exhibit marked Plaintiff's Trial Exhibit 259 from the trial in the U.S. District Court for the Central District of California styled *Matthew D. Van Steenwyk v. Kedrin E. Van Steenwyk, et al.*, No. 2:20-cv-02375-FLA-AFM.

## I.   EXHIBITS A THROUGH H ARE SUBJECT TO JUDICIAL NOTICE BECAUSE THEY ARE PUBLICLY-AVAILABLE COURT RECORDS.

The Court may take judicial notice of any "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Applying this rule, courts routinely find that "[p]ublic records, including documents on file in federal court, are appropriate for judicial notice."  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132-33 (9th Cir. 2012); *see Porter v. Ollison*, 620 F.3d 952, 954-55 & n.1 (9th Cir. 2010) (noting that it is appropriate to take judicial notice of state court dockets and filings too).

Here, Exhibits A through H are all subject to judicial notice because they are court records from two cases:  (1) the San Luis Obispo Superior Court case *Matthew Van Steenwyk v. Kedrin Van Steenwyk et al.*, Case No. 23CVP-0146 (the "SLO Litigation") and (2) the U.S. District Court for the Central District of California case *Matthew D. Van Steenwyk v. Kedrin E. Van Steenwyk, et al.*, No. 2:20-cv-02375-FLA-AFM (the "2020 Litigation").

**Exhibit A** is relevant to show the breadth of Plaintiffs Matthew Van Steenwyk and Gretchen Van Steenwyk-Marsh's (collectively, "Plaintiffs") scorched-earth direct/derivative lawsuit in the SLO Litigation while related litigation was pending in this Court in the 2020 Litigation.  It is also relevant to show that Plaintiffs repeatedly refuse to await court orders before taking matters into

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF MOTION TO STAY

their own hands—i.e., amending complaints or seeking leave to do so before dismissal motions can be heard.

**Exhibit B** is relevant to show Plaintiffs' initial theory of this case and evolution of it throughout the SLO Litigation and ultimately in this Court after Plaintiffs voluntarily dismissed the SLO Litigation.

**Exhibit C** is relevant to show Plaintiffs' evolving theory of this case from an unconsummated sale of certain ranches into theories that overlapped with pending litigation in the 2020 Litigation.  It is also relevant to show how the operative complaint in the SLO Litigation was nearly identical to the complaint filed in this Court after the SLO Litigation was voluntarily dismissed, suggesting that the SLO Litigation was effectively transplanted to this federal forum.

**Exhibit D** is relevant to show that the court in the SLO Litigation found Plaintiffs' initial theory of the case based on an unconsummated sale of certain ranches to be so lacking in merit that it ordered Plaintiffs to post a bond.

**Exhibit E** is relevant to show the oppressive pre-answer discovery Plaintiffs conducted in the SLO Litigation (that is likely to be repeated here absent a stay) and the compounding waste of judicial and litigant resources to date by Plaintiffs' decision to voluntarily dismiss the SLO Litigation and start from scratch here.

**Exhibit F** is relevant to show the timing of the voluntary dismissal of the SLO Litigation—shortly after receiving a partial judgment in the 2020 Litigation— which yields the reasonable inference that Plaintiffs were willing to discard one and a half years' worth of litigation in state court to refile in a federal forum where they received a favorable jury verdict.  This yields the reasonable inference that Plaintiffs would not be damaged by a stay in this case.

**Exhibit G** is relevant to show Plaintiffs' procedural maneuvering and willingness to drop some or all of their claims to gain a perceived litigation advantage.  This further reveals that Plaintiffs would not be damaged by a stay in this case.

- 3 -

1    **Exhibit H** is relevant to show that Matthew had notice of his allegedly new

2   grapes for farming cost theory during the 2020 Litigation.  The document also bears

3   a BATES stamp "MVS-0116 . . .", suggesting the document was not only presented

4   as an exhibit at trial but also produced during discovery in the 2020 Litigation.

5   **II.    CONCLUSION**

6    For the foregoing reasons, the Court should take judicial notice of Exhibits A

7   through H.

8   Dated:  December 13, 2024

9    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

10

11    By  _____
                        /s/ Whitney Jones Roy
12                         WHITNEY JONES ROY
13                          VALERIE E. ALTER
                          JAMES M. GLASSMAN
14

15    Attorneys for Kedrin E. Van Steenwyk in her
     capacities as Successor Trustee of the Donald H.
16   Van Steenwyk and Elizabeth A. Van Steenwyk 1996
     Revocable Trust and Survivor's Trust and as
17   Executor of the Will of Elizabeth Van Steenwyk,
                    and Adelaida Cellars, Inc.
18   Dated:  December 13, 2024

19    DECHERT LLP

20

21    By  _____
                         /s/ Jay Bhimani
22                            JAY BHIMANI
23    STEVEN E. BIZAR (*pro hac vice forthcoming*)
     MICHAEL S. DOLUSIO (*pro hac vice forthcoming*)
24    PETER J. MCGINLEY (*pro hac vice forthcoming*)

25    Attorneys for Kedrin E. Van Steenwyk in her
                    individual capacity.
26

27

28

- 4 -

Additional Counsel from Caption Page

JAY BHIMANI (SBN 267689)
jay.bhimani@dechert.com
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, California 90071-2032
Telephone: +1 213 808 5700
Facsimile: +1 213 808 5760

STEVEN E. BIZAR (*pro hac vice forthcoming*)
steven.bizar@dechert.com
MICHAEL S. DOLUISIO (*pro hac vice forthcoming*)
michael.doluisio@dechert.com
PETER J. MCGINLEY (*pro hac vice forthcoming*)
peter.mcginley@dechert.com
DECHERT LLP
2929 Arch Street
Philadelphia, Pennsylvania 19104-2808
Telephone:   +1 215 994 4000
Facsimile:   +1 215 994 2222

*Attorneys for Defendant Kedrin E. Van Steenwyk, in her individual capacity*

## **ATTESTATION**

I, Whitney Jones Roy, hereby attest, in accordance with Local Rule 5-4.3.4(a)(2)(i), that all other signatories listed and on whose behalf this filing is submitted, concur in the filings content and have authorized the filing.

Dated:  December 13, 2024

By     _____/s/ Whitney Jones Roy_____
WHITNEY JONES ROY

# EXHIBIT A

## Case Information

## Matthew Van Steenwyk vs. Kedrin Van Steenwyk

23CVP-0146

Location
SLO - Paso Robles - Civil

Case Category
Civil

Case Type
CV - Complaint

Case Sub Type

Case Filed Date
5/1/2023

Judge
Judge Kelley, Michael C

Case Status
Closed (Closed)

## Parties 15

| Type | Name | Nickname/Alias | Attorneys |
|------|------|----------------|-----------|
| Plaintiff | Matthew D. Van Steenwyk | | Matthew D. Umhofer |
| Defendant | KMBG, LLC | | Timothy W Fredricks |
| Defendant | Adelaida Cellars, Inc. | | Timothy W Fredricks |
| Defendant | Applied Technologies Associates, Inc | | Johnny L Antwiler |
| Defendant | ATA Ranches, Inc. | | Johnny L Antwiler |
| Defendant | Daniel Carter | | Johnny L Antwiler |
| Defendant | Kieran Duggan | | Johnny L Antwiler |
| Defendant | Joseph McCoy | | Johnny L Antwiler |
| Defendant | Steve Orr | | Johnny L Antwiler |
| Defendant | Pamela Pierce | | Johnny L Antwiler |
| Defendant | S. Westley Shedd | | Johnny L Antwiler |
| Defendant | Gordon Thomson | | Johnny L Antwiler |
| Defendant | Kedrin E. Van Steenwyk | | Timothy W Fredricks |
| Real Party in Interest | Applied Technologies Associates, Inc. | | |
| Real Party in Interest | ATA Ranches, Inc. | | |

## Hearings 32

| Date/Time | Hearing Type | Judge | Location | Result |
|-----------|-------------|-------|----------|--------|
| 6/27/2023 08:30 AM | Ex Parte Hearing | Assigned Judge Garrett, Ginger E | Paso Robles Department 2 | Held |
| 9/6/2023 09:00 AM | Case Management Conference | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 11/14/2023 09:00 AM | Motion | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 11/14/2023 09:00 AM | Reservation | Judge Kelley, Michael C | Paso Robles Department 2 | |
| 11/14/2023 09:00 AM | Reservation | Judge Kelley, Michael C | Paso Robles Department 2 | |
| 11/14/2023 09:00 AM | Reservation | Judge Kelley, Michael C | Paso Robles Department 2 | |
| 11/14/2023 09:00 AM | Demurrer | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 11/14/2023 09:00 AM | Motion | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 11/21/2023 09:00 AM | Demurrer | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - At Request of Counsel* |
| 11/21/2023 09:00 AM | Reservation | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - No Moving Documents Filed* |
| 11/21/2023 09:00 AM | Reservation | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - At Request of Counsel* |

| Date/Time | Hearing Type | Judge | Location | Result |
|---|---|---|---|---|
| 1/9/2024 09:01 AM | Motion | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 2/6/2024 09:00 AM | Case Management Conference Court Set | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 2/6/2024 09:01 AM | Motion for Discovery | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 2/6/2024 09:01 AM | Motion for Discovery | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 2/6/2024 09:01 AM | Motion for Discovery | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 2/6/2024 09:01 AM | Motion for Discovery | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 3/5/2024 09:01 AM | Motion | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - At Request of Counsel* |
| 3/5/2024 09:01 AM | Motion | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - At Request of Counsel* |
| 3/12/2024 09:01 AM | Demurrer | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - At Request of Counsel* |
| 3/12/2024 09:01 AM | Motion to Strike | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - At Request of Counsel* |
| 3/12/2024 09:01 AM | Demurrer | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 3/12/2024 09:01 AM | Demurrer | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 6/4/2024 09:00 AM | Order to Show Cause | Judge Kelley, Michael C | Paso Robles Department 2 | Continued Court's Motion |
| 6/24/2024 09:00 AM | Case Management Conference Court Set | Judge Kelley, Michael C | Paso Robles Department 2 | Held |
| 9/10/2024 09:00 AM | Order to Show Cause | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - Case Dismissed* |
| 9/10/2024 09:00 AM | Case Management Conference Court Set | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - Case Dismissed* |
| 9/10/2024 09:01 AM | Demurrer | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - Case Dismissed* |
| 9/10/2024 09:01 AM | Demurrer | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - Case Dismissed* |
| 9/10/2024 09:01 AM | Motion | Judge Kelley, Michael C | Paso Robles Department 2 | *Canceled - Case Dismissed* |
| 1/21/2025 09:01 AM | Motion | Judge Kelley, Michael C | Paso Robles Department 2 | |
| 1/21/2025 09:01 AM | Motion | Judge Kelley, Michael C | Paso Robles Department 2 | |

## Events 354

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 5/1/2023 | Service | Service of Complaint & Summons | - | - |
| 5/1/2023 | Filing | Civil Case Cover Sheet Filed | | Civil Case Cover Sheet Filed.pdf |
| 5/1/2023 | Filing | Complaint Filed | | Complaint filed.pdf |
| 5/1/2023 | Filing | Summons Filed | | Summons Filed.pdf |
| 5/2/2023 | Filing | Mailed/Emailed Notice of Hearing. | | NOA & CMC w/P2 Hybrid Hearing Instructions.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS-J.McCoy.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS-KMBG.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS-Orr.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS-ATA.pdf |
| 5/26/2023 | Filing | Proof of Service - Substituted Filed | | POS-Thomson.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS-ATA Ranches.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS-Thomson.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS-Pierce.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS-Duggan.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS -Shedd.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS-Orr.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS- Adelaida Cellars.pdf |
| 5/26/2023 | Filing | Proof of Service Filed | | POS-Carter.pdf |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 5/26/2023 | Filing | Proof of Service Filed | | POS-van Steenwyk.pdf |
| 6/8/2023 | Filing | Declaration Filed | DECLARATION OF JOHNNY L. ANTWILER (Declarations) | Declaration Filed.pdf |
| 6/8/2023 | Filing | Declaration Filed | Dec of Daniel Carter | Declaration Filed of Daniel Carter.pdf |
| 6/8/2023 | Filing | Motion Filed | PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 800(c) BY APPLIED TECHNOLOGIES ASSOCIATES, INC. AND ATA RANCHES, INC. (Motions) | Motion Purs to CCC800(c)by Applied Tech & ATA Ranch.pdf |
| 6/12/2023 | Filing | Request for Judicial Notice Filed | ISO Mtn to Stay and/or Dismiss | Req for Jud Ntc.pdf |
| 6/12/2023 | Filing | Demurrer Filed | $435.00 x 3 Defts | 77283Demurrer00bf7b3.pdf |
| 6/12/2023 | Filing | Declaration Filed | Dec of Tricker ISO Mtn to Stay and/or Dismiss | 77283Declarat03c5ee1.pdf |
| 6/12/2023 | Filing | Motion to Stay Filed | Mtn to Stay and/or Dismiss | 77283Motionto02338cb.pdf |
| 6/12/2023 | Filing | Declaration Filed | Dec of Tricker ISO Demurrer | 77283Declarat04919b3.pdf |
| 6/12/2023 | Filing | Notice of Errata | NOTICE OF ERRATA TO CORECT DECLARATION OF DANIEL CARTER BY APPLIED TECHNOLOGIES ASSOCIATES, INC. AND ATA RANCHES, INC. (Notices) | 77275NOTICEOF00a6dc0.pdf |
| 6/15/2023 | Filing | Proposed Order. | [PROPOSED] ORDER ON DEMURRER TO PLAINTIFFS COMPLAINT BY D&O DEFENDANTS (Orders) | |
| 6/15/2023 | Filing | Declaration Filed | DECLARATION OF JOHNNY L. ANTWILER (Declarations) | 77507DECLARAT0187149.pdf |
| 6/15/2023 | Filing | Proof of Electronic Service | Proof Of Electronic Service (Comment) | 77507ProofOfE03339db.pdf |
| 6/15/2023 | Filing | Demurrer Filed | NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFFS COMPLAINT BY D&O DEFENDANTS (Comment) | 77507NOTICEOF0005313.pdf |
| 6/26/2023 | Filing | Declaration Filed | Declaration of Diane H. Bang | Declaration Filed.pdf |
| 6/26/2023 | Filing | Opposition Filed | | Opposition Filed.pdf |
| 6/26/2023 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 6/26/2023 | Filing | Ex-Parte Application Received (Hearing) | Ex Parte Application to Shorten Time for Motion Pursuant to California Corporations Code Section 800(c) | Exparte Application Filed.pdf |
| 6/27/2023 | Hearing | Ex Parte Hearing | - | - |
| 6/27/2023 | Hearing | Ex Parte Hearing | - | - |
| 6/27/2023 | Filing | Ex-parte request is | denied. | *No Documents* ⓘ |
| 6/27/2023 | Filing | Ex-Parte Order Filed | Denied | Ex-Parte Order Filed.pdf |
| 7/21/2023 | Filing | Motion to Quash Filed | | Motion to Quash Filed.pdf |
| 7/21/2023 | Filing | Declaration Filed | DECLARATION OF JOHNNY L. ANTWILER | Declaration Filed.pdf |
| 7/21/2023 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 7/31/2023 | Filing | Notice of Joinder Filed | DEFENDANTS JOINDER IN MOTION TO QUASH DEPOSITION SUBPOENAS (Joinder) | Notice of Joinder Filed.pdf |
| 8/16/2023 | Filing | Proof of Service Filed | Proof of Service | 7_2023-08-16 Proof of Service.pdf |

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 8/16/2023 | Filing | Declaration Filed | OF J. ANTHONY KING ISO PLTs MO TO COMPEL F/RESPONSES FROM DEFT KEDRIN VAN STEENWYK, KMBG, LLC, AND ADELAIDA CELLARS, INC. TO REQ FOR POD, SET ONE, AND SANCTIONS; EXHIBITS A-D | Dec of J.Anthony King ISO Plt Mo to Compel f/responses to Req for POD , Set One..pdf |
| 8/16/2023 | Filing | Separate Statement | PLAINTIFF MATTHEW VAN STEENWYKS SEPARATE STATEMENT OF FACTS IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES FROM ADELAIDA CELLARS, INC. TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE | Plt Separate Statement ISO Mo to Compel Responses from Adelaida Cellars to Req for POD , Set One..pdf |
| 8/16/2023 | Filing | Separate Statement | PLT MATTHEW VAN STEENWYKS SEPARATE STATEMENT OF FACTS ISO MO TO COMPEL F/RESPONSES FROM KEDRIN VAN STEENWYK TO REQ FOR POD, SET ONE | Plt Van Steenwyk's Separate Statement ISO Mo to Compel F/Resp to Req for POD, Set One.pdf |
| 8/16/2023 | Filing | Motion to Compel Discovery Filed | PLT MO TO COMPEL F/RESPONSES FROM DEF KEDRIN VAN STEENWYK, KMBG, LLC, AND ADELAIDA CELLARS, INC. TO REQ FOR PROD OF DOC, SET ONE, AND REQ FOR SANCTIONS | Plt Mo to Compel f/Responses to Req for Prod of Doc - Set 1.pdf |
| 8/16/2023 | Filing | Proposed Order. | [PROPOSED] ORDER GRANTING PLAINTIFFS MOTION TO COMPEL FURTHER RESPONSES FROM DEF. TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE, AND REQUEST FOR MONETARY SANCTIONS | |
| 8/16/2023 | Filing | Separate Statement | PLAINTIFF MATTHEW VAN STEENWYKS SEPARATE STATEMENT OF FACTS ISO MO TO COMPEL FURTHER RESPONSES FROM KMBG, LLC TO REQ FOR POD, SET ONE | PLAINTIFF MATTHEW VAN STEENWYKS.pdf |
| 8/22/2023 | Filing | Separate Statement | Daniel Carter | Separate Statement.pdf |
| 8/22/2023 | Filing | Proposed Order. | | |
| 8/22/2023 | Filing | Separate Statement | Joseph McCoy | Separate Statement.pdf |
| 8/22/2023 | Filing | Separate Statement | Wesley Shedd | Separate Statement.pdf |
| 8/22/2023 | Filing | Separate Statement | Steve Orr | Separate Statement.pdf |
| 8/22/2023 | Filing | Separate Statement | Gordon Thomson | Separate Statement.pdf |
| 8/22/2023 | Filing | Declaration Filed | Declaration of Anthony King | Declaration Filed.pdf |
| 8/22/2023 | Filing | Proof of Electronic Service | Proof of Service Filed | Proof of Service.pdf |
| 8/22/2023 | Filing | Case Management Statement Filed | Case Management Statement Filed (Statements) | 81238CaseMana0067fe0.pdf |
| 8/22/2023 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 8/22/2023 | Filing | Separate Statement | Pamela Pierce | Separate Statement.pdf |
| 8/22/2023 | Filing | Separate Statement | Kieran Duggan | Separate Statement.pdf |
| 8/22/2023 | Filing | Separate Statement | Applied Technologies | Separate Statement.pdf |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 8/22/2023 | Filing | Case Management Statement Filed | Case Management Statement Filed | 2023-08-21 Case Management Statement.pdf |
| 8/22/2023 | Filing | Motion to Compel Production Filed | Motion to Compel Further Responses to Request for Production of Documents from Applied Tech. ATA Ranches, Daniel Carter, Steve Orr, Gordon Thomson, Kieran Duggan, Joseph McCoy, Wesley Shedd & Pamela Pirce | Motion to Compel Production Filed.pdf |
| 8/22/2023 | Filing | Separate Statement | ATA Ranches | Separate Statement.pdf |
| 8/23/2023 | Filing | Separate Statement | Kedrin E Van Steenwyk, Inc | Separate Statement.pdf |
| 8/23/2023 | Filing | Proposed Order. | | |
| 8/23/2023 | Filing | Separate Statement | Adelaida Cellars, Inc | Separate Statement.pdf |
| 8/23/2023 | Filing | Separate Statement | KMBG, LLC | Separate Statement.pdf |
| 8/23/2023 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 8/23/2023 | Filing | Declaration Filed | Declaration of Anthony King | Declaration Filed.pdf |
| 8/23/2023 | Filing | Motion to Compel Answers to Interrogatories Filed | Motion to Compel Further Responses to Form Interrogatories from Kedrin Van Steenwyk, KMBG & Adelaida Cellars | Motion to Compel Answers to Interrogatories Filed.pdf |
| 8/28/2023 | Filing | Case Management Statement Filed | | Case Management Statement Filed.pdf |
| 9/6/2023 | Hearing | Case Management Conference | - | - |
| 9/6/2023 | Hearing | Case Management Conference | - | - |
| 9/6/2023 | Filing | Proposed Order. | | |
| 9/6/2023 | Filing | Separate Statement | Wesley Shedd | Separate Statement.pdf |
| 9/6/2023 | Filing | Separate Statement | Kieran Duggan | Separate Statement.pdf |
| 9/6/2023 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 9/6/2023 | Filing | Separate Statement | Pamela Pierce | Separate Statement.pdf |
| 9/6/2023 | Filing | Party makes a video appearance. | Diane Bang appearing with Matthew Umhofer; Richard Trickler appearing with Johnny Antwiler. | *No Documents* ⓘ |
| 9/6/2023 | Filing | Notice is waived. | | *No Documents* ⓘ |
| 9/6/2023 | Filing | Separate Statement | Daniel Carter | Separate Statement.pdf |
| 9/6/2023 | Filing | Separate Statement | ATA Ranches | Separate Statement.pdf |
| 9/6/2023 | Filing | Separate Statement | Gordon Thomson | Separate Statement.pdf |
| 9/6/2023 | Filing | Further Case Management statements | are due within 15 days of future Case Management Conference. | *No Documents* ⓘ |
| 9/6/2023 | Filing | Advance Jury Fee Paid | Advance Jury Fee Paid | 2023-09-06 MVS Notice of Posting Jury Fee.pdf |
| 9/6/2023 | Filing | The Court is advised as to the status of the case. | | *No Documents* ⓘ |
| 9/6/2023 | Filing | The Court orders case re-assigned for all purposes to | Hon. Michael C. Kelley. | *No Documents* ⓘ |
| 9/6/2023 | Filing | The Court | hears from counsel as to the history of the case. | *No Documents* ⓘ |
| 9/6/2023 | Filing | Separate Statement | Steve Orr | Separate Statement.pdf |
| 9/6/2023 | Filing | Separate Statement | Applied Technologies Associates | Separate Statement.pdf |
| 9/6/2023 | Filing | Declaration Filed | Declaration of J. Anthony King | Declaration Filed.pdf |
| 9/6/2023 | Filing | Separate Statement | Joseph McCoy | Separate Statement.pdf |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 9/6/2023 | Filing | Motion to Compel Answers to Interrogatories Filed | Form Interrogatories further Responses from Applied Tech. ATA Ranches, Daniel Carter, Steve Orr, Gordon Thomson, Kieran Duggan, Joseph McCoy, Wesley Shett & Pamela Pirce | Motion to Compel Answers to Interrogatories Filed.pdf |
| 9/6/2023 | Filing | The Court | sets Case Management Conference 02/07/2024 9:00 a.m. on its own motion. | *No Documents* ⓘ |
| 9/19/2023 | Filing | Notice of Change of Address Filed | | Notice of Change of Address Filed.pdf |
| 10/10/2023 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 10/10/2023 | Filing | Amended Complaint Filed | First Amended Complaint | Amended complaint filed.pdf |
| 10/31/2023 | Filing | Opposition Filed | PLAINTIFFS OPPOSITION TO APPLIED TECHNOLOGIES ASSOCIATES, INC.S AND ATA RANCHES, INC.S MOTION PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 800(c) | 4_Plaintiffs Opp to Section 800 Motion.pdf |
| 10/31/2023 | Filing | Declaration Filed | DEC OF DIANE H. BANG ISO PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION TO STAY AND/OR DISMISS | 3_Decl of D. Bang ISO Motion to Stay.pdf |
| 10/31/2023 | Filing | Opposition Filed | PLAINTIFFS OMNIBUS OPPOSITION TO DEFENDANTS DEMURRERS | 1_MVS Opp to Demurrers.pdf |
| 10/31/2023 | Filing | Proof of Electronic Service | Proof Of Electronic Service | 7_Proof of Service.pdf |
| 10/31/2023 | Filing | Opposition Filed | PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION TO STAY AND/OR DISMISS | 2_Plaintiffs Opp to Motion to Stay.pdf |
| 10/31/2023 | Filing | Declaration Filed | DEC OF MATTHEW VAN STEENWYK ISO PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 800(c) | 5_Decl of MVS ISO Opp to 800 Motion.pdf |
| 10/31/2023 | Filing | Declaration Filed | DEC OF DIANE H. BANG ISO PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 800(c) | 6_Decl of D. Bang ISO Opp to 800 Motion.pdf |
| 11/6/2023 | Filing | Reply Filed | | Reply Filed.pdf |
| 11/6/2023 | Filing | Reply Filed | REPLY IN SUPPORT OF DEMURRERS TO PLAINTIFFS COMPLAINT | 86150REPLYINS000051f.pdf |
| 11/6/2023 | Filing | Reply Filed | ISO MOTION TO STAY AND/OR DISMISS THIS ACTION DUE TO EARLIER-FILED FEDERAL ACTION | 86150REPLYINS018735b.pdf |
| 11/13/2023 | Filing | Declaration Filed | DECLARATION OF RICHARD P. TRICKER IN SUPPORT OF DEFENDANTS MOTION TO STRIKE FIRST AMENDED COMPLAINT (Declarations) | 86561DECLARAT039ae5c.pdf |
| 11/13/2023 | Filing | Demurrer Filed - After 1st Appearance | DEFENDANTS NOTICE OF DEMURRERS AND DEMURRERS TO PLAINTIFFS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES | 86561DEFENDAN00c85e0.pdf |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 11/13/2023 | Filing | Motion to Strike Filed | DEFENDANTS NOTICE OF MOTION AND MOTION TO STRIKE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES (Appearances) | Motion to Strike Filed.pdf |
| 11/13/2023 | Filing | Declaration Filed | DECLARATION OF RICHARD P. TRICKER IN SUPPORT OF DEFENDANTS DEMURRER TO FIRST AMENDED COMPLAINT (Declarations) | 86561DECLARAT025b4aa.pdf |
| 11/14/2023 | Hearing | Reservation | - | - |
| 11/14/2023 | Hearing | Reservation | - | - |
| 11/14/2023 | Hearing | Reservation | - | - |
| 11/14/2023 | Hearing | Demurrer | - | - |
| 11/14/2023 | Hearing | Motion | - | - |
| 11/14/2023 | Hearing | Motion | - | - |
| 11/14/2023 | Hearing | Reservation | - | - |
| 11/14/2023 | Hearing | Reservation | - | - |
| 11/14/2023 | Hearing | Reservation | - | - |
| 11/14/2023 | Hearing | Demurrer | - | - |
| 11/14/2023 | Hearing | Motion | - | - |
| 11/14/2023 | Hearing | Motion | - | - |
| 11/14/2023 | Filing | Party makes a video appearance. | Timothy Fredricks and Matthew Umhofer are present this date. Richard Tricker is also present on behalf of Defendant, Kedrin Van Steenwyk. | *No Documents* ⓘ |
| 11/14/2023 | Filing | Counsel argue the matter. | | *No Documents* ⓘ |
| 11/14/2023 | Filing | Private Court Reporter | Jodie Hale CSR #8638, with First Legal Depositions, is present this date. | *No Documents* ⓘ |
| 11/14/2023 | Filing | Matter to stand submitted | forthwith. | *No Documents* ⓘ |
| 11/14/2023 | Filing | Party makes a video appearance. | Timothy Fredricks and Matthew Umhofer are present this date. Richard Tricker is also present on behalf of Defendant, Kedrin Van Steenwyk. | *No Documents* ⓘ |
| 11/14/2023 | Filing | Counsel argue the matter. | | *No Documents* ⓘ |
| 11/14/2023 | Filing | Private Court Reporter | Jodie Hale CSR #8638, with First Legal Depositions, is present this date. | *No Documents* ⓘ |
| 11/14/2023 | Filing | Counsel argue the matter. | | *No Documents* ⓘ |
| 11/14/2023 | Filing | Private Court Reporter | Jodie Hale CSR #8638, with First Legal Depositions, is present this date. | *No Documents* ⓘ |
| 11/14/2023 | Filing | Party makes a video appearance. | Timothy Fredricks and Matthew Umhofer are present this date. Richard Tricker is also present on behalf of Defendant, Kedrin Van Steenwyk. | *No Documents* ⓘ |
| 11/14/2023 | Filing | Matter to stand submitted | forthwith. | *No Documents* ⓘ |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 11/14/2023 | Filing | Matter to stand submitted | forthwith. | *No Documents* ⓘ |
| 11/15/2023 | Filing | Ruling on submitted matter. | Motion for Bond is granted. Motion to Stay is Dismissed. Demurrer is moot. Hearing held 11/142023. | Ruling on submitted matter_Hearing held 11/14/2023.pdf |
| 11/17/2023 | Filing | Request Filed | Request to Withdraw Motion | Notice.pdf |
| 11/21/2023 | Hearing | Reservation | - | - |
| 11/21/2023 | Hearing | Reservation | - | - |
| 11/21/2023 | Hearing | Demurrer | - | - |
| 11/21/2023 | Hearing | Reservation | - | - |
| 11/21/2023 | Hearing | Reservation | - | - |
| 11/21/2023 | Hearing | Demurrer | - | - |
| 11/28/2023 | Filing | Demurrer Filed | Applied Technologies & ATA Ranches, Inc. | 87410Demurrer0003178.pdf |
| 11/28/2023 | Filing | Declaration Filed | Dec of Antwiler ISO Demurrers by D&O Defts & Applied Tech/ATA Ranches | 87410Declarat02fe493.pdf |
| 11/28/2023 | Filing | Declaration Filed | Dec of Antwiler ISO Demurrers by D&O and Applied Tech/ATA Ranches | 87410Declarat03609ca.pdf |
| 11/28/2023 | Filing | Demurrer Filed | D&O Defendants (x7) | 87410Demurrer019e23b.pdf |
| 12/1/2023 | Filing | Proposed Order. | | |
| 12/1/2023 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 12/4/2023 | Filing | Notice of Hearing Filed | DEFENDANTS NOTICE OF HEARING Demurrer | 87708DEFENDAN00a5c74.pdf |
| 12/6/2023 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 12/6/2023 | Filing | Objections Filed | | Objections Filed.pdf |
| 12/8/2023 | Filing | Proposed Order. | PROPOSED ORDER ON PLAINTIFFS MOTION FOR LEAVE TO AMEND COMPLAINT | |
| 12/8/2023 | Filing | Motion to Amend the Pleadings Filed | PLAINTIFFS NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT | Motion for Leave to Amend Complaint.pdf |
| 12/8/2023 | Filing | Proof of Electronic Service | Proof Of Electronic Service | 2023-12-08 Proof of Service.pdf |
| 12/8/2023 | Filing | Declaration Filed | DECLARATION OF DIANE H. BANG IN SUPPORT OF PLAINTIFFS MOTION FOR RECONSIDERATION OF IMPOSITION OF BOND PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 800(c) | Declaration of Diane Bang.pdf |
| 12/8/2023 | Filing | Motion Filed | PLAINTIFFS NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF IMPOSITION OF BOND PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 800(c) | Motion for Reconsideration re Bond.pdf |
| 12/8/2023 | Filing | Proposed Order. | PROPOSED ORDER ON PLAINTIFFS MOTION FOR RECONSIDERATION OF IMPOSITION OF BOND PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 800(c) | |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 12/8/2023 | Filing | Declaration Filed | DECLARATION OF DIANE BANG IN SUPPORT OF PLAINTIFFS MOTION FOR LEAVE TO AMEND COMPLAINT | Declaration of Diane Bang ISO Motion to Amend.pdf |
| 12/15/2023 | Filing | Miscellaneous Minute Order | | Misc Mo (OPS).pdf |
| 12/15/2023 | Filing | Notice of Hearing Filed | 3-5-24 Demurrers (x2) | 88508DEFENDAN00cb231.pdf |
| 12/18/2023 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 12/18/2023 | Filing | Stipulation and Order Filed | Request for Dismissal | Stipulation and Order Filed.pdf |
| 12/26/2023 | Filing | Opposition Filed | | Opposition Filed.pdf |
| 12/26/2023 | Filing | Declaration Filed | Declaration of J. Anthony King | Declaration Filed.pdf |
| 12/26/2023 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 12/27/2023 | Filing | Order Filed | | Order Filed.pdf |
| 1/2/2024 | Filing | Reply Filed | REPLY IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENAS (Comment) | 89284REPLYINS00824fa.pdf |
| 1/9/2024 | Hearing | Motion | - | - |
| 1/9/2024 | Hearing | Motion | - | - |
| 1/9/2024 | Filing | Notice is waived. | *No Documents* ⓘ | |
| 1/9/2024 | Filing | Declaration Filed | Dec of Antwiler ISO Opp to Mtn to Compel Further Responses from Applied Tech, ATA Ranches, Daniel Carter, Steve Orr, Gordon Thomson, Kieran Duggan, Joseph McCoy, Wesley Shedd & Pamela Pirce | 89732Declarat02a4f52.pdf |
| 1/9/2024 | Filing | Opposition Filed | Opp to Compel Further Responses to RFP from Applied Tech, ATA Ranches, Daniel Carter, Steve Orr, Gordon Thomson, Kieran Duggan, Joseph McCoy, Wesley Shedd & Pamela Pirce | 89732Oppositi01fe3f3.pdf |
| 1/9/2024 | Filing | Hearing is confirmed as previously set. | *No Documents* ⓘ | |
| 1/9/2024 | Filing | Opposition Filed | Opp to Plts Mtn to Compel Fur Responses to FORM ROGS from Applied Tech, ATA Ranches, Daniel Carter, Steve Orr, Gordon Thomson, Kieran Duggan, Joseph McCoy & Pamela Pirce | 89732Oppositi00f5dc6.pdf |
| 1/9/2024 | Filing | Oral motion | to Combine All Motions to be Heard at the Same time by Plaintiff is deferred. | *No Documents* ⓘ |
| 1/9/2024 | Filing | Opposition Filed | DEFENDANTS Kedrin Van Steenwyk, Adelaida Cellars and KMBG COMBINED OPPOSITION TO PLAINTIFFS MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION | Opp re RFP.pdf |
| 1/9/2024 | Filing | Declaration Filed | DEC OF RICHARD P. TRICKER ISO DEFENDANTS COMBINED OPPOSITION TO PLAINTIFFS MTN TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION | Dec Re Opp RFP.pdf |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 1/9/2024 | Filing | Opposition Filed | DEFENDANTS Kedrin Van Steenwyk, KMBG & Adelaida Cellars COMBINED OPPOSITION TO PLAINTIFFS MOTION TO COMPEL FURTHER RESPONSES TO FORM INTERROGATORIES | Opp Re Form Rogs.pdf |
| 1/9/2024 | Filing | The Court | confirms that Counsel has reviewed the Court's Tentative Ruling. | *No Documents* ⓘ |
| 1/9/2024 | Filing | The Court adopts its tentative ruling. | | |
| 1/9/2024 | Filing | The Court | directs Counsel to be prepared to discuss mediation and a Mandatory Settlement Conference at the next hearing. | *No Documents* ⓘ |
| 1/9/2024 | Filing | Declaration Filed | DEC OF RICHARD P. TRICKER ISO DEFENDANTS COMBINED OPPOSITION TO PLAINTIFFS MTN TO COMPEL FURTHER RESPONSES TO FORM INTERROGATORIES | Dec Re OPP Form Rogs.pdf |
| 1/9/2024 | Filing | Motion | to Quash Deposition Subpoenas For Production of Business Records Issued by Plaintiff to (1) Zepponi & Company; (2) The Wonderful Company, LLC and (3) Mount Paso, LLC; and (4) Grapevine Capital, Inc. by the Defendant is denied | *No Documents* ⓘ |
| 1/9/2024 | Filing | The Court | advances the Case Managment Conference to 01/23/2024 9:01 a.m. | *No Documents* ⓘ |
| 1/9/2024 | Filing | Party makes a video appearance. | Diane Bang appearing with Matthew Umhofer; Richard Tricker appearing for Timothy Fredericks. | *No Documents* ⓘ |
| 1/9/2024 | Filing | Counsel argue the matter. | | *No Documents* ⓘ |
| 1/9/2024 | Filing | Matter is submitted without argument. | Plaintiff's Counsel Matthew Umhofer. | *No Documents* ⓘ |
| 1/9/2024 | Filing | Private Court Reporter | Elizabeth Doukas CSR #9872 reporting for First Legal Depositions. (805) 550-6713. | *No Documents* ⓘ |
| 1/10/2024 | Filing | Case Management Statement Filed | 1/23/24 | Case Management Statement Filed.pdf |
| 1/10/2024 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 1/16/2024 | Filing | Proof of Electronic Service | Proof Of Electronic Service | 6_Proof of Service - Efile.pdf |
| 1/16/2024 | Filing | Declaration Filed | DEC ISO PLAINTIFFS REPLY IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES FROM DEFENDANTS APPLIED TECHNOLOGIES ASSOCIATES, INC., ATA RANCHES, INC., | 5_Decl ISO Reply re MTC ATA and DO.pdf |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 1/16/2024 | Filing | Reply Filed | PLAINTIFF REPLY ISO Mtn TO COMPEL FURTHER RESPONSES FROM DEFENDANTS KEDRIN VAN STEENWYK, KMBG, LLC, AND ADELAIDA CELLARS, INC. TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE, | 2_Reply re MTC Kedrin KMBG Adelaida.pdf |
| 1/16/2024 | Filing | Reply Filed | PLAINTIFF OMNIBUS REPLY ISO MOTIONS TO COMPEL FURTHER RESPONSES FROM DEFENDANTS TO FORM INTERROGATORIES, SET ONE, AND REQUEST FOR MONETARY SANCTIONS | 1_Omnibus Reply ISO MTC Rogs.pdf |
| 1/16/2024 | Filing | Reply Filed | PLAINTIFF REPLY ISO Mtn TO COMPEL FUR RESPONSES (RFP) FROM DEFENDANTS APPLIED TECHNOLOGIES ASSOCIATES, INC., ATA RANCHES, INC., DANIEL CARTER, STEVE ORR, GORDON THOMSON, KIERAN DUGGAN, JOSEPH MCCOY, WESLEY SHEDD, AND PAMELA PIERCE TO REQUESTS | 4_Reply re MTC ATA and DO.pdf |
| 1/16/2024 | Filing | Declaration Filed | DECLARATION OF DIANE H. BANG IN SUPPORT OF PLAINTIFFS REPLY IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES FROM DEFENDANTS KEDRIN VAN STEENWYK, KMBG, LLC, AND ADELAIDA CELLARS, INC. TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE | 3_Decl ISO Reply re MTC Kedrin KMBG Adelaida.pdf |
| 1/17/2024 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 1/22/2024 | Filing | Mailed/Emailed Notice of Hearing by Zoom | RESET from 01/23/2024 to 02/06/2024 9:00 a.m. P2. | P2 Notice of Continuance w/Zoom.pdf |
| 1/23/2024 | Hearing | Motion for Discovery | - | - |
| 1/23/2024 | Hearing | Motion for Discovery | - | - |
| 1/23/2024 | Hearing | Motion for Discovery | - | - |
| 1/23/2024 | Hearing | Motion for Discovery | - | - |
| 1/24/2024 | Filing | Case Management Statement Filed | 2/6/24 | CASE MANAGEMENT STATEMENT.pdf |
| 1/26/2024 | Filing | Order After Hearing Filed | | Order Filed on Mo to Quash Depo Subpoenas.pdf |
| 2/6/2024 | Hearing | Case Management Conference Court Set | - | - |
| 2/6/2024 | Hearing | Motion for Discovery | - | - |
| 2/6/2024 | Hearing | Motion for Discovery | - | - |
| 2/6/2024 | Hearing | Motion for Discovery | - | - |
| 2/6/2024 | Hearing | Motion for Discovery | - | - |
| 2/6/2024 | Filing | Party makes a video appearance. | Diana Bang appearing with Matthew Umhofer; Anthony King present and Richard Tricker present. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Motion | for Monetary Sanctions by the Plaintiff is denied | *No Documents* ⓘ |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 2/6/2024 | Filing | The Court | sets Case Management Conference 06/24/2024 9:00 a.m. P2. | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court | resets two Demurrers from 03/05/2024 to 03/12/2024 9:00 a.m. P2. | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court and counsel discuss | proceeding with informal discovery. Plaintiff's counsel agrees; Anthony King agrees; Defendant's counsel to discuss with his clients. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Matter is submitted without argument. | | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court adopts its tentative ruling. | | |
| 2/6/2024 | Filing | Private Court Reporter | Elizabeth Doukas CSR #9782, reporting for First Legal Reporting is present. (805) 550-6713. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Private Court Reporter | Elizabeth Doukas CSR #9782, reporting for First Legal Reporting is present. (805) 550-6713. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Notice is waived. | | *No Documents* ⓘ |
| 2/6/2024 | Filing | Motion | to Compel Further Responses From Defendants Kedrin Van Steenwyk, KMBG, LLC and Adelaida Cellars, Inc. to Form Interrogatories, Set One by the Plaintiff is granted | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court | confirms that Counsel has reviewed the Court's Tentative Ruling. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Party makes a video appearance. | Diana Bang appearing with Matthew Umhofer; Anthony King present and Richard Tricker present. | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court | confirms that Counsel has reviewed the Court's Tentative Ruling. | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court adopts its tentative ruling. | | |
| 2/6/2024 | Filing | Matter is submitted without argument. | | *No Documents* ⓘ |
| 2/6/2024 | Filing | Notice is waived. | | *No Documents* ⓘ |
| 2/6/2024 | Filing | Motion | For Monetary Sanctions by the Plaintiff is denied. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Notice is waived. | | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court | confirms that Counsel has reviewed the Court's Tentative Ruling. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Matter is submitted without argument. | | *No Documents* ⓘ |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 2/6/2024 | Filing | Motion | to Compel Further Responses From Defendants Applied Technologies Associates, Inc. ATA Rachesm Inc., Daniel Carter, Steve Orr, Gordon Thomson, Kiernan Duggan, Joseph McCoy, Wesley Shedd, and Pamela Pierce to requests for Production of Documents, Set One by the Plaintiff is granted. | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court adopts its tentative ruling. | | |
| 2/6/2024 | Filing | Matter is submitted without argument. | | *No Documents* ⓘ |
| 2/6/2024 | Filing | Motion | to Compel Further Responses From Defendants Kedrin Van Steenwyk, KMBG, LLC and Adelaida Cellars, Inc. to Request for Priouductions of Documents, Set One by the Plaintiff is granted | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court | confirms that Counsel has reviewed the Court's Tentative Ruling. | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court adopts its tentative ruling. | | |
| 2/6/2024 | Filing | Party makes a video appearance. | Diana Bang appearing with Matthew Umhofer; Anthony King present and Richard Tricker present. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Party makes a video appearance. | Diana Bang appearing with Matthew Umhofer; Anthony King present and Richard Tricker present. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Notice is waived. | | *No Documents* ⓘ |
| 2/6/2024 | Filing | Party makes a video appearance. | Elizabeth Doukas CSR #9782, reporting for First Legal Reporting is present. (805) 550-6713. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Motion | For Monetary Sanctions by the Plaintiff is denied. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Notice is waived. | | *No Documents* ⓘ |
| 2/6/2024 | Filing | Private Court Reporter | Elizabeth Doukas CSR #9782, reporting for First Legal Reporting is present. (805) 550-6713. | *No Documents* ⓘ |
| 2/6/2024 | Filing | The Court and counsel discuss | motions and demurrers scheduled. If the Motion for Leave to Amend is filed the Demurrers will be moot. | *No Documents* ⓘ |
| 2/6/2024 | Filing | Motion | For Monetary Sanctions by the Plaintiff is denied. | *No Documents* ⓘ |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 2/6/2024 | Filing | Motion | to Compel Further responses From Defendants Applied Technologies Associates, Inc., ATA Ranches, Inc., Daniel Carter, Steve Orr, Gordon Thomson, Kieran Duggan, Joseph McCoy, Wesley Shedd, and Pamela Pierce to Form Interrogatories, Set One by the Plaintiff is granted | *No Documents* (i) |
| 2/6/2024 | Filing | Private Court Reporter | Elizabeth Doukas CSR #9782, reporting for First Legal Reporting is present. (805) 550-6713. | *No Documents* (i) |
| 2/6/2024 | Filing | Private Court Reporter | Elizabeth Doukas CSR #9782, reporting for First Legal Reporting is present. (805) 550-6713. | *No Documents* (i) |
| 2/7/2024 | Hearing | Case Management Conference Court Set | - | - |
| 2/9/2024 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 2/21/2024 | Filing | Request Filed | Request to Withdraw Motion | Declaration Filed.pdf |
| 2/22/2024 | Filing | Amended Complaint Filed | Second Amended Complaint | Amended Complaint Filed.pdf |
| 2/22/2024 | Filing | Stipulation and Order Filed | Stipulation and Order Granting Leave for Plaintiff to File Second Amended Complaint | 1_Stipulation and Order re Leave to Amend.pdf |
| 3/1/2024 | Filing | Order After Hearing Filed | PROPOSED ORDER ON PLAINTIFFS MOTIONS TO COMPEL FURTHER RESPONSES | Order After Hearing Filed.pdf |
| 3/5/2024 | Hearing | Motion | - | - |
| 3/5/2024 | Hearing | Motion | - | - |
| 3/6/2024 | Filing | Stipulation and Order Filed | Protective Order -- Confidential Designation Only | Stipulation and Order Filed.pdf |
| 3/6/2024 | Filing | Request Filed | Request to Withdraw Motion to Strike | Request Filed.pdf |
| 3/6/2024 | Filing | Proof of Electronic Service | | Proof Of Electronic Service.pdf |
| 3/6/2024 | Filing | Request Filed | Request to Withdraw Demurrer | Request Filed.pdf |
| 3/12/2024 | Hearing | Demurrer | - | - |
| 3/12/2024 | Hearing | Motion to Strike | - | - |
| 3/12/2024 | Hearing | Demurrer | - | - |
| 3/12/2024 | Hearing | Motion to Strike | - | - |
| 3/12/2024 | Hearing | Demurrer | - | - |
| 3/12/2024 | Hearing | Demurrer | - | - |
| 3/12/2024 | Filing | The Court adopts its tentative ruling. | | The Court adopts its tentative ruling..pdf |
| 3/12/2024 | Filing | The Court | confirms that Counsel has reviewed the Court's Tentative Ruling. | *No Documents* (i) |
| 3/12/2024 | Filing | Party is not present this date | at 9:19 a.m. | *No Documents* (i) |
| 3/12/2024 | Filing | Party makes a video appearance. | | *No Documents* (i) |
| 3/12/2024 | Filing | Party makes a video appearance. | | *No Documents* (i) |
| 3/12/2024 | Filing | The Court adopts its tentative ruling. | | The Court adopts its tentative ruling..pdf |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 3/12/2024 | Filing | The Court | confirms that Counsel has reviewed the Court's Tentative Ruling. | *No Documents* ⓘ |
| 3/12/2024 | Filing | Party is not present this date | at 9:19 a.m. | *No Documents* ⓘ |
| 3/25/2024 | Filing | Declaration Filed | DEC OF JOHNNY L. ANTWILER ISO Demurrer to 2nd Amd Comp by ATA Defendants | Dec ISO of Demurrer to 2AC.pdf |
| 3/25/2024 | Filing | Declaration Filed | DEC RICHARD P. TRICKER ISO DEFENDANTS DEMURRERS TO SECOND AMENDED COMPLAINT | Dec ISO Demurrer to 2AC.pdf |
| 3/25/2024 | Filing | Demurrer Filed - After 1st Appearance | NOTICE OF DEMURRER & DEMURRER TO PLAINTIFFS SECOND AMENDED COMPLAINT BY ATA DEFENDANTS | 94644NOTICEOF001967f.pdf |
| 3/25/2024 | Filing | Demurrer Filed - After 1st Appearance | DEFENDANTS DEMURRER TO PLAINTIFFS 2nd Amd Complaint; & POINTS AND AUTHORITIES | Demurrer Filed - After 1st Appearance.pdf |
| 4/24/2024 | Filing | Declaration Filed | DECLARATION OF RICHARD P. TRICKER IN SUPPORT OF DEFENDANT KEDRIN E. VAN STEENWYKS MOTION TO QUASH DEPOSITION NOTICE | Dec ISO Mtn to Quash.pdf |
| 4/24/2024 | Filing | Separate Statement | DEFENDANT KEDRIN E. VAN STEENWYKS SEPARATE STATEMENT IN SUPPPORT OF MOTION TO QUASH DEPOSITION NOTICE | 96656DEFENDAN0081c7a.pdf |
| 4/24/2024 | Filing | Motion to Quash Filed | DEFENDANT KEDRIN E. VAN STEENWKS NOTICE OF MOTION AND MOTION TO QUASH DEPOSITION NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES | 96656DEFENDAN01e155c.pdf |
| 4/24/2024 | Filing | Notice of Hearing Filed | DEFENDANTS NOTICE OF HEARING Applied Tech, et al. Demurrer to 2AC | 96692DEFENDAN00321bd.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | FROGs Dan Carter | Motion to Compel Discovery Filed.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement ATAR RFPs | Motion to Compel Discovery Filed.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement McCoy FRogs | Separate Statement McCoy FRogs.pdf |
| 5/16/2024 | Filing | Declaration Filed | Declaration JAKing iso OMNI MTC | Declaration JAKing iso OMNI MTC.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement McCoy RFPs | Separate Statement McCoy RFPs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Shedd FRogs | Separate Statement Shedd FRogs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Pierce FRogs | Separate Statement Pierce FRogs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement KVS DEPO RFPs | Separate Statement KVS DEPO RFPs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement KMBG RFPs | Separate Statement KMBG RFPs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Orr RFPs | Separate Statement Orr RFPs.pdf |

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Orr FRogs | Separate Statement Orr FRogs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement ATA RFPs | Motion to Compel Discovery Filed.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Thomson RFPs | Separate Statement Thomson RFPs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Thomson FRogs | Motion to Compel Discovery Filed.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Carter FRogs | Motion to Compel Discovery Filed.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement ATAR FRogs | Motion to Compel Discovery Filed.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Adelaida RFPs | Motion to Compel Discovery Filed.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Plaintiff's Omnibus Motion to Compel Discovey and Request for Monetary Sanctions | Main Motion.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Shedd RFPs | Separate Statement Shedd RFPs.pdf |
| 5/16/2024 | Filing | Proof of Electronic Service | Proof Of Electronic Service OMNI MTC | Proof Of Electronic Service OMNI MTC.pdf |
| 5/16/2024 | Filing | Proposed Order. | Proposed Order re OMNI MTC | |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Pierce RFPs | Separate Statement Pierce RFPs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Duggan RFPs | Separate Statement Duggan RFPs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement Duggan FRogs | Separate Statement Duggan FRogs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement KVS RFPs | Separate Statement KVS RFPs.pdf |
| 5/16/2024 | Filing | Motion to Compel Discovery Filed | Separate Statement ATA FRogs | Separate Statement ATA FRogs.pdf |
| 5/22/2024 | Filing | Miscellaneous Minute Order | | Misc Mo (OPS).pdf |
| 6/4/2024 | Hearing | Order to Show Cause | - | - |
| 6/4/2024 | Filing | Notice is waived. | | *No Documents* ⓘ |
| 6/4/2024 | Filing | Counsel argue the matter. | | *No Documents* ⓘ |
| 6/4/2024 | Filing | The Court | sets Order to Show Cause re: Appointment of Greg Coates as Discovery Referee 07/30/2024 9:01 a.m. P2. | *No Documents* ⓘ |
| 6/4/2024 | Filing | The Court | sets simultaneously briefing to be filed by 07/16/2024. | *No Documents* ⓘ |
| 6/4/2024 | Filing | Private Court Reporter | Dina Thompson, CSR # is present reporting for First Legal. 707-592-7733.. | *No Documents* ⓘ |
| 6/4/2024 | Filing | Party makes a video appearance. | Jonas Mann appearing for Matthew Umhofer; Richard Tricker appearing with Timothy Fredericks. | *No Documents* ⓘ |
| 6/4/2024 | Filing | The Court | notes the Court in inclined to refer this matter to a Discovery Referee due to the volume of disputes. | *No Documents* ⓘ |
| 6/7/2024 | Filing | Case Management Statement Filed | Plt | 2024-6-7 Plaintiff Case Mgmt Stmt.pdf |

| Date | Event | Type | Comments | Documents |
|------|-------|------|----------|-----------|
| 6/13/2024 | Filing | Case Management Statement Filed | | Case Management Statement.pdf |
| 6/20/2024 | Filing | Mailed/Emailed Notice of Hearing by Zoom | RESET from 07/30/2024 to 09/10/2024. | P2 Notice of Continuance w/Zoom-Hybrid.pdf |
| 6/24/2024 | Hearing | Case Management Conference Court Set | - | - |
| 6/24/2024 | Filing | The Court | continues Case Management Conference 09/10/2024 9:00 a.m. P2. | *No Documents* ⓘ |
| 6/24/2024 | Filing | Hearing is confirmed as previously set. | | *No Documents* ⓘ |
| 6/24/2024 | Filing | Party makes a video appearance. | Jonas Mann appearing for Matthew Umhofer; Alexis King appearing for Timothy Fredericks; Patrick Yoo appearing for Johnny Antwiler. | *No Documents* ⓘ |
| 8/26/2024 | Filing | Proof of Electronic Service | Proof Of Electronic Service | 2024-08-26 Proof of Service - Efile.pdf |
| 8/26/2024 | Filing | Case Management Statement Filed | Defts | Case Management Statement.pdf |
| 8/26/2024 | Filing | Case Management Statement Filed | plt | Plaintiff Case Management Statement.pdf |
| 8/27/2024 | Filing | Dismissal - No ADR - Before trial | | Dismissal Without Prejudice - Entire Action.pdf |
| 8/27/2024 | Filing | Reply Filed | 09/10/2024 DEFENDANTS RESPONSE TO ORDER TO SHOW CAUSE RE DISCOVERY REFEREE | DEFENDANTS RESPONSE TO ORDER TO SHOW CAUSE RE DISCOVERY REFEREE.pdf |
| 8/27/2024 | Filing | Dismissal Without Prejudice - Entire Action Filed | | Dismissal Without Prejudice - Entire Action.pdf |
| 8/27/2024 | Filing | Declaration Filed | DEC ISO DEFENDANTS RESPONSE TO ORDER TO SHOW CAUSE RE DISCOVERY REFEREE | Declaration Filed.pdf |
| 8/27/2024 | Filing | Proof of Electronic Service | Proof Of Electronic Service | 2024-08-27 Proof of Service - Efile.pdf |
| 9/10/2024 | Hearing | Case Management Conference Court Set | - | - |
| 9/10/2024 | Hearing | Order to Show Cause | - | - |
| 9/10/2024 | Hearing | Demurrer | - | - |
| 9/10/2024 | Hearing | Demurrer | - | - |
| 9/10/2024 | Hearing | Motion | - | - |
| 9/11/2024 | Filing | Memorandum of Costs After Judgment Filed | Memorandum of Costs (Summary) | Memorandum of Costs (Summary).pdf |
| 9/13/2024 | Filing | Memorandum of Costs After Judgment Filed | Applied Technologies & ATA Ranches Defts | Memorandum of Costs (Summary).pdf |
| 10/1/2024 | Filing | Proof of Electronic Service | POES Motion to Tax Costs Claimed by Applied Technologies & ATA Defendants | POES Motion to Tax Costs Claimed by Applied Technologies & ATA Defendants.pdf |
| 10/1/2024 | Filing | Proposed Order. | Proposed Order Granting Motion to Tax Costs Claimed by Applied Technologies & ATA Defendants | |
| 10/1/2024 | Filing | Declaration Filed | Dec of Umhofer ISO Motion to Tax Costs Claimed by Applied Technologies & ATA Defendants | Dec of Umhofer ISO Motion to Tax Costs Claimed by Applied Technologies & ATA Defendants.pdf |

| Date | Event | Type | Comments | Documents |
|---|---|---|---|---|
| 10/1/2024 | Filing | Motion to Tax Costs Filed | Motion to Tax Costs Claimed by Applied Technologies & ATA Defendants | Motion to Tax Costs Claimed by Applied Technologies & ATA Defendants.pdf |
| 10/1/2024 | Filing | Motion to Tax Costs Filed | Motion to Tax Costs Claimed by Kedrin Van Steenwyk, Adelaida Cellars & KMBG | Motion to Tax Costs_KVS Adelaida KMBG.pdf |
| 10/1/2024 | Filing | Proof of Electronic Service | POES Proposed Motion to Tax Costs Claimed by Kedrin Van Steenwyk, Adelaida Cellars & KMBG | POS Motion to Tax Costs_KVS.pdf |
| 10/1/2024 | Filing | Proposed Order. | Proposed Order Granting Motion to Tax Costs Claimed by Kedrin Van Steenwyk, Adelaida Cellars & KMBG | |
| 10/1/2024 | Filing | Declaration Filed | DECL Umhofer iso Motion to Tax Costs Claimed by Kedrin Van Steenwyk, Adelaida Cellars & KMBG | DECL Umhofer iso Motion to Tax Costs_KVS.pdf |
| 1/21/2025 | Hearing | Motion | - | - |
| 1/21/2025 | Hearing | Motion | - | - |

## Financial Information

Party: -

Total Financial Assessment: $6,545.00

Total Payments and Credits: $6,545.00

**Balance Due: $0.00**

| Date | Transaction | Receipt # | Payment Made on Behalf Of | Amount |
|---|---|---|---|---|
| 5/2/2023 | Charge | | | $435.00 |
| 5/2/2023 | Payment | 2023-03746-CIVIL | | -$435.00 |
| 6/1/2023 | Disbursement | | | $0.00 |
| 6/9/2023 | Charge | | Applied Technologies Associates, Inc. | $60.00 |
| 6/9/2023 | Payment | 2023-04884-CIVIL | Applied Technologies Associates, Inc. | -$60.00 |
| 6/14/2023 | Charge | | | $1,365.00 |
| 6/14/2023 | Payment | 2023-05004-CIVIL | | -$1,365.00 |
| 6/20/2023 | Charge | | Carter, Daniel | $3,045.00 |
| 6/20/2023 | Payment | 2023-05141-CIVIL | Carter, Daniel | -$3,045.00 |
| 6/26/2023 | Charge | | | $60.00 |
| 6/26/2023 | Payment | 2023-05342-CIVIL | | -$60.00 |
| 7/5/2023 | Disbursement | | | $0.00 |
| 7/5/2023 | Disbursement | | Carter, Daniel | $0.00 |
| 7/5/2023 | Disbursement | | Applied Technologies Associates, Inc. | $0.00 |
| 7/5/2023 | Disbursement | | | $0.00 |
| 7/26/2023 | Charge | | | $60.00 |
| 7/26/2023 | Payment | 2023-06299-CIVIL | | -$60.00 |
| 8/1/2023 | Disbursement | | | $0.00 |
| 8/28/2023 | Charge | | | $60.00 |
| 8/28/2023 | Charge | | | $60.00 |
| 8/28/2023 | Payment | 2023-07384-CIVIL | | -$60.00 |
| 8/28/2023 | Payment | 2023-07374-CIVIL | | -$60.00 |
| 8/29/2023 | Charge | | | $60.00 |
| 8/29/2023 | Payment | 2023-07401-CIVIL | | -$60.00 |
| 9/5/2023 | Disbursement | | | $0.00 |
| 9/7/2023 | Payment | 2023-07660-CIVIL | | -$150.00 |

| Date | Transaction | Receipt # | Payment Made on Behalf Of | Amount |
|------|-------------|-----------|---------------------------|--------|
| 9/7/2023 | Charge | | | $150.00 |
| 9/18/2023 | Payment | 2023-07989-CIVIL | | -$60.00 |
| 9/18/2023 | Charge | | | $60.00 |
| 10/2/2023 | Disbursement | | | $0.00 |
| 11/13/2023 | Payment | 2023-09705-CIVIL | | -$120.00 |
| 11/13/2023 | Charge | | | $120.00 |
| 12/1/2023 | Disbursement | | | $0.00 |
| 12/15/2023 | Charge | | | $120.00 |
| 12/15/2023 | Charge | | | $870.00 |
| 12/15/2023 | Payment | 2023-10667-CIVIL | | -$120.00 |
| 12/15/2023 | Payment | 2023-10632-CIVIL | | -$870.00 |
| 12/27/2023 | Payment | 2023-10977-CIVIL | | -$20.00 |
| 12/27/2023 | Charge | | | $20.00 |
| 1/8/2024 | Disbursement | | | $0.00 |
| 1/8/2024 | Disbursement | | | $0.00 |
| 2/22/2024 | Charge | | | $0.00 |
| 2/22/2024 | Payment | | | $0.00 |
| 3/1/2024 | Disbursement | | | $0.00 |
| 3/7/2024 | Charge | | | $0.00 |
| 3/7/2024 | Payment | | | $0.00 |
| 3/27/2024 | Charge | | | $0.00 |
| 3/27/2024 | Payment | | | $0.00 |
| 3/27/2024 | Charge | | | $0.00 |
| 3/27/2024 | Payment | | | $0.00 |
| 4/2/2024 | Disbursement | | | $0.00 |
| 4/2/2024 | Disbursement | | | $0.00 |
| 4/2/2024 | Disbursement | | | $0.00 |
| 4/24/2024 | Charge | | | $0.00 |
| 4/24/2024 | Payment | | | $0.00 |
| 5/1/2024 | Disbursement | | | $0.00 |
| 5/22/2024 | Charge | | | $0.00 |
| 5/22/2024 | Payment | | | $0.00 |
| 6/3/2024 | Disbursement | | | $0.00 |
| 10/1/2024 | Charge | | | $0.00 |
| 10/1/2024 | Payment | | | $0.00 |
| 10/1/2024 | Charge | | | $0.00 |
| 10/1/2024 | Payment | | | $0.00 |
| 11/1/2024 | Disbursement | | | $0.00 |

© 2024 Tyler Technologies, Inc. | All Rights Reserved
Version: 2023.11.0.99


EMPOWERED BY TYLER TECHNOLOGIES

EXHIBIT B

ELECTRONICALLY
FILED
5/1/2023 4:08 PM

SAN LUIS OBISPO SUPERIOR COURT
BY: _____
C. M. Kastner, Deputy Clerk

1   UMHOFER, MITCHELL & KING LLP
    Matthew Donald Umhofer (SBN 206607)
2   J. Anthony King (SBN 297279)
    767 S. Alameda St., Suite 270
3   Los Angeles, California 90021
    Telephone: (213) 394-7979
4   Facsimile: (213) 529-1027
    matthew@umklaw.com
5   anthony@umklaw.com

6
7   Attorneys for Plaintiff Matthew Van Steenwyk

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF SAN LUIS OBISBO

10                                          23CVP-0146
    MATTHEW D. VAN STEENWYK,          Case No.
11  Individually as Trustee and
    Beneficiary of The Matthew Van     **VERIFIED SHAREHOLDER**
12  Steenwyk GST Trust and The         **DERIVATIVE COMPLAINT FOR:**
    Matthew Van Steenwyk Issue Trust,
13  and as Co-Trustee of The Gretchen    1. **BREACH OF FIDUCIARY**
    Marie Van Steenwyk-Marsh GST            **DUTY (DERIVATIVE CLAIM);**
14  Trust and The Gretchen Marie Van     2. **CORPORATE WASTE; AND**
    Steenwyk-Marsh Issue Trust; and      3. **DECLARATORY RELIEF.**
15  derivatively on behalf of Nominal
    Defendants APPLIED                 **SHAREHOLDER DIRECT CLAIM**
16  TECHNOLOGIES ASSOCIATES,           **FOR:**
    INC., and ATA RANCHES, INC.,
17                                        4. **BREACH OF FIDUCIARY**
                    Plaintiff,              **DUTY BY CONTROLLING**
18                                          **SHAREHOLDER;**
             v.                           5. **AIDING AND ABETTING**
19                                          **BREACH OF FIDUCIARY**
    KEDRIN E. VAN STEENWYK,                 **DUTY; AND**
20  Individually, as Successor Trustee of  6. **PRODUCTION OF**
    the Donald H. Van Steenwyk and          **CORPORATE RECORDS.**
21  Elizabeth A. Van Steenwyk 1996
    Revocable Trust; DANIEL
22  CARTER, Individually; KIERAN       **DEMAND FOR JURY TRIAL**
    DUGGAN, Individually; PAMELA
23  PIERCE, Individually; JOSEPH
    MCCOY, Individually; STEVE
24  ORR, Individually; WESLEY
    SHEDD, Individually; GORDON
25  THOMSON, Individually;
    ADELAIDA CELLARS, INC.; and
26  KMBG, LLC, and DOES 1 through
    10 inclusive,
27
                    Defendants,
28

                            COMPLAINT

1  and APPLIED TECHNOLOGIES
   ASSOCIATES, INC., and ATA
2  RANCHES, INC.,

3              Nominal Defendants.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

Plaintiff Matthew Van Steenwyk ("Matthew"), Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust ("Matthew's Trusts"), and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk – Marsh Issue Trust ("Gretchen's Trusts" and referred to collectively at times as "Plaintiff's Trusts"), and derivatively on behalf of Defendants Applied Technologies Associates, Inc. ("ATA") and ATA Ranches, Inc. ("ATAR"), bring this action against individual defendants Kedrin E. Van Steenwyk ("Kedrin"), Daniel Carter, Kieran Duggan, Pamela Pierce, Joseph McCoy, Steve Orr, Wesley Shedd, Gordon Thomson (Carter, Duggan, Pierce, McCoy, Orr, Shedd, and Thomson are collectively referred to herein as "D&O Defendants"), Adelaida Cellars, Inc. ("Adelaida"), KMBG, LLC ("KMBG"), and Defendant ATA and ATAR as nominal defendants for violations of California law regarding the pending sale of ATA's assets that is being made for the benefit of its controlling shareholder, Kedrin, and ATA directors and officers at the expense of ATA's minority shareholders.

## NATURE OF THE ACTION

1.    Plaintiff, as minority shareholders of ATA, brings this action to halt another self-dealing transaction imposed upon ATA by its controlling shareholder, Kedrin. Incredibly, after being exposed for looting ATA and its minority shareholder for tens of millions of dollars in a pending shareholder derivative lawsuit, Defendants have now engineered a sale of one of ATA's most valuable assets, two vineyard properties in Paso Robles, California, so that the proceeds can be used to reimburse Kedrin and the other directors and officers for judgments awarded against them in the pending litigation. Rather than acting in the best interest of all shareholders, as is required in their role as fiduciaries to all shareholders, Defendants have instead imposed this sale upon the minority shareholders, without any opportunity to voice their opinions or oppose this

EXHIBIT B - 003

transaction that will once again improperly fund Kedrin and the directors and officers. Plaintiff must seek relief from the Court to put an end to this continued oppression of the minority shareholders by the controlling shareholder.

2.      ATA is a gas and oil drilling technology company that is owned by the four children of founder Donald Van Steenwyk—Matthew, Brett, and Gretchen, and Kedrin. Each of the four siblings owns 23.75% of the non-voting Class B shares of ATA. Kedrin, however, is the controlling shareholder of ATA, via her 51% interest in the Class A voting shares (which represent 5% of ATA's total equity). ATA, through its wholly-owned subsidiary, ATA Ranches, also owns two vineyard properties, Viking and HMR Ranches (the "Ranches"), in Paso Robles, California, which produce premium quality wine grapes.

3.      KMBG is a Colorado holding company that owns the Adelaida winery, also located in Paso Robles, as well as the real property the winery sits upon and some other related assets. Kedrin holds a 99% interest in KBMG, while Matthew and Brett hold a fractional interest. Gretchen does not own any interest in KMBG.

4.      Defendants have a well-documented history of engaging in self-dealing transactions between ATA and Adelaida/KMBG that result in ATA and its shareholders subsidizing KBMG and Adelaida—companies that Kedrin fully owns. The disparity in the ownership percentages between ATA and KMBG allows Kedrin to profit from diverting money from ATA, where she owns just over 26% of the shares, into KMBG/Adelaida's coffers, in which she owns a 99% interest. In other words, for every dollar that ATA sends to KMBG/Adelaida or spends for their benefit, Kedrin only pays 26 cents but she receives over 99 cents in cash or benefits.

5.      Several self-dealing transactions are the subject matter of a shareholder derivative lawsuit, *Van Steenwyk v. Van Steenwyk et al.,* Case No. 2:20-cv-02375 FLA (AFMx), (the "2020 Shareholder Litigation") that is

EXHIBIT B - 004

currently pending in the Central District of California. A true and correct copy of the Fourth Amended Complaint which describes in detail these illicit transactions is attached hereto **as Exhibit C** and incorporated by reference herein.

6.      For example, ATA has been forced by Kedrin to sell its wine grapes to Adelaida for substantially less than their market value causing ATA to hemorrhage massive amounts of money—in excess of $1.5 million annually on average—in its operation of the Ranches so that Adelaida (and thereby Kedrin) can make a profit. In fact, Adelaida has resold the lesser quality grapes to other wineries for double the price that ATA receives from Adelaida—thus demonstrating that the Ranches could be profitable if they were permitted to charge market prices for its grapes rather than be forced to subsidize Adelaida and Kedrin.

7.      On March 11, 2023, Defendants informed Plaintiff that they had scheduled an ATA Board meeting the next day to enter into a letter of intent ("LOI") to sell the Ranches for $22,500,000 to Mount Paso, LLC ("Mount Paso"). This purchase price was significantly below the two appraisals that ATA had received within the past two years for the Ranches ($28 million and $27.5 to $35.2 million).

8.      Defendants also disclosed for the first time that they previously received two "verbal offers" for the Ranches and KMBG's assets which were significantly higher ($35,000,000 and $31,000,000) than the Mount Paso offer in the Special ATA Board Meeting materials that they sent Plaintiff on March 11, 2023. During a March 13 Microsoft Teams meeting with Matthew, Gretchen, and Brett to answer questions on the transaction, Defendants Pierce and Carter stated that they did not take these verbal offers seriously because "they weren't worth the paper they were ***not*** written on." Plaintiff would later discover that Pierce and Carter's representations were patently false—**both of these offers were provided in writing** and originated from very reputable and well financed

players in the wine industry. Thus, it is now clear that Pierce and Carter's excuses for not taking these other offers seriously were nothing more than misinformation meant to mislead the minority shareholders about their decision to turn down those higher offers.

9.    ATA also negotiated a concession with Mount Paso whereby ATAR would keep the current year's grape crop, **which ATA/ATAR gives to Adelaida for free** (based upon a revised agreement between ATAR and Adelaida, guaranteeing that ATAR would lose money). The only beneficiaries of this concession are Adelaida, KMBG, and their majority owner, Kedrin—making this a clear-cut case of self-dealing. Unsurprisingly, Adelaida's general manager was the point person for these negotiations.

10.    Plaintiff is also informed and believes that the proceeds for the sales of the Ranches are wrongfully being set aside as a slush fund to indemnify Kedrin and the directors and officers of ATA for the money they will have to pay back to the minority shareholders and ATA and sister company Scientific Drilling International, Inc. ("SDI"), even though they were the wrongdoers that caused the harm to the companies that resulted in the 2020 Shareholder Litigation.

11.    During the March 13 Teams meeting, Defendants Pierce and Carter informed Matthew, Gretchen, and Brett that the $21+ million in proceeds from the sale of the Ranches **will not be distributed as a dividend to ATA's shareholders**, as one would expect, but instead, will be "reserved" for the 2020 Shareholder Litigation. However, ATA has no need to reserve money for this lawsuit because: (i) it would be receiving money from Kedrin, the directors, officers, and Adelaida if a judgment is awarded, not paying out money as this is a shareholder derivative lawsuit; and (ii) ATA has insurance policies that are paying for the defense in this case. Thus, the *only* reason to set aside money for the 2020 Shareholder Litigation is to indemnify Kedrin and her fellow directors

EXHIBIT B - 006

1 and officers for their prior self-dealing transgressions.

2    12.    Given the concession made to benefit Adelaida, the money being
3 "reserved" for indemnification, Defendants' false representations, and the history
4 of self-dealing, it is evident that this transaction is designed to take millions of
5 dollars out of Plaintiff's pockets and place them into Defendants' pockets in
6 direct violation of their fiduciary duties.

7                                    **PARTIES**

8    13.    Plaintiff Matthew D. Van Steenwyk is a citizen of the State of
9 Nevada and is Trustee and beneficiary of The Matthew Van Steenwyk GST Trust
10 and Trustee and beneficiary of The Matthew Van Steenwyk Issue Trust
11 ("Matthew's Trusts"). Matthew, through Matthew's Trusts, is the owner of
12 23.75% of the Class B non-voting shares of ATA. Through Matthew's Trusts,
13 Plaintiff has continuously owned ATA stock at all times relevant to the
14 allegations of this Complaint, continues to be an ATA shareholder today, and
15 intends to remain a shareholder. Plaintiff, through Matthew's Trusts, also owns
16 an interest in KMBG of 0.16736%.

17    14.    Matthew is also Co-Trustee of Gretchen's Trusts with respect to the
18 shares of ATA Class B stock owned by Gretchen's Trusts. At all times relevant
19 to the allegations in this Complaint, Gretchen's Trusts owned 23.75% of the
20 Class B shares in ATA. Gretchen's Trusts collectively continue to be an ATA
21 shareholder and intend to remain an ATA shareholder. Gretchen's Trusts do not
22 own any interest in KMBG.

23    15.    Nominal Defendant ATA is a corporation incorporated under the
24 laws of the State of California and having its principal place of business in the
25 State of California. ATA is engaged in the business of providing services and
26 equipment to individuals and companies involved in oil and gas exploration.
27 ATA has, historically, researched and developed tools and technologies for its
28 own use and the use of its sister company, SDI. ATA is headquartered and

EXHIBIT B - 007

conducts substantial operations in San Luis Obispo County, California. ATA, through its wholly-owned subsidiary ATAR, also owns ranching properties in Paso Robles, California that exclusively provides grapes to Adelaida Cellars winery.

16.    Nominal Defendant ATA Ranches (a/k/a "ATAR") is a corporation incorporated under the laws of the State of Delaware.  On information and belief, ATA Ranches' principal place of business is in the State of California, as all or almost all of its assets are located in Paso Robles, California, and all of its business is conducted there as well.  ATA Ranches, the corporate entity formed in 2018, is a wholly-owned subsidiary of ATA.

17.    Defendant Kedrin E. Van Steenwyk is a citizen of the State of South Carolina. Plaintiff is informed, and on that basis alleges, that Kedrin is trustee of The Kedrin Van Steenwyk GST Trust and trustee and beneficiary of The Kedrin Van Steenwyk Issue Trust ("Kedrin's Trusts").  Kedrin, through her Trusts, is the owner of 23.75% of the Class B shares of ATA and SDI.  Kedrin is also Trustee of the Survivor's Trust under the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust, through which she has record title to 25,500/500,000 (51%) of the outstanding shares of ATA's Class A voting stock. Kedrin controls ATA, ATAR, KMBG, and Adelaida by reason of the following:

a.  Kedrin controls the majority of all issued and outstanding Class A voting shares in ATA;

b.  Kedrin is a director of ATA;

c.  Kedrin controls Adelaida through her control over its only shareholder, KMBG.

d.  Kedrin controls a 99% majority interest in KMBG;

e.  Kedrin is the Manager of KMBG; and

f.  Kedrin is the chief executive officer and a director of Adelaida.

18.    Defendant KMBG, LLC is a Colorado limited liability company,

6
COMPLAINT

with its principal place of business in Paso Robles, California.  KMBG owns 100% of Adelaida's stock.

19.    Defendant Adelaida Cellars, Inc. is a corporation incorporated under the laws of the State of California. KMBG purchased 100% of the stock of Adelaida in January 2013 for substantially less than its market value, raising serious tax implications. Adelaida's principal place of business is in San Luis Obispo County, California.

20.    Defendant Daniel Carter is an individual residing in the State of Texas.  At all times relevant, Defendant Carter served as Secretary and General Counsel for ATA. Defendant Carter also serves as an officer of ATA Ranches. Since in or about August 2016, Defendant Carter has also served as a director of Adelaida Cellars, Inc.

21.    Defendant Kieran Duggan is an individual residing in the State of Texas.  Defendant Duggan is the CFO of ATA and ATA Ranches.  In May 2018, Defendant Duggan was appointed a director of Adelaida.

22.    Defendant Pamela Pierce is an individual residing in the State of Texas.  Defendant Pierce is a director of ATA and an officer of ATA Ranches.

23.    Defendant Joseph McCoy is an individual residing in the State of Texas.  Defendant McCoy is a director of ATA.

24.    Defendant Steve Orr is an individual residing in the State of Texas. Defendant Orr is a director of ATA.

25.    Defendant Wesley Shedd is an individual residing in the State of Texas.  Defendant Shedd is currently the CEO of ATA, and as the CEO, holds a director position as well.

26.    Defendant Gordon Thomson is an individual residing in the State of Texas.  Defendant Thomson is a director of ATA.

27.    Interested non-party Brett H. Van Steenwyk is Trustee of the Brett H. Van Steenwyk Nonexempt Marital Trust under the Donald H. Van Steenwyk

COMPLAINT

EXHIBIT B - 009

and Elizabeth A. Van Steenwyk 1996 Revocable Trust, which trust is the holder of record title to 24,500/50,000 (49%) of the outstanding shares of ATA Class A Voting Stock. Brett also owns 23.75% of the Class B shares in ATA. Brett also owns an interest in KMBG of about .404%.

28.    Brett was recently forced to file a separate lawsuit against Kedrin and D&O Defendants, *Brett Van Steenwyk v. Kedrin Van Steenwyk et al.,* Case No. 23CVP-0068 (San Luis Obispo Cty. Feb. 16, 2023), because Defendants had used an artifice to improperly deny Brett the right to vote for independent directors of his choice, even though he held 49% of the voting rights, which was sufficient to elect at least two and potentially three independent directors.

29.    In committing the wrongful acts alleged herein, each of the Defendants has acted in concert and as part of an enterprise with each of the other Defendants, and has pursued, or joined in the pursuit of, a common course of conduct, and has acted in concert with and conspired with each of the other Defendants in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged which gives rise to their primary liability, the D&O Defendants are liable for aiding and abetting and/or assisting the other Defendants in breaching their respective duties.

30.    Plaintiff is unaware of the true names or capacities of the defendants sued under the fictitious names Does 1 through 10. Plaintiff will seek leave of Court to amend this Complaint to allege the names and capacities of the Does as soon as they are ascertained. Plaintiff believes that each of these fictitiously named defendants is responsible in some manner for the acts or omissions alleged in this Complaint and that Plaintiff's injuries and damages were proximately caused by the acts or omissions of these defendants.

31.    Plaintiff is informed and believe that at all times material herein, each of the defendants was the agent, employee, co-conspirator, and/or partner of each of the remaining defendants, and was, in doing the things complained of

EXHIBIT B - 010

herein, acting within the course and scope of said agency, employment, conspiracy, and/or partnership, and acting also with the full knowledge and/or subsequent ratification of his/her/its principals, employers, co-conspirators, and/or partners.

## JURISDICTION AND VENUE

32.    This Court has personal jurisdiction over defendants because they maintain offices and/or conduct business in San Luis Obispo County, California, and/or

33.    This Court has jurisdiction over this entire action because it is a civil action wherein the damages sought are in excess of the jurisdictional limits of this Court, and Defendants are subject to personal jurisdiction in the State of California.

34.    Venue is proper in the Superior Court of California, County of San Luis Obispo, pursuant to Code of Civil Procedure section 392 because the Ranches, which are the subject matter of this action, are located in the County of San Luis Obispo.

35.    Alternatively, venue is proper in this judicial district pursuant to California Code of Civil Procedure section 395 because at least one defendant resides in this district, and the injuries giving rise to this action occurred in this district.

36.    There is no diversity of citizenship between the parties because as a limited liability company, KMBG takes on the citizenship of its members, including Plaintiff Matthew Van Steenwyk.

## FACTUAL ALLEGATIONS

### A.    DEFENDANTS' HISTORY OF SELF-DEALING

37.    Kedrin has used her powers as director of ATA and SDI, as well as her control over the majority of Class A voting shares in ATA and SDI, to engage in acts of self-dealing at the expense and to the detriment of ATA, SDI,

COMPLAINT

EXHIBIT B - 011

ATA Ranches, and their minority shareholders, including Plaintiff' Trusts. Moreover, because Kedrin is an owner of and controls ATA, SDI, and KMBG, each transaction she arranges and/or directs wherein ATA and SDI are forced to subsidize and financially support Adelaida amounts to the transfer of value from one company she controls (ATA) but only personally owns a 23.75% interest in another company she also controls but owns outright (KMBG/Adelaida).  In contrast, Plaintiff's Trusts suffer all of the economic pain and enjoy none of the economic gain from those transactions. Kedrin acknowledged this in an email dated September 26, 2017, stating that "when it's someone else's money, i.e. KMBG or ATA, it is easier to just 'let it go'.  [W]hen it's our own money, it hurts more.  [I]t hurts me a lot!!!!"

38.    Kedrin directed and/or authorized, and D&O Defendants approved and/or ratified, the transactions between ATA and Adelaida that benefited Adelaida and Kedrin, and damaged ATA, SDI, ATA Ranches, and their minority shareholders, including Plaintiff's Trusts. Several of these self-dealing transactions are the subject matter of the 2020 Shareholder Litigation that is currently pending in the Central District of California. *See* Exhibit C.

39.    For example, ATA entered into a Grape Purchase Agreement in or about December 2016 which obligated ATA to sell wine grapes grown on its property to Adelaida for substantially less than their market value. Despite the inherent conflicts of interest, Kedrin executed the Grape Purchase Agreement on behalf of Adelaida. Adelaida paid less than fair market value for the grapes it purchased under the Grape Purchase Agreement. Adelaida resold some of those same grapes to third parties for more than twice the amount that Adelaida paid ATA for the grapes. For example, Adelaida was paid by one of its customers (Opolo Wines LP) $2,750 per ton for zinfandel grapes based on Adelaida's 2018 Summary of Grape Sales, but Adelaida paid ATA only $1,299 per ton for the zinfandel grapes based on ATA's summary of grape invoices. As a result of these

10
COMPLAINT

1   agreements foisted upon it, ATA has been shorted millions of dollars.

2       40.    While ATA was only receiving less than half of market value prices

3   for its premium grapes, it was also being directed by Adelaida to engage in costly

4   farming practices and make capital expenditures sheerly for the benefit of

5   Adelaida but receiving no additional money from Adelaida to pay for these

6   significant costs. As a result, ATA suffered annual losses in excess of $1.5

7   million on average just in operating the Ranches.

8   **B.    THE WINERY AND RANCHES ARE PUT UP FOR SALE**

9       41.    On or about November 11, 2021, ATA entered into an agreement

10  with Zepponi & Company ("Zepponi") to sell two vineyard properties, HMR and

11  Viking ranches. Neither Kedrin nor any of the other Defendants told Matthew

12  and Gretchen that the Ranches were put up for sale. Upon information and belief,

13  KMBG entered into a similar agreement with Zepponi to market and sell

14  properties owned by KMBG, including Adelaida. Zepponi marketed ATAR's

15  ranches as well as those properties owned by KMBG from November 2021 to

16  March 2023.

17      42.    On March 11, 2023, ATA's General Counsel, Defendant Carter,

18  sent Plaintiff an email informing him that ATA was calling a special board of

19  directors meeting the next day to:

20      • consider and approve a letter of intent, "including the $22,500,000

21        purchase price for ATAR's real property assets";

22      • authorize ATA senior management to negotiate a definitive purchase

23        and sale agreement with a preselected buyer, Mount Paso LLC; and

24      • authorize ATA senior management to perform all acts necessary to

25        finalize the sale of ATAR's real property assets.

26  A true and correct copy of the Special ATA Board Meeting presentation that

27  ATA management sent to its Class B shareholders (the "March 12 Special

28  Meeting Binder") is attached hereto as **Exhibit A.**

EXHIBIT B - 013

43.    The March 12 Special Meeting Binder informed Plaintiff that after several rounds of discussions with purchaser Mount Paso, an LOI was agreed to in principle with the following key terms:

- $22,500,000 for ATAR's real property assets;
- 2023 grape crop stays with ATAR;
- 120-day diligence period + 30 days to close;
- buyer takes over the task and expense of the search for water; and
- PSA to be negotiated over the next 30 days.

44.    ATA also disclosed for the first time to Plaintiff that: (i) Zepponi had conducted an appraisal that valued ATAR's ranch properties between $27,500,000 and $35,200,000, as of June 13, 2022; and (ii) Zepponi had received "two verbal offers" prior to receiving the current offer from Mount Paso. The first potential purchaser offered $35 million to buy all assets of ATAR and KMBG. The second potential purchaser made an offer of $31 million for the same properties with a $7 million payout contingent on a groundwater threshold. Both were "all in" offers for all real and personal property held by ATAR and KMBG, including brands, goodwill, equipment, inventory, and crops.

45.    On March 12, 2023, the ATA Board held a special meeting and voted to approve entering into the LOI with Mount Paso to sell the Ranches. Per the meeting minutes, after voting to approve the LOI, Defendant Pierce agreed to reach out to the other Class A shareholder, Brett, as well as the Class B shareholders, Matthew and Gretchen, to offer "a more detailed briefing…." A true and correct copy of the March 12, 2023 Meeting Minutes is attached hereto as **Exhibit B**.

**C.    AFTER REPEATED INQUIRY, PLAINTIFF DISCOVERS SELF-DEALING, MISINFORMATION, AND OBFUSCATION**

46.    While ATA did offer to have a phone call to answer questions regarding the transaction, it did so after the Board meeting had already occurred

EXHIBIT B - 014

1  and the Board had voted to approve the LOI and begin finalizing the sale. In

2  other words, Kedrin was the *only* shareholder allowed to voice her opinion on the

3  transaction before the Board rubber stamped it. Even Brett, a Class A

4  shareholder, was excluded from providing input about this decision prior to

5  D&O Defendants approving it.

6       47.    On March 13, 2023, Defendants Pierce and Carter held a virtual

7  Microsoft Teams meeting with Matthew, Gretchen, and Brett to discuss the

8  transaction that the Board had already approved. When asked about the other

9  offers that exceeded $30 million, Pierce and Carter stated that they chose not to

10  follow up because they did not believe they were serious offers. In fact, Carter

11  told Plaintiff that the "offers were not worth the paper they were **not** written on."

12  When pressed on why they would not at least try to negotiate further when the

13  offers exceeded $30 million, Defendants stated that they believed these buyers

14  would negotiate the deal down further as due diligence proceeded, even though

15  there was no firm evidence that this would in fact happen.

16       48.    Critically, during the March 13 Teams meeting, Defendant Pierce

17  also indicated that the $21+ million in proceeds from the sale would not be given

18  to ATA's shareholders, as one would expect, but rather ATA intends to retain

19  this cash for "litigation needs."  However, the pending litigation at issue is a

20  shareholder derivative suit; thus, if the litigation is successful, ATA would not

21  pay out money, but rather would receive money from Kedrin, its directors,

22  officers, and Adelaida for breaching their fiduciary duties and/or aiding and

23  abetting those breaches to ATA. Nor does ATA have to reserve for its litigation

24  expenses, as, upon information and belief, ATA and SDI's insurance policies

25  provide coverage for the legal fees incurred on behalf of Kedrin and the officers

26  and directors at that time. Thus, Defendants' purported reason for keeping the

27  funds is simply fallacious.

28       49.    It logically follows then, that the only reason to retain the proceeds

13

COMPLAINT

of the sale, rather than distributing the proceeds to the shareholders as a dividend as would be expected, is to indemnify the directors, officers, and controlling shareholder for their illicit activities. The defendants in the 2020 Shareholder Litigation (Kedrin and the directors and officers of ATA during the relevant time period) are being sued because they caused ATA to enter into and rubberstamped deals for the benefit of the controlling shareholder at the expense of the minority shareholders. Thus, any verdict against these defendants will be based upon a finding by the jury that they did not act in good faith or in a manner that could reasonably believed to be in the best interests of ATA. ATA and its minority shareholders should therefore not be made to ultimately pay for the misdeeds of its fiduciaries.

50.    Perhaps more importantly, Defendants' desire to create a slush fund for their own liability sheds light on the true motivation for why the Ranches are being sold now at a price that is much lower than two other offers presented and ATA's own appraisals—unsurprisingly, it's more self-dealing. ATA kept these properties for years despite dumping well over $13 million into the property and losing on average $1.5 million per year. This sudden reversal of course and decision to sell the properties for millions less than their own appraisals in a significantly tougher real estate market only makes sense when put into the context of what the proceeds are being used for—to further Defendants' own self-interests, and not the interests of ATA and its shareholders. With the trial imminent, Defendants know that their time to set up their funding mechanism is running out.

51.    Defendant Pierce also refused to answer any questions about the sale of the winery. Thus, while Pierce and Carter provided some information about the sale, the call raised many more questions than were answered.

52.    Because ATA was not being forthcoming with the critical details about the sales and prior offers, on March 15, 2023, Matthew sent a written

corporate record request to ATA seeking documents and information that would answer the open questions Matthew had. However, ATA's response, through its attorneys, was to regurgitate the same information it had previously provided.

53.    Matthew has subsequently followed up with additional questions and requests for records in an attempt to gain some clarity on these issues, but Defendants have still refused to fully disclose the documents and information surrounding this transaction.

54.    Considering Defendants' prior history of self-dealing, the obfuscation regarding the other offers, the purchase price that was millions below those offers and appraisals of the property, and ATA's intention to unnecessarily withhold proceeds of the sale to indemnify Defendants' wrongdoing, Plaintiff has been forced to litigate this matter.

## **DEMAND ALLEGATIONS**

55.    Plaintiff brings his first, second, and third causes of action derivatively in the right of and for the benefit of Nominal Defendants ATA and ATA Ranches to redress injuries suffered and to be suffered by them as a result of Defendants' breaches of fiduciary duty, abuse of control, and gross mismanagement.  Plaintiff and his counsel will adequately and fairly represent the interests of ATA and ATA Ranches in enforcing and prosecuting their rights. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

56.    Plaintiff was a shareholder of ATA and ATA Ranches at the time of the transgressions of which he complains and continues to be so.  Plaintiff is the current Trustee for two Class B shareholders of ATA.  Because ATA Ranches is a subsidiary wholly owned by ATA, Plaintiff, as a shareholder of parent company ATA, asserts claims on behalf of ATA Ranches through this Complaint.

57.    No demand was made upon ATA and ATA Ranches to enjoin the

EXHIBIT B - 017

1    sale of the Ranches to Mount Paso. Such a demand would be a useless act
2    because as evidenced by the facts above, D&O Defendants are incapable of
3    making an impartial decision with respect to the sale of the Ranches to Mount
4    Paso and have already made false representations about other offers to purchase
5    the Ranches. Defendants Kedrin, Pierce, McCoy, Carter, and Duggan also lack
6    the independence necessary to consider this sale objectively as they are named
7    defendants in the 2020 Shareholder Litigation and their influence on fellow
8    board members to approve this transaction, including their presence during the
9    vote, is pervasive.

10    58.    Defendants' lack of independence with respect to the sale of the
11    Ranches is further underscored by the fact that Brett, a Class A shareholder, was
12    not permitted to participate in the vote to enter into the LOI with Mount Paso.

13    59.    Additionally, as a Class B shareholder, Plaintiff is not entitled to
14    vote on any matters constituting a Fundamental Business Transaction with
15    respect to ATA's Non-Oilfield Business, which includes the Ranches, as those
16    terms are defined pursuant to a confidential settlement and release agreement
17    dated January 24, 2011.

18
19    **FIRST CAUSE OF ACTION**
20    **DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY**

21    60.    Plaintiff incorporates by reference the allegations set forth above as
22    though fully restated herein.

23    61.    Defendants, as ATA and ATA Ranches' directors, officers, and
24    majority shareholder, were and are required to control and manage ATA and
25    ATA Ranches to the best of their abilities in a fair, just, and equitable manner,
26    refrain from abusing their positions of control, and not to favor their own
27    interests at the expense of ATA, ATA Ranches, and their shareholders.

28    62.    Defendants violated and are continuing to violate their fiduciary

EXHIBIT B - 018

duties to ATA, ATA Ranches, and their shareholders, including without limitation their duties of care, good faith, honesty, and loyalty, by selling ATA's property in order to profit and protect their own interests rather than acting in ATA's and ATA Ranches' interests.

63.     The wrongful conduct described above was not and is not due to an honest error in judgment, but rather to Defendants' inexcusable inattention, bad faith and/or reckless disregard of the rights and interest of ATA, ATA Ranches, and their shareholders. Defendants have acted without the reasonable and ordinary care which they owe ATA, ATA Ranches, and their shareholders.

64.     As a result of the foregoing, Defendants have caused harm to ATA, ATA Ranches, and their shareholders, and have breached and are breaching their fiduciary duties by knowingly aiding, encouraging, cooperating, participating in, and/or substantially assisting the other Defendants in the breaches of their fiduciary duties.

65.     Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff, as the sale of the Ranches is imminent.

66.     Plaintiff has no adequate remedy at law for the injuries threatened and an award of monetary damages would not provide an adequate remedy as the Ranches are one-of-a-kind properties that have been in Plaintiff's family since the 1980's.

## SECOND CAUSE OF ACTION

### DERIVATIVE CLAIM FOR CORPORATE WASTE

67.     Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

68.     As a result of the misconduct described above, and by failing to properly consider the interests of ATA, ATA Ranches, and its shareholders,

D&O Defendants have caused ATA and ATA Ranches to waste valuable corporate assets.

69.    Specifically, D&O Defendants authorized ATA to sell the Ranches at a price that is lower than its own appraisals to ensure that D&O Defendants had a reserve fund to indemnify themselves for any judgment against them as a result of the 2020 Shareholder Litigation. D&O Defendants also have agreed to permit Adelaida to keep the current 2023 grape crop harvest from ATA's properties without Adelaida having to pay ATA any compensation for these grapes or rent for use of the Ranches.

## THIRD CAUSE OF ACTION
## DERIVATIVE CLAIM FOR DECLARATORY RELIEF

70.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

71.    An actual controversy exists between ATA and ATA Ranches on the one hand, and Adelaida and D&O Defendants on the other hand, as to the future rights and obligations of the parties arising from the sale of the Ranches.

72.    Based upon the allegations set forth above, Plaintiff contends that the Letter of Intent and any agreement for sale of the Ranches were and are invalid and unenforceable or, at least, voidable.

73.    Plaintiff also contends that Defendants are using the proceeds of the sale of the Ranches to indemnify themselves for their own breaches of their fiduciary duties in the 2020 Shareholder Litigation.

74.    Plaintiff is informed and believes and, on that basis alleges, that Defendants dispute Plaintiff's contention and contend that the contracts are valid and that they can use the sales proceeds for their own indemnification.

75.    Plaintiff desires a judicial determination of and declaration on these issues.

COMPLAINT

EXHIBIT B - 020

76.     A judicial declaration is necessary and appropriate at this time in order to allow Plaintiff and Defendants to ascertain their rights and obligations with respect to the contracts and to avoid a multiplicity of actions.

**FOURTH CAUSE OF ACTION**

**DIRECT CLAIM FOR BREACH OF FIDUCIARY DUTY BY CONTROLLING SHAREHOLDER**

77.     Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

78.     Defendant Kedrin, the controlling shareholder of ATA, owes fiduciary duties to Plaintiff and the trusts he represents. Kedrin is required to act with the highest obligations of good faith, loyalty, fair dealing, due care, and candor. These duties require her to refrain from abusing her position of control over ATA to benefit herself or another entity in which she owns substantial interests, like Adelaida and KMBG, at the expense of the minority shareholders.

79.     As set forth above, Kedrin has breached her fiduciary duties to ATA's minority shareholders by: (i) prioritizing payments to herself for the improper indemnification of any judgment from the 2020 Shareholder Litigation, (ii) causing the Ranches to be sold at a purchase price lower than recent appraisals, (iii) guaranteeing Adelaida's use of the Ranches through this year's harvest, and (iv) permitting Adelaida to keep the resulting grape crop at no charge.

80.     As a result of Kedrin's breaches of her fiduciary duties, Plaintiff's Trusts have sustained and will continue to sustain damages and injuries including, but not limited to, unpaid dividends from ATA.

81.     These damages are unique to Plaintiff's Trusts and are not incidental to the damages done by Kedrin to ATA as a whole. The amount of damages will be determined according to proof at trial.

EXHIBIT B - 021

82.    In engaging in the actions and conduct alleged above, Defendant Kedrin acted with recklessness, oppression, fraud, and malice. Plaintiff and the trusts are, therefore, entitled to an award of punitive damages against Kedrin.

## FIFTH CAUSE OF ACTION

### DIRECT CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY BY CONTROLLING SHAREHOLDER

83.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

84.    As described above, D&O Defendants, Adelaida, and KMBG possessed actual knowledge that Kedrin owed fiduciary duties to ATA's minority shareholders, including Plaintiff and the trusts he represents. Adelaida knew of those fiduciary duties through its CEO (Kedrin), its directors (Carter and Kedrin's step-son, Duggan), and other members of Adelaida's management. KMBG knew of those fiduciary duties through its Managing Member, Kedrin.

85.    By forcing a sale of the Ranches that provided constructive dividends to Adelaida and Kedrin in the form of receiving this year's current grape crop from ATAR, forcing a sale of the Ranches to fund her own indemnification in the 2020 Shareholder Litigation, and preventing ATA from issuing dividends to Plaintiff's Trusts, Kedrin breached her fiduciary duties to Plaintiff and his trusts.

86.    D&O Defendants, Adelaida, and KMBG possessed actual knowledge that Kedrin owed fiduciary duties to Plaintiff and breached her fiduciary duties to Plaintiff's Trusts.

87.    D&O Defendants, Adelaida, and KMBG gave substantial assistance and/or encouragement to Kedrin in paying constructive dividends in violation of her fiduciary duties. The conduct of D&O Defendants is described above. D&O Defendants substantially assisted and/or encouraged Kedrin by failing to take

20
COMPLAINT

1  action to prohibit the serial breaches of fiduciary duty by the controlling

2  shareholder, also detailed above.

3      88.    D&O Defendants, Adelaida, and KMBG's conduct in aiding and

4  abetting Kedrin was a substantial factor in causing Plaintiff to sustain unique

5  damages and injuries including, but not limited to, unpaid dividends from ATA.

6  Those amounts will be determined according to proof at trial.

7      89.    In engaging in the actions and conduct alleged above, said

8  Defendants acted with recklessness, oppression, fraud, and malice. Plaintiff and

9  his trusts are, therefore, entitled to an award of punitive damages against said

10  Defendants.

11

12              **SIXTH CAUSE OF ACTION**

13  **DIRECT CLAIM FOR ORDER COMPELLING PRODUCTION OF
      CORPORATE RECORDS**

14

15      90.    Plaintiff incorporates by reference the allegations set forth above as

16  though fully restated herein.

17      91.    Matthew made his written request for an inspection of corporate

18  records and information to ATA on March 15, 2023, as is permitted under

19  California Corporations Code section 1601.

20      92.    ATA produced some of the requested ATA corporate information

21  about the sale, but not all the requested information.

22      93.    Matthew made his follow-up written requests for ATA corporate

23  information on March 28, 2023 and again on April 26, 2023 to ATA's counsel,

24  providing supporting legal authority for his valid request. Plaintiff's counsel also

25  met and conferred telephonically with ATA's counsel in an attempt to avoid

26  litigation about this issue. However, despite Plaintiff's efforts D&O Defendants

27  again failed to produce all the ATA corporate information requested by Plaintiff.

28  The information sought by Plaintiff was necessary to investigate the wrongdoing

EXHIBIT B - 023

as described in this complaint.

94.     Plaintiff is informed and believes that D&O Defendants' response to Plaintiff's demand for corporate information was coordinated and orchestrated by Defendants Kedrin, Carter, Pierce, McCoy, and Duggan.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment against Defendants on behalf of himself, ATA, and ATA Ranches as follows:

1.     A declaration that D&O Defendants have breached and/or aided and abetted the breach of their fiduciary duties to ATA and ATA Ranches;

2.     Temporary, preliminary and permanent injunctive relief enjoining and restraining Defendants from executing the sale of the Ranches;

3.     In the alternative, a declaration that the transfer of the Ranches from ATA Ranches to Mount Paso, LLC is void and will be set aside if the sale has already been consummated;

4.     Temporary, preliminary and permanent injunctive relief enjoining and restraining Defendants from reserving or using any company funds for the indemnification of D&O Defendants;

5.     A declaration that Defendants cannot use ATA or ATA Ranches funds for indemnification;

6.     A determination and award to ATA and ATA Ranches for the damages sustained by them as a result of the violations set forth above from each of D&O Defendants, jointly and severally, together with interest thereon;

7.     Attaching, impounding, imposing a constructive trust on or otherwise restricting Defendants' assets, including the proceeds of any sale of assets, so as to assure that Plaintiff, on behalf of ATA, ATA Ranches, and their shareholders, have an effective remedy;

8.     A right of attachment or provisional remedy against the Ranches or

EXHIBIT B - 024

other property of Mount Paso;

9. A declaration that the controlling shareholder Kedrin, breached her fiduciary duties to the minority shareholders by paying herself constructive dividends and preventing dividends from being paid to the minority shareholders, and awarding damages for those breaches;

10. A declaration that D&O Defendants, Adelaida, and KMBG aided and abetted Kedrin in her breach of fiduciary duties;

11. A declaration that D&O Defendants, Kedrin, Adelaida, and KMBG are liable under the common law of unjust enrichment;

12. Compelling the production of requested corporate records and information from D&O Defendants;

13. An award of punitive and exemplary damages;

14. An award of costs and disbursements incurred in this action, including reasonable attorneys' fees, accountants' fees and expert witness fees, costs and expenses;

15. Lawful interest according to proof at the time of trial; and

16. Any such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues which are subject to adjudication by a trier of fact.

DATED: April 28, 2023       UMHOFER, MITCHELL & KING, LLP

By: _____
Matthew Donald Umhofer
J. Anthony King
Attorneys for Matthew Van Steenwyk

23
COMPLAINT

**<u>VERIFICATION</u>**

I, Matthew Donald Van Steenwyk, verify that I am a shareholder of ATA and ATA Ranches.  I have reviewed the allegations in this Verified Shareholder Complaint.  As to those allegations of which I have personal knowledge, I believe them to be true; as to those allegations of which I lack personal knowledge, I rely upon my counsel and counsel's investigation, and believe them to be true.  Having received a copy of the complaint and reviewed it with counsel, I authorize its filing.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on 28 April `23.

_____
Matthew D. Van Steenwyk

---

24
COMPLAINT

EXHIBIT B - 026

EXHIBIT C

UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
J. Anthony King (SBN 297279)
767 S. Alameda St., Suite 270
Los Angeles, California 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
matthew@umklaw.com
anthony@umklaw.com

ELECTRONICALLY FILED:  02/22/24
San Luis Obispo Superior Court
By:     Landrum, Marlys

Attorneys for Plaintiff Matthew Van Steenwyk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN LUIS OBISBO

| | |
|---|---|
| MATTHEW D. VAN STEENWYK, Individually as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust, and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust,<br><br>Plaintiff,<br><br>v.<br><br>KEDRIN E. VAN STEENWYK, Individually, as Successor Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust; DANIEL CARTER, Individually; KIERAN DUGGAN, Individually; PAMELA PIERCE, Individually; JOSEPH MCCOY, Individually; STEVE ORR, Individually; WESLEY SHEDD, Individually; GORDON THOMSON, Individually; ADELAIDA CELLARS, INC.; KMBG, LLC; APPLIED TECHNOLOGIES ASSOCIATES, INC.; ATA RANCHES, INC., and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No. 23CVP-0146<br><br>**SECOND AMENDED VERIFIED COMPLAINT FOR:**<br><br>1. **BREACH OF FIDUCIARY DUTY;**<br>2. **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;**<br>3. **DECLARATORY RELIEF;**<br>4. **BREACH OF CONTRACT;**<br>5. **PRODUCTION OF CORPORATE RECORDS; AND**<br>6. **VIOLATION OF COLORADO REV. STAT. § 7-80-408.**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

EXHIBIT C - 001

Plaintiff Matthew Van Steenwyk ("Plaintiff" or "Matthew"), Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust ("Matthew's Trusts"), and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk – Marsh Issue Trust ("Gretchen's Trusts" and referred to collectively at times as "Plaintiff's Trusts"), bring this action against Defendants Kedrin E. Van Steenwyk ("Kedrin"), Daniel Carter, Kieran Duggan, Pamela Pierce, Joseph McCoy, Steve Orr, Wesley Shedd, Gordon Thomson (Carter, Duggan, Pierce, McCoy, Orr, Shedd, and Thomson are collectively referred to herein as "D&O Defendants"), Applied Technologies Associates, Inc. ("ATA"), ATA Ranches, Inc. ("ATAR"), Adelaida Cellars, Inc. ("Adelaida"), and KMBG, LLC ("KMBG") for breaches of fiduciary duty and aiding and abetting.  Plaintiff also brings this action against Defendants ATA, ATAR, and KMBG for violations of California and Colorado law for failure to provide corporate records regarding the pending sale of ATA and KMBG's assets, which benefits ATA's controlling shareholder, Kedrin, and ATA directors and officers, at the expense of ATA's minority shareholders, and for a declaratory judgment of Matthew's rights under the 2011 settlement agreement and shareholders agreement and injunctive relief.

## NATURE OF THE ACTION

1.     Plaintiff, as trustee of two minority shareholders of ATA, brings this action to halt more self-dealing imposed upon ATA by its controlling shareholder, Kedrin. Incredibly, after being exposed for looting ATA and its minority shareholders for tens of millions of dollars in a pending shareholder derivative lawsuit, Defendants are permitting ATA's assets and resources to be used in a way that confers a constructive dividend to Kedrin and scheming to use ATA assets to reimburse Kedrin and the other directors and officers for judgments awarded against defendants in a pending litigation. Plaintiff must seek relief from the Court to put an end to this continued oppression of the minority shareholders by the

1

SECOND AMENDED COMPLAINT

EXHIBIT C - 002

1    controlling shareholder.

2       2.      ATA is a gas and oil drilling technology company that is owned by

3    the four children of founder Donald Van Steenwyk—Matthew, Brett, and

4    Gretchen, and Kedrin. Each of the four siblings owns 23.75% of the non-voting

5    Class B shares of ATA. Kedrin, however, is the controlling shareholder of ATA,

6    via her 51% interest in the Class A voting shares (which represent 5% of ATA's

7    total equity). ATA, through its wholly-owned subsidiary, ATA Ranches, also owns

8    two vineyard properties, Viking and HMR Ranches (the "Ranches"), in Paso

9    Robles, California, which produce premium quality wine grapes.

10      3.      KMBG is a Colorado holding company that owns the Adelaida

11   winery, also located in Paso Robles, as well as the real property the winery sits

12   upon and some other related assets. Kedrin holds a majority interest in KMBG,

13   while Matthew holds a 0.16% interest. Gretchen does not own any interest in

14   KMBG.[1]

15      4.      Defendants have a well-documented history of engaging in self-

16   dealing transactions between ATA and Adelaida/KMBG that result in ATA and

17   its shareholders subsidizing KMBG and Adelaida—companies that Kedrin

18   majority-owns. The disparity in the ownership percentages between ATA and

19   KMBG allows Kedrin to profit from diverting money from ATA, where she owns

20   just over 26% of the shares, into KMBG/Adelaida's coffers, in which she owns a

21   majority interest.

22      5.      Several self-dealing transactions are the subject matter of a

23   shareholder derivative lawsuit, *Van Steenwyk v. Van Steenwyk et al.,* Case No.

24   2:20-cv-02375 FLA (AFMx), (the "2020 Shareholder Litigation") that is currently

25   pending in the Central District of California. A true and correct copy of the Fourth

26   _____

27       [1] Plaintiff's original complaint states the percentage of each owner's interest
     in KMBG as they were prior to Elizabeth Van Steenwyk's (the matriarch of the
28   family) passing. Plaintiff has revised this paragraph due to a likely change in
     ownership percentages in the relevant trusts that hold these shares after Elizabeth's
     death.

2

SECOND AMENDED COMPLAINT

EXHIBIT C - 003

Amended Complaint which describes in detail these illicit transactions is attached hereto **as Exhibit C** and incorporated by reference herein.

6.      For example, ATA has been forced by Kedrin to sell its wine grapes to Adelaida for substantially less than their market value causing ATA to hemorrhage massive amounts of money—in excess of $1.5 million annually on average—in its operation of the Ranches so that Adelaida (and thereby Kedrin) can make a profit. In fact, Adelaida has resold the lesser quality grapes to other wineries for double the price that ATA receives from Adelaida—thus demonstrating that the Ranches could be profitable if they were permitted to charge market prices for its grapes rather than be forced to subsidize Adelaida and Kedrin.

7.      Although ATA and ATA Ranches could earn substantial profits from the growing and selling of premium wine grapes, Kedrin and her co-defendants have instead caused ATA Ranches to enter into lop-sided agreements with Adelaida for the 2022 and 2023 grape crops, whereby Adelaida is permitted to use the Ranches however it sees fit and take the wine grapes for free.

8.      On March 11, 2023, Defendants informed Plaintiff that they had scheduled an ATA Board meeting the next day to enter into a letter of intent ("LOI") to sell the Ranches for $22,500,000 to Mount Paso, LLC ("Mount Paso"). This purchase price was significantly below the two appraisals that ATA had received within the past two years for the Ranches ($28 million and $27.5 to $35.2 million).

9.      Defendants also disclosed for the first time that they previously received two "verbal offers" for the Ranches and KMBG's assets which were significantly higher ($35,000,000 and $31,000,000) than the Mount Paso offer in the Special ATA Board Meeting materials that they sent Plaintiff on March 11, 2023. During a March 13 Microsoft Teams meeting with Matthew, Gretchen, and Brett to answer questions on the transaction, Defendants Pierce and Carter stated

1   that they did not take these verbal offers seriously because "they weren't worth the

2   paper they were **not** written on." Plaintiff would later discover that Pierce and

3   Carter's representations were patently false—**both of these offers were provided**

4   **in writing** and originated from very reputable and well financed players in the

5   wine industry. Thus, it is now clear that Pierce and Carter's excuses for not taking

6   these other offers seriously were nothing more than misinformation meant to

7   mislead the minority shareholders about their decision to turn down those higher

8   offers.

9       10.    ATA also negotiated a concession with Mount Paso whereby ATAR

10  would keep the current year's grape crop, **which ATA/ATAR gives to Adelaida**

11  **for free** (based upon a revised agreement between ATAR and Adelaida,

12  guaranteeing that ATAR would lose money). The only beneficiaries of this

13  concession are Adelaida, KMBG, and their majority owner, Kedrin—making this

14  a clear-cut case of self-dealing. Unsurprisingly, Adelaida's general manager was

15  the point person for these negotiations.

16      11.    During the March 13 Teams meeting, Defendants Pierce and Carter

17  informed Matthew, Gretchen, and Brett that proceeds from a sale of the Ranches

18  **will not be distributed as a dividend to ATA's shareholders**, as one would

19  expect, but instead, will be "reserved" for the 2020 Shareholder Litigation.

20  However, ATA has no need to reserve money for this lawsuit because: (i) it would

21  be receiving money from Kedrin, the directors, officers, and Adelaida if a

22  judgment is awarded, not paying out money as the 2020 Shareholder Litigation is

23  a shareholder derivative lawsuit; and (ii) ATA has insurance policies that are

24  paying for the defense of the case. Thus, the *only* reason to set aside money for the

25  2020 Shareholder Litigation is to indemnify Kedrin and her fellow directors and

26  officers for their prior self-dealing transgressions.

27      12.    Based on the above representation from Defendants Pierce and Carter

28  (and Kedrin's pattern of self-dealing), Plaintiff is also informed and believes that

ATA funds are being wrongfully set aside as a slush fund to indemnify Kedrin and the directors and officers of ATA for the money they will have to pay back to the minority shareholders and ATA and sister company Scientific Drilling International, Inc. ("SDI"), even though they were the wrongdoers that caused the harm to the companies that resulted in the 2020 Shareholder Litigation.

13.    Given the deals and concessions made to benefit Adelaida, the money being "reserved" for indemnification, Defendants' false representations, and the history of self-dealing, it is evident that Kedrin and her co-defendants have once again created a scheme designed to take millions of dollars out of Plaintiff's pockets and place them into Defendants' coffers in direct violation of their fiduciary duties.

## **PARTIES**

14.    Plaintiff Matthew D. Van Steenwyk is a citizen of the State of Nevada and is Trustee and beneficiary of The Matthew Van Steenwyk GST Trust and Trustee and beneficiary of The Matthew Van Steenwyk Issue Trust ("Matthew's Trusts"). Matthew, through Matthew's Trusts, is the owner of 23.75% of the Class B non-voting shares of ATA. Through Matthew's Trusts, Plaintiff has continuously owned ATA stock at all times relevant to the allegations of this Complaint, continues to be an ATA shareholder today, and intends to remain a shareholder. Plaintiff, through Matthew's Trusts, also owns an interest in KMBG of 0.16736%.

15.    Matthew is also Co-Trustee of Gretchen's Trusts with respect to the shares of ATA Class B stock owned by Gretchen's Trusts. At all times relevant to the allegations in this Complaint, Gretchen's Trusts owned 23.75% of the Class B shares in ATA. Gretchen's Trusts collectively continue to be an ATA shareholder and intend to remain an ATA shareholder. Gretchen's Trusts do not own any interest in KMBG.

16.    Defendant ATA is a corporation incorporated under the laws of the

5

SECOND AMENDED COMPLAINT

EXHIBIT C - 006

State of California and having its principal place of business in the State of California. ATA is engaged in the business of providing services and equipment to individuals and companies involved in oil and gas exploration. ATA has, historically, researched and developed tools and technologies for its own use and the use of its sister company, SDI. ATA is headquartered and conducts substantial operations in San Luis Obispo County, California. ATA, through its wholly-owned subsidiary ATAR, also owns ranching properties in Paso Robles, California that exclusively provides grapes to Adelaida Cellars winery.

17.  Defendant ATA Ranches (a/k/a "ATAR") is a corporation incorporated under the laws of the State of Delaware.  On information and belief, ATA Ranches' principal place of business is in the State of California, as all or almost all of its assets are located in Paso Robles, California, and all of its business is conducted there as well.  ATA Ranches, the corporate entity formed in 2018, is a wholly-owned subsidiary of ATA.  Although ATA Ranches is a separate corporate entity on paper, in reality, it does not maintain corporate formalities, such as holding regular meetings and keeping minutes of corporate meetings.  In fact, the directors of ATA hold board meetings and vote on decisions regarding assets owned by ATA Ranches.  On information and belief, ATA Ranches is the alter ego of ATA.

18.  Defendant Kedrin E. Van Steenwyk is a citizen of the State of South Carolina. Plaintiff is informed, and on that basis alleges, that Kedrin is trustee of The Kedrin Van Steenwyk GST Trust and trustee and beneficiary of The Kedrin Van Steenwyk Issue Trust ("Kedrin's Trusts").  Kedrin, through her Trusts, is the owner of 23.75% of the Class B shares of ATA and SDI.  Kedrin is also Trustee of the Survivor's Trust under the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust, through which she has record title to 25,500/50,000 (51%) of the outstanding shares of ATA's Class A voting stock. Kedrin controls ATA, ATAR, KMBG, and Adelaida by reason of the following:

6

SECOND AMENDED COMPLAINT

EXHIBIT C - 007

  a. Kedrin controls the majority of all issued and outstanding Class A voting shares in ATA;

  b. Kedrin is a director of ATA;

  c. Kedrin controls Adelaida through her control over its only shareholder, KMBG.

  d. Kedrin controls a majority interest in KMBG;

  e. Kedrin is the Manager of KMBG; and

  f. Kedrin is the chief executive officer and a director of Adelaida.

19. Defendant KMBG, LLC is a Colorado limited liability company, with its principal place of business in Paso Robles, California. KMBG owns 100% of Adelaida's stock.

20. Defendant Adelaida Cellars, Inc. is a corporation incorporated under the laws of the State of California. KMBG purchased 100% of the stock of Adelaida in January 2013 for substantially less than its market value, raising serious tax implications. Adelaida's principal place of business is in San Luis Obispo County, California.

21. Defendant Daniel Carter is an individual residing in the State of Texas. At all times relevant, Defendant Carter served as Secretary and General Counsel for ATA. Defendant Carter also serves as a director and officer of ATA Ranches. Since approximately August 2016, Defendant Carter has also served as a director of Adelaida Cellars, Inc.

22. Defendant Kieran Duggan is an individual residing in the State of Texas. Defendant Duggan is the CFO of ATA and ATA Ranches. Defendant Duggan is also a director of ATA Ranches. In May 2018, Defendant Duggan was appointed a director of Adelaida.

23. Defendant Pamela Pierce is an individual residing in the State of Texas. Defendant Pierce is a director of ATA and a director and officer of ATA Ranches.

---

7

SECOND AMENDED COMPLAINT

EXHIBIT C - 008

24.     Defendant Joseph McCoy is an individual residing in the State of Texas.  Defendant McCoy is a director of ATA.

25.     Defendant Steve Orr is an individual residing in the State of Texas.  Defendant Orr is a director of ATA.

26.     Defendant Wesley Shedd is an individual residing in the State of Texas.  Defendant Shedd is currently the CEO of ATA, and as the CEO, holds a director position as well.

27.     Defendant Gordon Thomson is an individual residing in the State of Texas.  Defendant Thomson is a director of ATA.

28.     Interested non-party Brett H. Van Steenwyk is Trustee of the Brett H. Van Steenwyk Nonexempt Marital Trust under the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust, which trust is the holder of record title to 24,500/50,000 (49%) of the outstanding shares of ATA Class A Voting Stock. Brett also owns 23.75% of the Class B shares in ATA. Brett also owns a less-than-majority interest in KMBG.

29.     In early 2023, Brett was forced to file a separate lawsuit against Kedrin and D&O Defendants, *Brett Van Steenwyk v. Kedrin Van Steenwyk et al.,* Case No. 23CVP-0068 (San Luis Obispo Cty. Feb. 16, 2023), because Defendants had used an artifice to improperly deny Brett the right to vote for independent directors of his choice, even though he held 49% of the voting rights, which was sufficient to elect at least two and potentially three independent directors.

30.     In committing the wrongful acts alleged herein, each of the Defendants has acted in concert and as part of an enterprise with each of the other Defendants, and has pursued, or joined in the pursuit of, a common course of conduct, and has acted in concert with and conspired with each of the other Defendants in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged which gives rise to their primary liability, the D&O Defendants are liable for aiding and abetting and/or assisting the other

8

SECOND AMENDED COMPLAINT

EXHIBIT C - 009

Defendants in breaching their respective duties.

31. Plaintiff is unaware of the true names or capacities of the defendants sued under the fictitious names Does 1 through 10. Plaintiff will seek leave of Court to amend this Complaint to allege the names and capacities of the Does as soon as they are ascertained. Plaintiff believes that each of these fictitiously named defendants is responsible in some manner for the acts or omissions alleged in this Complaint and that Plaintiff's injuries and damages were proximately caused by the acts or omissions of these defendants.

32. Plaintiff is informed and believe that at all times material herein, each of the defendants was the agent, employee, co-conspirator, and/or partner of each of the remaining defendants, and was, in doing the things complained of herein, acting within the course and scope of said agency, employment, conspiracy, and/or partnership, and acting also with the full knowledge and/or subsequent ratification of his/her/its principals, employers, co-conspirators, and/or partners.

## JURISDICTION AND VENUE

33. This Court has personal jurisdiction over defendants because they maintain offices and/or conduct business in San Luis Obispo County, California, and/or

34. This Court has jurisdiction over this entire action because it is a civil action wherein the damages sought are in excess of the jurisdictional limits of this Court, and Defendants are subject to personal jurisdiction in the State of California.

35. Venue is proper in the Superior Court of California, County of San Luis Obispo, pursuant to Code of Civil Procedure section 392 because the Ranches, which are the subject matter of this action, are located in the County of San Luis Obispo.

36. Alternatively, venue is proper in this judicial district pursuant to California Code of Civil Procedure section 395 because at least one defendant

9

SECOND AMENDED COMPLAINT

EXHIBIT C - 010

resides in this district, and the injuries giving rise to this action occurred in this district.

37.    There is no diversity of citizenship between the parties because as a limited liability company, KMBG takes on the citizenship of its members, including Plaintiff Matthew Van Steenwyk.

## FACTUAL ALLEGATIONS

### A.    DEFENDANTS' HISTORY OF SELF-DEALING

38.    For years, Kedrin has used her powers as director of ATA and SDI, as well as her control over the majority of Class A voting shares in ATA and SDI, to engage in acts of self-dealing at the expense and to the detriment of ATA, SDI, ATA Ranches, and their minority shareholders, including Plaintiff's Trusts. Moreover, because Kedrin is an owner of and controls ATA, SDI, and KMBG, each transaction she arranges and/or directs wherein ATA and SDI are forced to subsidize and financially support Adelaida amounts to the transfer of value from one company she controls (ATA) but only personally owns a 23.75% interest in another company she also controls but owns a majority interest in (KMBG/Adelaida).  In contrast, Plaintiff's Trusts suffer all of the economic pain and enjoy none of the economic gain from those transactions. Kedrin acknowledged this in an email dated September 26, 2017, stating that "when it's someone else's money, i.e. KMBG or ATA, it is easier to just 'let it go'.  [W]hen it's our own money, it hurts more.  [I]t hurts me a lot!!!!"

39.    Kedrin directed and/or authorized, and D&O Defendants approved and/or ratified, the transactions between ATA and Adelaida that benefited Adelaida and Kedrin, and damaged ATA, SDI, ATA Ranches, and their minority shareholders, including Plaintiff's Trusts. Several of these self-dealing transactions are the subject matter of the 2020 Shareholder Litigation that is currently pending in the Central District of California. *See* Exhibit C.

40.    For example, ATA entered into a Grape Purchase Agreement in or

10

## SECOND AMENDED COMPLAINT

EXHIBIT C - 011

about December 2016 which obligated ATA to sell wine grapes grown on its property to Adelaida for substantially less than their market value. Despite the inherent conflicts of interest, Kedrin executed the Grape Purchase Agreement on behalf of Adelaida. Adelaida paid less than fair market value for the grapes it purchased under the Grape Purchase Agreement. Adelaida resold some of those same grapes to third parties for more than twice the amount that Adelaida paid ATA for the grapes. For example, Adelaida was paid by one of its customers (Opolo Wines LP) $2,750 per ton for zinfandel grapes based on Adelaida's 2018 Summary of Grape Sales, but Adelaida paid ATA only $1,299 per ton for the zinfandel grapes based on ATA's summary of grape invoices. As a result of these agreements foisted upon it, ATA has been shorted millions of dollars in ways that have directly benefited Adelaida.

41.    While ATA was only receiving less than half of market value prices from Adelaida for ATA's premium grapes, ATA was also being directed by Adelaida to engage in costly farming practices and make capital expenditures sheerly for the benefit of Adelaida but receiving no additional money from Adelaida to pay for these significant costs. As a result, ATA suffered annual losses in excess of $1.5 million on average just in operating the Ranches.

**B.    UNFAIR AGREEMENTS THAT RESULT IN CONSTRUCTIVE DIVIDENDS TO THE CONTROLLING SHAREHOLDER**

42.    For the years 2022 and 2023, Kedrin and her co-defendants caused ATA Ranches to enter into an agreement with Adelaida regarding viticultural practices and the production of wine grapes.  ATA Ranches agreed to grow certain grape varietals while Adelaida agreed to pay for certain costs associated with farming.  Per the agreements, ATA Ranches pays for the farming costs out of its pockets, and then Adelaida pays a fixed amount each month to reimburse ATA Ranches with a true-up at the end of the year of any balance owed to ATA Ranches.

43.    The farming costs that Adelaida has agreed to pay do not include

EXHIBIT C - 012

amounts for property taxes, insurance, or other capital expenditures. Adelaida also does not pay rent for use of the Ranches or its premium wine grape vines. In fact, Adelaida does not pay anything for the grapes themselves; Adelaida merely reimburses ATA Ranches for the money that it fronts for farming costs. In other words, ATA Ranches did not and will not receive any income or profit from providing Adelaida with the entirety of its 2022 and 2023 grape crops. Rather, it will merely be paid back the money it lends Adelaida to farm the grapes.

44.    Because the farming costs are only a portion of the costs it incurs to operate the Ranches, ATA Ranches is thus guaranteed to generate no profit and to lose money under these arrangements. The grapes grown on ATA Ranches are valuable, as is evidenced by Adelaida's sale of these grapes to other wine producers. And other than some walnuts that are grown on the Ranches, ATA Ranches has no source of income other than grapes. Despite its dependence on grape production for income, Defendants have shackled ATA Ranches to inevitable unprofitability by forcing it to give away its only valuable commodity for less than its production costs.

45.    According to an ATA board presentation from June 2021, ATA Ranches was projected to be bankrupt by the end of that month.

46.    Upon information and belief, ATA Ranches receives cash infusions from ATA in order to survive, even though it could sell its grapes for a significant profit on the open market.

47.    The officers of ATA Ranches, who are also employed by ATA, are beholden to Kedrin and lack independence. Rather than allowing ATA Ranches to sell its wine grapes on the open market for a profit, the officers of ATA Ranches entered into these viticultural and grape purchase agreements with Adelaida due to the undue influence of a conflicted controlling shareholder.

48.    Upon information and belief, ATA provides valuable services to Adelaida and KMBG for a monthly fee far less than the actual value (or cost to

SECOND AMENDED COMPLAINT

EXHIBIT C - 013

ATA) of those services.  The services include legal, accounting, human resources, and IT.  Adelaida and KMBG receive these services from ATA for a paltry monthly fee because ATA's officers and directors are beholden to Kedrin, the controlling shareholder of ATA.

49.    In reality, these services and grapes that Adelaida and KMBG receive are constructive dividends from ATA to Kedrin.  Plaintiff's Trusts do not receive the same constructive dividends because Matthew's Trusts hold a small fraction of KMBG, and Gretchen's Trusts do not own any percentage of KMBG, while Kedrin holds the majority of KMBG.

## C.    DEFENDANTS ATTEMPT TO SELL RANCHES TO CREATE AN INDEMNICATION SLUSH FUND TO BENEFIT KEDRIN

50.    On or about November 11, 2021, ATA entered into an agreement with Zepponi & Company ("Zepponi") to sell two vineyard properties, HMR and Viking ranches. Neither Kedrin nor any of the other Defendants told Matthew and Gretchen that the Ranches were put up for sale. Upon information and belief, KMBG entered into a similar agreement with Zepponi to market and sell properties owned by KMBG, including Adelaida. Zepponi marketed ATAR's ranches as well as those properties owned by KMBG from November 2021 to March 2023.

51.    On March 11, 2023, ATA's General Counsel, Defendant Carter, sent Plaintiff an email informing him that ATA was calling a special board of directors meeting the next day to:

- consider and approve a letter of intent, "including the $22,500,000 purchase price for ATAR's real property assets";
- authorize ATA senior management to negotiate a definitive purchase and sale agreement with a preselected buyer, Mount Paso LLC; and
- authorize ATA senior management to perform all acts necessary to finalize the sale of ATAR's real property assets.

A true and correct copy of the Special ATA Board Meeting presentation that ATA

13

SECOND AMENDED COMPLAINT

EXHIBIT C - 014

1 | management sent to its Class B shareholders (the "March 12 Special Meeting
2 | Binder") is attached hereto as **Exhibit A.**

3 | 52.    The March 12 Special Meeting Binder informed Plaintiff that after
4 | several rounds of discussions with purchaser Mount Paso, an LOI was agreed to
5 | in principle with the following key terms:

6 | • $22,500,000 for ATAR's real property assets;

7 | • 2023 grape crop stays with ATAR;

8 | • 120-day diligence period + 30 days to close;

9 | • buyer takes over the task and expense of the search for water; and

10 | • PSA to be negotiated over the next 30 days.

11 | 53.    ATA also disclosed for the first time to Plaintiff that: (i) Zepponi had
12 | conducted an appraisal that valued ATAR's ranch properties between $27,500,000
13 | and $35,200,000, as of June 13, 2022; and (ii) Zepponi had received "two verbal
14 | offers" prior to receiving the current offer from Mount Paso. The first potential
15 | purchaser offered $35 million to buy all assets of ATAR and KMBG. The second
16 | potential purchaser made an offer of $31 million for the same properties with a $7
17 | million payout contingent on a groundwater threshold. Both were "all in" offers
18 | for all real and personal property held by ATAR and KMBG, including brands,
19 | goodwill, equipment, inventory, and crops.

20 | 54.    On March 12, 2023, the ATA Board held a special meeting and voted
21 | to approve entering into the LOI with Mount Paso to sell the Ranches. Per the
22 | meeting minutes, after voting to approve the LOI, Defendant Pierce agreed to
23 | reach out to the other Class A shareholder, Brett, as well as the Class B
24 | shareholders, Matthew and Gretchen, to offer "a more detailed briefing…." A true
25 | and correct copy of the March 12, 2023 Meeting Minutes is attached hereto as
26 | **Exhibit B**.

27 | 55.    While ATA did offer to have a phone call with Plaintiff and the other
28 | shareholders to answer questions regarding the transaction, it did so after the Board

14

SECOND AMENDED COMPLAINT

EXHIBIT C - 015

1    meeting had already occurred and the Board had voted to approve the LOI and

2    begin finalizing the sale. In other words, Kedrin was the *only* shareholder allowed

3    to voice her opinion on the transaction before the Board rubber stamped it. Even

4    Brett, a Class A shareholder, was excluded from providing input about this

5    decision prior to D&O Defendants approving it.

6         56.    On March 13, 2023, Defendants Pierce and Carter held a virtual

7    Microsoft Teams meeting with Matthew, Gretchen, and Brett to discuss the

8    transaction that the Board had already approved. When asked about the other offers

9    that exceeded $30 million, Pierce and Carter stated that they chose not to follow

10   up because they did not believe they were serious offers. In fact, Carter told

11   Plaintiff that the "offers were not worth the paper they were **not** written on." When

12   pressed on why they would not at least try to negotiate further when the offers

13   exceeded $30 million, Defendants stated that they believed these buyers would

14   negotiate the deal down further as due diligence proceeded, even though there was

15   no firm evidence that this would in fact happen.

16        57.    Critically, during the March 13 Teams meeting, Defendant Pierce

17   also indicated that the $21+ million in proceeds from the sale would not be given

18   to ATA's shareholders, as one would expect, but rather ATA intends to retain this

19   cash for "litigation needs."   However, the 2020 Shareholder Litigation is a

20   shareholder derivative suit; thus, if the litigation is successful, ATA would not pay

21   out money, but rather would receive money from Kedrin, its directors, officers,

22   and Adelaida for breaching their fiduciary duties and/or aiding and abetting those

23   breaches to ATA. Nor does ATA have to reserve for its litigation expenses, as,

24   upon information and belief, ATA and SDI's insurance policies provide coverage

25   for damages and legal fees incurred on behalf of Kedrin and the officers and

26   directors at that time. Thus, Defendants' purported reason for keeping the funds is

27   simply fallacious.

28        58.    It logically follows then, that the only reason to retain the proceeds of

---

15

SECOND AMENDED COMPLAINT

EXHIBIT C - 016

the sale, rather than distributing the proceeds to the shareholders as a dividend as would be expected, is to indemnify the directors, officers, and controlling shareholder for their illicit activities. The defendants in the 2020 Shareholder Litigation (Kedrin and the directors and officers of ATA during the relevant time period) are being sued because they caused ATA to enter into and rubberstamped deals for the benefit of the controlling shareholder at the expense of the minority shareholders. Thus, any verdict against these defendants will be based upon a finding by the jury that they did not act in good faith or in a manner that could reasonably believed to be in the best interests of ATA. ATA and its minority shareholders should therefore not be made to ultimately pay for the misdeeds of its fiduciaries.

59.    Perhaps more importantly, Defendants' desire to create a slush fund for their own liability sheds light on the true motivation for why the Ranches are being sold now at a price that is much lower than two other offers presented and ATA's own appraisals—unsurprisingly, it's more self-dealing. ATA kept these properties for years despite dumping well over $13 million into the property and losing on average $1.5 million per year. This sudden reversal of course and decision to sell the properties for millions less than their own appraisals in a significantly tougher real estate market only makes sense when put into the context of what the proceeds are being used for—to further Defendants' own self-interests, and not the interests of ATA and its shareholders. With the trial imminent, Defendants know that their time to set up their funding mechanism is running out.

**D.    AFTER REPEATED INQUIRY, PLAINTIFF DISCOVERS SELF-DEALING, MISINFORMATION, AND OBFUSCATION**

60.    During the March 13 Teams meeting, Defendant Pierce also refused to answer any questions about the sale of the winery. Thus, while Pierce and Carter provided some information about the sale, the call raised many more questions than it answered.

EXHIBIT C - 017

61.    Because ATA was not being forthcoming with the critical details about the sales and prior offers, on March 15, 2023, Matthew sent a written corporate record request to ATA seeking documents and information that would answer the open questions Matthew had. However, ATA's response, through its attorneys, was to regurgitate the same information it had previously provided.

62.    Matthew also sent a company records request, pursuant to Colorado Rev. Stat. § 7-80-408, that same day to KMBG, requesting six categories of records related to offers received or potential sales of Adelaida Cellars. Specifically, Matthew requested that he be able to inspect the following documents:

    a.    A list of any and all offers, oral or written, for the sale or transfer of any assets or equity of KMBG or Adelaida since January 1, 2021 to present, and production of any written documentation or communications related thereto;

    b.    Any and all term sheets, letters of intent, or any other documentation related to a potential sale or transfer of KMBG or Adelaida assets or equity from January 1, 2021 to present;

    c.    Any and all valuations of KMBG and/or Adelaida assets, including, but not limited to any appraisals, from January 1, 2021 to present;

    d.    A list of all agreements (draft, formal, informal, verbal, or otherwise) and the terms of those agreements with third parties, including ATA/SDI, regarding the purchase of grapes from January 1, 2021 to present, including any potential agreement with potential purchaser Mount Paso LLC, and production of any written documentation or communications related thereto;

    e.    A list any prior relationships that the potential buyer(s) may have with any director/officer/shareholder of KMBG or Adelaida; and

    f.    A list of any intercompany debts or receivables among ATA, ATAR

17

SECOND AMENDED COMPLAINT

EXHIBIT C - 018

and/or Adelaida/KMBG/Stoneway that are affected in any manner as a result of a potential sale and what the effect will be upon those debts/receivables.

63. Instead of allowing an inspection or providing the information requested, as is required by law, on March 22, 2023, KMBG instead responded with a letter through its attorney, threatening that "[a]ppropriate redress will be sought with respect to any disruption of business operations" should Matthew visit the company's offices (a company that Matthew has an ownership interest in) to inspect these documents.

64. When pressed for legal authority for its refusal to provide information, KBMG relied upon Delaware corporations law—even though KMBG is a Colorado LLC—that not only contradicted the plain language of Colorado's statute, but also supported Matthew's position if Delaware law applied (which it clearly does not). Thus, KMBG had no valid basis for refusing to provide the information that Matthew requested.

65. Matthew has subsequently followed up with additional questions and requests for records in an attempt to gain some clarity on these issues, but Defendants have still refused to fully disclose the documents and information surrounding the potential sale of Adelaida and other KMBG assets.

66. Considering Defendants' prior history of self-dealing, the obfuscation regarding the other offers, the purchase price that was millions below those offers and appraisals of the property, and ATA's intention to unnecessarily withhold proceeds of the sale to indemnify Defendants' wrongdoing, Plaintiff has been forced to litigate this matter.

**E.    PLAINTIFF'S RIGHT TO INFORMATION AND PARTICIPATION UNDER THE 2011 SETTLEMENT AND SHAREHOLDERS' AGREEMENTS**

67. In 2009, Plaintiff Van Steenwyk filed an action against SDI, ATA,

18

SECOND AMENDED COMPLAINT

EXHIBIT C - 019

and certain of their officers and directors in Harris County, Texas, *Matthew Van Steenwyk, et al. v. Scientific Drilling International, Inc., et al.*, Cause No. 2009-28535 (the "Initial Texas Litigation"), for breach of fiduciary and statutory duties, as well as shareholder oppression.

68.    In resolving the Initial Texas Litigation, the parties entered into a Settlement Agreement, dated January 24, 2011, and a Shareholders' Agreement, dated October 20, 2011. The Settlement Agreement is attached hereto as **Exhibit D** and the Shareholders' Agreement is attached hereto as **Exhibit E**.[2]

69.    The Settlement Agreement and the 2011 Shareholders' Agreement contain provisions regarding the rights of Class A and Class B Shareholders to receive information regarding board meetings and vote on corporate matters.

70.    Section 4(c) of the Shareholder Agreement provides that:

> *After the relevant Board has considered and recommended a vote to approve a Fundamental Business Transaction, the relevant Board shall deliver written notice to its shareholders calling a special meeting for the purpose of considering such Fundamental Business Transaction, which notice shall include a written explanation and financial analysis of the proposed Fundamental Business Transaction. Such notice shall be delivered at least 20 days, but in no event more than 60 days, prior to such meeting. The shareholders shall, acting as a single class, be entitled to vote on such Fundamental Business Transaction. Any such proposed Fundamental Business Transaction shall require the approval of the holders of at least 66 2/3% of the outstanding Common Stock, acting as a single class, of SDI and/or ATA, as the case may be. Except as set forth in this Section 4(c) and as provided for under the Texas Business Organizations Code (as to SDI) and the California General Corporation Law (as to ATA), the Class B Shareholders shall not be entitled to vote on any other matter on which the holder(s) of Class A Shareholders are entitled to vote.*

71.    The Shareholders' Agreement defines a "Fundamental Business Transaction" with respect to either Corporation as: (i) a merger; (ii) an interest exchange; (iii) a conversion; or (iv) sale of all or substantially all of such Corporation's assets; provided, however, that a Fundamental Business Transaction

---

[2] ATA Ranches is a third-party beneficiary of both the Settlement Agreement and the Shareholders' Agreement, and is therefore, bound by their terms.

1  shall not mean any of the foregoing with respect to ATA's Non-Oilfield Business.

2  72.    The Shareholders' Agreement defines "Non-Oilfield Business" as

3  "businesses and assets of ATA other than ATA's business of designing, building,

4  and manufacturing oil industry technology products, including borehole surveying

5  instruments (both gyroscopic and magnetic), MWD (measurement while drilling)

6  systems, and production logging systems, and selling it to SDI to provide such

7  services as borehole surveying, wireline steering, MWD, production logging

8  services to the oil industry."

9  73.    Defendants have used these provisions limiting the voting rights of

10  Class B shareholders as a justification to deny Plaintiff access to information

11  regarding their self-dealing transactions between ATA Ranches and Adelaida and

12  the possible sale of ATA Ranches.

13  74.    However, neither the Settlement Agreement nor the Shareholders'

14  Agreement provide limitations on Class B shareholders other than ***voting on***

15  ***fundamental business transactions*** (e.g., merger, sale of assets, etc.) pertaining to

16  ***ATA's non-oilfield business***. Plaintiff remains a shareholder and is entitled to

17  information regarding those transactions.

18  75.    Further, Section 5 of the Shareholders' Agreement requires ATA to

19  deliver to the Receiving Class B Shareholder:

20  (a) copies of all written materials provided to the Boards in preparation for

21  any meeting of the Boards, at the same time as delivered to the members of

22  the Boards, and for regularly scheduled meetings, in no event later than four

23  days before the date of the meeting; and

24  (b) copies of all approved minutes of the Boards within a reasonable period

25  (and in no event more than three business days) after approval thereof by

26  the Boards.

27  76.    Plaintiff's right to receive, in advance, Board Meeting materials and

28  Board Meeting minutes contains no limitation with respect to ATA's Non-Oilfield

20

SECOND AMENDED COMPLAINT

EXHIBIT C - 021

Business. Plaintiff is entitled to *all* of these materials without request and within the time limits set by the Shareholder Agreement.

77.     Defendants have failed to provide the materials as required under Section 5 of the Shareholders' Agreement. For example, Plaintiff has not received the minutes of a board meeting held on August 20, 2021, minutes of a special board meeting held on October 27, 2021, and materials for a board meeting held on November 12, 2021. Additionally, Plaintiff has not received board meeting materials or minutes for ATA Ranches.

## FIRST CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY BY CONTROLLING SHAREHOLDER

78.     Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

79.     Defendant Kedrin, the controlling shareholder of ATA, owes fiduciary duties to Plaintiff and the trusts he represents. Kedrin is required to act with the highest obligations of good faith, loyalty, fair dealing, due care, and candor. These duties require her to refrain from abusing her position of control over ATA to benefit herself or another entity in which she owns substantial interests, like Adelaida and KMBG, at the expense of the minority shareholders.

80.     As set forth above, Kedrin has breached her fiduciary duties to ATA's minority shareholders by: (i) prioritizing payments to herself for the improper indemnification of any judgment from the 2020 Shareholder Litigation, (ii) causing ATA Ranches to give its grapes to Adelaida for free, (iii) guaranteeing Adelaida's use of the Ranches for as long as she chooses, and (iv) receiving services from ATA for a nominal fee.

81.     As a result of Kedrin's breaches of her fiduciary duties, Plaintiff's Trusts have sustained and will continue to sustain damages and injuries including, but not limited to, unpaid dividends from ATA.

SECOND AMENDED COMPLAINT

EXHIBIT C - 022

82.     These damages are unique to Plaintiff's Trusts and are not incidental to any damage done by Kedrin to ATA as a whole. The amount of damages will be determined according to proof at trial.

83.     In engaging in the actions and conduct alleged above, Defendant Kedrin acted with recklessness, oppression, fraud, and malice. Plaintiff and Plaintiff's Trusts are, therefore, entitled to an award of punitive damages against Kedrin.

**SECOND CAUSE OF ACTION**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY BY CONTROLLING SHAREHOLDER**

84.     Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

85.     As described above, D&O Defendants, Adelaida, and KMBG possessed actual knowledge that Kedrin owed fiduciary duties to ATA's minority shareholders, including Plaintiff and the trusts he represents. Adelaida knew of those fiduciary duties through its CEO (Kedrin), its directors (Carter and Kedrin's step-son, Duggan), and other members of Adelaida's management. KMBG knew of those fiduciary duties through its Managing Member, Kedrin.

86.     By forcing ATA Ranches into viticultural and grape purchase agreements with Adelaida, and permitting ATA's resources to be used to provide services to Adelaida and KMBG for a nominal monthly fee, D&O Defendants have given constructive dividends to Kedrin and not Plaintiff's Trusts.  Through her undue influence and position as a conflicted controlling shareholder of ATA, Kedrin breached her fiduciary duties to Plaintiff and his trusts.

87.     D&O Defendants, Adelaida, and KMBG possessed actual knowledge that Kedrin owed fiduciary duties to Plaintiff and breached her fiduciary duties to Plaintiff's Trusts.

88.     D&O Defendants, Adelaida, and KMBG gave substantial assistance

22

SECOND AMENDED COMPLAINT

EXHIBIT C - 023

and/or encouragement to Kedrin in paying constructive dividends in violation of her fiduciary duties. The conduct of D&O Defendants is described above. D&O Defendants substantially assisted and/or encouraged Kedrin by failing to take action to prohibit the serial breaches of fiduciary duty by the controlling shareholder, also detailed above.

89.    D&O Defendants, Adelaida, and KMBG's conduct in aiding and abetting Kedrin was a substantial factor in causing Plaintiff to sustain unique damages and injuries including, but not limited to, unpaid dividends from ATA. Those amounts will be determined according to proof at trial.

90.    In engaging in the actions and conduct alleged above, said Defendants acted with recklessness, oppression, fraud, and malice. Plaintiff and his trusts are, therefore, entitled to an award of punitive damages against said Defendants.

## THIRD CAUSE OF ACTION
### DECLARATORY RELIEF

91.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

92.    An actual controversy exists between ATA and ATA Ranches on the one hand, and Adelaida and D&O Defendants on the other hand, as to the future rights and obligations of the parties arising from the sale of the Ranches.

93.    Plaintiff contends that Defendants are using ATA assets to indemnify themselves for their own breaches of their fiduciary duties in the 2020 Shareholder Litigation.

94.    Plaintiff is informed and believes and, on that basis alleges, that Defendants dispute Plaintiff's contention and contend that the contracts are valid and that they can use the sales proceeds for their own indemnification.

95.    Plaintiff desires a judicial determination of and declaration on these issues.

96.    A judicial declaration is necessary and appropriate at this time in

EXHIBIT C - 024

order to allow Plaintiff and Defendants to ascertain their rights and obligations with respect to the contracts and to avoid a multiplicity of actions.

## FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT BY ATA AND ATA RANCHES

97.   Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

98.   An actual controversy has arisen between Plaintiff and Defendants as to Plaintiff's legal rights and duties under the 2011 Settlement Agreement and Shareholders' Agreement, as Defendants have either failed to provide the materials and minutes or provide them within the timeframe as is mandated by these agreements.

99.   Plaintiff has been damaged as a result of Defendants' breach.

100.   Plaintiff seeks declaratory relief adopting each and every allegation of his as set forth above, regarding his rights to receive materials and minutes from every board meeting under the 2011 Settlement Agreement and Shareholders' Agreement, and mandatory injunctive relief directing Defendants to comply with their contractual obligations.

## FIFTH CAUSE OF ACTION

### PRODUCTION OF CORPORATE RECORDS BY ATA AND ATA RANCHES

101.   Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

102.   Matthew made his written request for an inspection of corporate records and information to ATA on March 15, 2023, as is permitted under California Corporations Code section 1601.

103.   ATA produced some of the requested ATA corporate information about the sale, but not all the requested information.

104.   Matthew made his follow-up written requests for ATA corporate

24

SECOND AMENDED COMPLAINT

EXHIBIT C - 025

information on March 28, 2023 and again on April 26, 2023 to ATA's counsel, providing supporting legal authority for his valid request. Plaintiff's counsel also met and conferred telephonically with ATA's counsel in an attempt to avoid litigation about this issue. However, despite Plaintiff's efforts D&O Defendants again failed to produce all the ATA corporate information requested by Plaintiff. The information sought by Plaintiff was necessary to investigate the wrongdoing as described in this complaint.

105.    Plaintiff is informed and believes that D&O Defendants' response to Plaintiff's demand for corporate information was coordinated and orchestrated by Defendants Kedrin, Carter, Pierce, McCoy, and Duggan.

## SIXTH CAUSE OF ACTION

### VIOLATION OF COLORADO REV. STAT. § 7-80-408 BY KMBG

106.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

107.    On March 15, 2023, Matthew sent a written request to KMBG to inspect six categories of documents and for information about the pending sale of Adelaida—KMBG's principal asset.

108.    Colorado Rev. Stat. § 7-80-408 statute provides, in relevant part:

(1) Each member of a limited liability company has the right, subject to such reasonable standards as may be established by the members or managers pursuant to section 7-80-401(1), to inspect and copy at the expense of the requesting member the following records of the limited liability company from time to time upon reasonable demand for any purpose reasonably related to the member's interest as a member of the limited liability company:

(a) True and full information regarding the business and financial condition of the limited liability company, including written resolutions and minutes, if any, of the limited liability company;

….

(e) True and full information regarding the amount of cash and a description and statement of the agreed value of any other property or services contributed by each member and that each member has agreed to contribute in the future, and the date on which each became a member; and

(f) Other information regarding the affairs of the limited liability company

25

SECOND AMENDED COMPLAINT

EXHIBIT C - 026

1    as is just and reasonable.

2    109.   The requests were all directly related to the valuation and terms of the

3    sale of KMBG's principal asset and thereby directly related to the business and

4    financial condition of the company as well as the value of Matthew's interest in

5    the company. Thus, these requests were undoubtedly reasonably related to

6    Plaintiff's interest in KMBG.

7    **PRAYER FOR RELIEF**

8    WHEREFORE, Plaintiff prays for a judgment against Defendants as

9    follows:

10   1.    A declaration that the controlling shareholder Kedrin, breached her

11   fiduciary duties to the minority shareholders by paying herself constructive

12   dividends and preventing dividends from being paid to Plaintiff's Trusts, and

13   awarding damages for those breaches;

14   2.    A declaration that D&O Defendants, Adelaida, and KMBG aided and

15   abetted Kedrin in her breach of fiduciary duties;

16   3.    A declaration that D&O Defendants, Kedrin, Adelaida, and KMBG

17   are liable under the common law of unjust enrichment;

18   4.    Temporary, preliminary and permanent injunctive relief enjoining

19   and restraining Defendants from reserving or using any ATA or ATA Ranches

20   funds for the indemnification of defendants named in the 2020 Shareholder

21   Litigation;

22   5.    A declaration that under the 2011 Settlement Agreement and

23   Shareholders' Agreement, Plaintiff is entitled to receive all Board Meeting

24   materials and minutes, including information related to ATA's Non-Oilfield

25   Business;

26   6.    A mandatory injunction compelling D&O Defendants to provide all

27   Board Meeting materials and minutes that have not been provided and all future

28   materials in a timely fashion as is mandated under the Shareholders' Agreement

SECOND AMENDED COMPLAINT

EXHIBIT C - 027

without any exclusion as to Non-Oilfield Business information;

7. An order compelling the production of requested corporate records and information from ATA, ATA Ranches, and D&O Defendants;

8. An order compelling the production of requested corporate records and information from KMBG;

9. An award of nominal damages;

10. An award of punitive and exemplary damages;

11. An award of costs and disbursements incurred in this action, including reasonable attorneys' fees, accountants' fees and expert witness fees, costs and expenses;

12. Lawful interest according to proof at the time of trial; and

13. Any such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues which are subject to adjudication by a trier of fact.

DATED: December 8, 2023          UMHOFER, MITCHELL & KING, LLP

By: _____
Matthew Donald Umhofer
J. Anthony King
Attorneys for Matthew Van Steenwyk

27

SECOND AMENDED COMPLAINT

EXHIBIT C - 028

1

**<u>VERIFICATION</u>**

2      I, Matthew Donald Van Steenwyk, verify that I am a shareholder of ATA

3   and ATA Ranches.  I have reviewed the allegations in this Second Amended

4   Verified Complaint.  As to those allegations of which I have personal knowledge,

5   I believe them to be true; as to those allegations of which I lack personal

6   knowledge, I rely upon my counsel and counsel's investigation, and believe them

7   to be true.  Having received a copy of the complaint and reviewed it with counsel,

8   I authorize its filing.

9      I declare under penalty of perjury under the laws of the State of California

10  that the foregoing is true and correct.  Executed on 10 Dec 2023.

11

12

13  Matthew D. Van Steenwyk

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28

SECOND AMENDED COMPLAINT

EXHIBIT C - 029

# EXHIBIT D

EXHIBIT D

EXHIBIT C - 140

## SETTLEMENT AND RELEASE AGREEMENT

**This Settlement and Release Agreement** (the "*Agreement*"), dated January 24, 2011, is entered into among Matthew van Steenwyk ("*MDV*"), on behalf of himself and as trustee of the Matthew Donald Van Steenwyk GST Trust and the Issue Trust for Matthew Donald Van Steenwyk (collectively, the "*MDV Trusts*") and their respective successors and assigns (MDV and the MDV Trusts, collectively, the "*MDV Parties*") and Scientific Drilling International, Inc., a Texas corporation ("*SDI*"), Applied Technologies Associates, Inc., a California corporation ("*ATA*," and collectively with SDI, the "*Companies*" and each separately a "*Company*"), Elizabeth A. Van Steenwyk ("*EAV*"), individually, as Executrix of the Estate of Donald H. Van Steenwyk, as a member of the boards of directors of the Companies (collectively, the "*Boards of Directors*"), and as trustee of The Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust (the "*DHV/EAV Trust*"), Gene Durocher, Gordon Thomson, Barbara Helbach, Denis Bandera and Van Steenwyk Holdings, LLC ("*VSH*"), and their respective successors and assigns (SDI, ATA, EAV, the foregoing estate and the DHV/EAV Trust, the foregoing other directors, officers and employees of SDI and ATA, and VSH, collectively, the "*SDI Parties*"). Each of the persons and entities executing this Agreement is referred to herein individually as "*Party*" and collectively as "*Parties*."

The MDV Parties, as shareholders of SDI and ATA, filed the matter styled *Matthew van Steenwyk, et al v. Scientific Drilling International, Inc., et al*, Cause No. 2009-28535 in the 189th District Court of Harris County, Texas (the "*Litigation*") and asserted claims for shareholder oppression and breach of fiduciary duty. Pursuant to a Memorandum of Agreement dated January 13, 2011, the Parties have resolved their differences in the Litigation, and are entering into this Agreement pursuant to Section 2 of such Memorandum of Agreement. Accordingly, the Parties agree as follows:

1.    **Definitions**. As used in this Agreement, the following capitalized terms and phrases shall have the meanings set forth in this Section 1:

(a)    "*1995 Shareholders' Agreements*" means the Agreements of Shareholders of SDI and ATA, each dated as of December 19, 1995.

(b)    "*BHV Trusts*" means the Issue Trust for Brett Harler Van Steenwyk and the Brett Harler Van Steenwyk GST Trust.

(c)    "*Change in Control*" means, with respect to either of the Companies, the occurrence of any of the following:

(i)    any person (as that term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended (the "*Exchange Act*")), other than: (A) a trustee of the survivor's trust under the DHV/EAV Trust, (B) a trustee of a marital trust under the DHV/EAV Trust, (C) a recipient of a gift by EAV or the DHV/EAV Trust, by gift or bequest, (D) any person to whom EAV grants a proxy or (E) a subsidiary of the Company, becomes the beneficial owner (as that term is defined in Rule 13d-3 under the Exchange Act) of a majority or more the Company's then-outstanding shares of stock having the right to vote generally in the election of directors of the Company;

EXHIBIT C - 141

(ii)     the liquidation or dissolution of the Company; or

(iii)     the consummation of a Fundamental Business Transaction or series of transactions, unless immediately following such Fundamental Business Transaction or series of transactions, the persons who were the respective beneficial owners of the outstanding shares of stock of the Company immediately before such transaction or series of transaction beneficially own, directly or indirectly, more than fifty percent (50%) of the outstanding shares of stock of the Company, in substantially the same proportions as their ownership in the outstanding shares of stock of the Company immediately before such transaction or series of transactions.

(d)     "*Class A Shareholder*" means the DHV/EAV Trust, and any Permitted Shareholder of such trust.

(e)     "*Class A Shares*" means the issued and outstanding shares of Class A Common Stock of each of the Companies.

(f)     "*Class B Shareholders*" means individually each of, and collectively, the MDV Trusts, the BHV Trusts, the KEV Trusts, the GMV Trusts and any Permitted Shareholder of any such trust.

(g)     "*Class B Shares*" means the issued and outstanding shares of Class B Common Stock of each of the Companies.

(h)     "*Common Stock*" means each of the Class A Shares and Class B Shares.

(i)     "*Contracting Class B Shareholders*" means the Class B Shareholders who elect, in their discretion, to become Contracting Class B Shareholders.

(j)     "*Final Documentation*" means the final executed and delivered, or adopted, agreements or documents referred to in Section 6(a), other than the Confidentiality Agreement described in Section 6(a)(iv), and in Section 6(b).

(k)     "*Final Documentation Date*" means March 31, 2011.

(l)     "*Fundamental Business Transaction*" has the meaning given such term in Section 1.002 of Texas Business Organizations Code.

(m)     "*GMV Trusts*" means the Issue Trust for Gretchen Marie Van Steenwyk-Marsh and the Gretchen Marie Van Steenwyk-Marsh GST Trust.

(n)     "*KEV Trusts*" means the Issue Trust for Kedrin Elizabeth Van Steenwyk and the Kedrin Elizabeth Van Steenwyk GST Trust.

(o)     "*Non-Oilfield Business of ATA*" shall mean the businesses and assets of ATA other than ATA's business of designing, building, and manufacturing oil industry technology products, including borehole surveying instruments (both gyroscopic and magnetic), MWD (measurement while drilling) systems, and production logging systems, and selling it to SDI to

2

EXHIBIT C - 142

provide such services as borehole surveying, wireline steering, MWD, production logging services to the oil industry.

(p)    "*Permitted Shareholder*" has the meaning given such term in the 1995 Shareholders' Agreements.

2.    **Consideration.** The consideration for this Agreement consists of the following: (a) SDI's agreement to pay MDV the sum of $23,000,000.00 cash (the "*Settlement Amount*"); (b) the Parties' mutual releases of one another; and (c) the Parties' other covenants and agreements set forth in this Agreement.  The payment of the Settlement Amount shall not be characterized or construed as payment for vendor, customer or employment services by the MDV Parties.  The MDV Parties are not required to transfer any stock in SDI, or any other company, to the SDI Parties as a result of the payment of the Settlement Amount or this Agreement.  Subsequent to the filing of the Plaintiffs Petition in the Litigation through the date of this Agreement, the SDI Parties have paid dividends to the MDV Parties.  The MDV Parties and the SDI Parties have not sold, or attempted to sell, their stock in SDI or ATA.  Through discovery in the Litigation, the SDI Parties have supplied information to the MDV Parties, as requested.

3.    **Payment of the Settlement Amount.**  SDI shall, on or before 5:00 p.m. Houston, Texas time, January 26, 2011, pay the Settlement Amount to MDV by wire transfer to the Dobrowski LLP IOLTA Account at Spirit of Texas Bank pursuant to the following wire transfer instructions:

Compass Bank
Birmingham, Alabama
Routing Number (ABA) 0620-0118-6

For Credit to:
Sprint of Texas Bank
625 University Dr. East
College Station, Texas 77840
Account Number 0097269742

For Further Credit to:
Dobrowski LLP IOLTA Account
4601 Washington, Suite 300
Houston, Texas 77007
Account Number 1020773

Upon receipt of the Settlement Amount, the releases in this Agreement shall become effective.

4.    **Agreed Motion.**  The Parties shall execute an Agreed Motion to Enter Take Nothing Judgment and Take Nothing Judgment (the "*Agreed Motion*") in a form reasonably acceptable to MDV and SDI.  Within three business days after payment of the Settlement Amount, MDV shall cause the Agreed Motion to be submitted for execution to the court hearing the Litigation.

5.    **Mutual Releases, Covenant Not to Sue.**  Effective immediately upon payment of the Settlement Amount contemplated in Section 2 above:

6014907                                      3

EXHIBIT C - 143

(a)     The MDV Parties and the SDI Parties, for themselves and their respective direct and indirect parent and subsidiary entities, and all of their respective affiliates, successors, predecessors, officers, shareholders, directors, trustees, agents, servants, representatives, attorneys, insurance carriers and employees (respectively the "*SDI Releasees*" or the "*MDV Releasees*", as the case may be) each release the other from any and all claims, demands, rights, damages, costs, causes of action, attorney's fees, expenses or any sums of any nature whatsoever, in law or in equity, known or unknown, foreseen or unforeseen, for or on account of any matter or thing whatsoever existing as or occurring at any time up to and including the date of this Agreement, including but not limited to claims or causes of action asserted or which could have been asserted in the Litigation or claims based upon contractual, fiduciary or other relationships or based upon any breaches or claimed or alleged breaches of the articles or certificate of incorporation or bylaws of any of the Companies, other than claims for breach or failure to perform under this Agreement (collectively, the "*Released Claims*").

(b)     Each of the MDV Parties and the SDI Parties, for themselves, the MDV Releasees and the SDI Releasees, respectively, represents and warrants to the other that none of them have and none will assign to anyone their interest in any of the Released Claims.

(c)     Each of the MDV Parties and the SDI Parties, for themselves and for the MDV Releasees and the SDI Releasees, respectively, covenants that he, she or it will not, directly or indirectly, initiate, participate in, file, encourage or assert any action, proceeding, or lawsuit, or engage in any process or claim before any court, tribunal, regulatory authority, government agency or commercial third party, with respect to any of the Released Claims released by it pursuant to the preceding provisions.

6.     **Governance Provisions**.  As additional consideration for this Agreement, the following Parties agrees to take, or to cause to be taken, the following actions, from and by the indicated dates:

(a)     The Companies, the DHV/EAV Trust and the Contracting Class B Shareholders shall enter into an agreement that provides:

(i)     by December 31, 2011, the Class A Shareholder shall elect a sufficient number of independent directors such that independent directors constitute one less than a majority of the members of the Board of Directors of the Companies.  In complying with this Section 6(a)(i), the Class A Shareholder shall only elect directors who are independent under the independence tests of Section 303A.02 of the NYSE Listed Company Manual, as the same exist as of the date of this Agreement;

(ii)     the Class A Shareholder shall (x) acknowledge that it has prior to the date of this Agreement elected the Chief Executive Officer of the Companies as a member of the Boards of Directors of the Companies, and (y) elect, for so long as such person continues to serve in such capacity, any successor Chief Executive Officer as a member of the Boards of Directors of the Companies;

(iii)     the MDV Trusts shall submit to the Companies, and the Companies shall use their commercially reasonable efforts to cause each other Class B Shareholder to submit to

6014907                                    4

EXHIBIT C - 144

the Companies, the share certificates representing their Class B Shares, and the Companies shall promptly cancel and reissue new certificates for the same number and class of shares that include a legend regarding the existence of the voting agreements described in Sections 6(a)(i) and 6(a)(ii) above in a manner contemplated by applicable law;

(iv)    after the Companies' and the MDV Parties' execution and delivery of a Confidentiality Agreement in the form annexed hereto as **Exhibit 1**, and subject to continued compliance therewith by the MDV Parties, the Companies shall deliver to MDV: (i) copies of all written materials provided to the Boards of Directors in preparation for any meeting of the Boards of Directors, at the same time as delivered to the members of the Boards of Directors; and (ii) copies of all approved minutes of the Boards of Directors within a reasonable period (and in no event more than three (3) business days) after approval thereof by the Boards of Directors. Any other Contracting Class B Shareholders who enter into a Confidentiality Agreement on the same terms as the MDV Parties shall be entitled to the same rights described in the foregoing sentence;

(v)    after the relevant Board of Directors has considered and recommended a vote for a Fundamental Business Transaction, the Class A Shareholder and Class B Shareholders shall, acting as a single class, shall be entitled to vote on such Fundamental Business Transaction contemplated by either Company; provided, however, that notwithstanding the foregoing, the Class B Shareholders shall not be entitled to vote on any Fundamental Business Transaction related solely to the Non-Oilfield Business of ATA. Any such proposed Fundamental Business Transaction shall require the approval of the holders of at least 66 2/3% of the outstanding shares of SDI and/or ATA, as the case may be. The procedure for submitting such a Fundamental Business Transaction to the shareholders shall include the delivery with the notice of the meeting of shareholders to consider the transaction a written explanation and financial analysis of the proposed transaction. Notice of the meeting, together with the written explanation and financial analysis, shall be delivered to the shareholders at least 15 days before the date of the meeting to consider the transaction. Except as set forth in this Section 6(a)(v) and as provided for under the Texas Business Organizations Code (as to SDI) and the California General Corporation Law (as to ATA), the Contracting Class B Shareholders shall not be entitled to vote on any other matter on which the holder(s) of Class A Shares of SDI or ATA are entitled to vote;

(vi)    the foregoing provisions, rights and obligations and agreements contemplated by this Section 6(a) shall terminate immediately on the earlier to occur of (a) a Change in Control of either Company, with respect to such Company only; or (b) as to any Class B Shareholder, the date that any Class B Shareholder no longer owns at least 5% of the issued and outstanding shares of stock of either the Company, with respect to such Company only; and

(vii)    the rights and obligations set forth in the agreements contemplated by this Section 6(a) are not transferrable by any party thereto other than to a Permitted Shareholder.

(b)    No later than the Final Documentation Date, the Companies and each Class B Shareholder (excluding the GMV Trusts and any Permitted Shareholders of each such two trusts, unless such excluded parties elect, in their discretion to do so) will execute and deliver a co-sale agreement that provides to the others a right of co-sale such that if any of them desires to sell, transfer or otherwise dispose of all or any portion of its Class B Shares of either Company, they

EXHIBIT C - 145

will do so only pursuant to a bona fide written offer from a third party, and as a condition thereof, shall have complied with the relevant provisions of the 1995 Shareholders' Agreements, and shall have offered to include in the proposed disposition on the same terms and conditions a pro rata portion of the shares owned and designated by any other Class B Shareholder. Such co-sale right contemplated by this Section 6(b) shall not affect the terms and conditions of the 1995 Shareholders' Agreements, which shall remain in full force and effect;

    (c)    By May 31, 2011, the Companies shall each have adopted a Code of Ethics;

    (d)    By December 31, 2011, and until the consummation of a Change in Control, the Boards of Directors shall establish, appoint and maintain an audit committee and a compensation committee. Those committees shall adopt and maintain committee charters, which may be amended by a majority vote of the members of the applicable committee. Each such committee shall consist of a majority of independent directors.

    (e)    Beginning with the financial statements of the Companies for and as of the year ended December 31, 2010, until the consummation of a Change in Control, the Boards of Directors (and after there is an audit committee, such committee) shall engage Pannell Kerr Foster of Texas, P.C., or such other nationally recognized accounting firm as it shall approve from time to time, to audit the financial statements of the Companies. Such accounting firm shall produce either a combined or consolidated audit report on the accounts of the Companies according to then-current generally accepted accounting principles and FASB guidance on commonly-owned companies.

    (f)    Beginning in 2011, until the consummation of a Change in Control, the Boards of Directors shall call and hold, in accordance with the relevant provisions of the bylaws of the Companies, an annual meeting of shareholders of the Companies, except that such meetings shall be in-person and that the Class B Shareholders shall be invited to attend. The Companies shall cause the Chief Executive Officer of the applicable Company to attend each such meeting and be available to answer, shareholder questions at such meeting regarding the business and operations of SDI and ATA (except as to ATA, excluding any questions regarding the Non-Oilfield Business of ATA).

    (g)    Beginning in 2011 as relates to the fiscal year ended at and as of December 31, 2010, and continuing until the consummation of a Change in Control, VSH shall distribute its available Net Cash Flow (as such term is defined in Section 10.1 of VSH's Limited Liability Company Agreement, effective January 1, 2005), annually to the members of VSH, pro rata in accordance with their respective capital percentages, no later than June 15th of each year; provided, however, that if at any time before the consummation of a Change in Control, VHS's Net Cash Flow is less than 10% of the audited combined or consolidated net profits of the Companies (the "*10% Combined Net Profits*"), then and only then, SDI's Board or the Boards collectively shall adopt a policy providing, subject to the limitations set forth therein, for SDI's declaration (by June 1st) and payment (by June 15th) of an annual dividend equal to the amount by which the 10% Combined Net Profits exceeds available Net Cash Flow (the "*Dividend*"), to the holders of shares of Common Stock, pro rata. The actual declaration and payment of the Dividend, as the case may be, shall be subject to the discretion of SDI's Board or the Boards, as the case may be, which shall consider such factors as the Companies' capital requirements,

6014907                      6

EXHIBIT C - 146

restrictions by law or contract, market conditions and other factors they deem relevant, in the exercise of their fiduciary duties.

(h)      The Companies shall cause counsel (whether general in-house or outside) to prepare all minutes of the meetings of the Boards of Directors.

(i)      For the avoidance of doubt, notwithstanding that as of the date of this Agreement, the Final Documentation and the other actions described in this Section 6 are not complete or have not been taken, as the case may be, the obligations of the MDV Parties, all of the other relevant shareholders of the Companies, the Companies, and VSH (collectively, the "*Section 6 Parties*") to take or cause the actions described in this Section 6 to be taken are effective and are binding on the Section 6 Parties as of the date of this Agreement.

(j)      The Parties agree that, to the extent that any provision of this Section 6 or the Final Documentation conflict with any provision of the Articles or Certificate of Incorporation of either Company, the terms of this Section 6 and the Final Documentation shall control.

7.      **Agreement as Complete Defense**.  The Parties understand that this Agreement, and the releases it contains, is a complete defense to any claim or entitlement which any of the MDV Parties may hereafter assert against any SDI Party in any suit or claim for or on account of any matter or thing whatsoever occurring up to and including the date of this Agreement, except for claims arising from non-performance of any provision of this Agreement.

8.      **No Admission of Liability**.  This Agreement shall not in any way be construed as an admission by any SDI Party that it has acted wrongfully with respect to any MDV Party or any other person, or that any MDV Party has any rights whatsoever against any SDI Party.  The SDI Parties specifically disclaim any liability to, or wrongful acts against, any MDV Party.

9.      **Severability**.  If any provision of this Agreement would, under applicable law, be invalid or unenforceable in any respect, such provision shall (to the extent permitted by applicable law) be construed by modifying or limiting it so as to be valid and enforceable to the maximum extent compatible with, and possible under, applicable law.  The provisions hereof are severable, and in the event any provision hereof should be held invalid or unenforceable in any respect, it shall not invalidate, render unenforceable or otherwise affect any other provision of this Agreement.

10.     **Confidentiality**.  Subject to the other terms and conditions of this Agreement, the MDV Parties agree to keep the following matters strictly confidential:

(a)      the existence and terms of this Agreement;

(b)      the claims which were or could have been asserted, either expressly or by implication, by any MDV Party in any action against any SDI Party;

(c)      the facts or alleged facts upon which an action is purported to be based or could have been based; and

(d)      any and all facts and information obtained at any time by any MDV Party related to this Agreement.

6014907                              7

EXHIBIT C - 147

The foregoing matters shall be kept confidential and shall not be discussed, disclosed or otherwise revealed to any person or entity, in either general or specific terms except: (i) pursuant to an order of a court or an order or request by a governmental body having jurisdiction to issue such order or request; (ii) for accounting purposes or tax purposes, or to the Parties' respective lawyers or accountants; (iii) by SDI or ATA, to any financial institutions providing or proposing to provide credit to either of them; (iv) in response to a valid subpoena; or (v) to the extent such matters are publicly disclosed, other than as a result of a breach of this Section 10 by the applicable Party disclosing or proposing to disclose such information. The confidentiality of this Agreement is a material term of the Agreement and breach of the confidentiality will be considered breach of the Agreement. When disclosure is allowed or required by the terms of this Agreement, those parties to whom such disclosure is made will be: (x) advised of the confidentiality of this Agreement and (y) specifically instructed to maintain such information as confidential and to refrain from disclosing to any other person or using such information as allowed by law. The confidentiality of this Agreement is a material term and any breach of the confidentiality provisions of this Agreement shall be considered a material breach. The MDV Parties will state only that this matter has "been concluded."

11.     **Knowing and Voluntary Release.** MDV further states that MDV has carefully read this Agreement and knows and understands its content and that the MDV Parties enter into it as their own free act and deed, knowingly and voluntarily.

12.     **Negotiation of Final Documentation.**

(a)     The Section 6 Parties shall negotiate the specific terms, provisions and forms of the Final Documentation in good faith, and shall use all commercially reasonable efforts, to give full effect to and accurately reflect the provisions and intent of Sections 6(a) and (b) of this Agreement no later than the Final Documentation Date. The Companies and the relevant shareholders of the Companies other than the MDV Trusts, as the case may be, shall provide the first drafts of such Final Documentation to the MDV Parties no later than February 28, 2011.

(b)     Notwithstanding anything to the contrary set forth in this Agreement, in the event that the Section 6 Parties are unable to reach an agreement on any or all parts of the Final Documentation on or before (i) the Final Documentation Date or (ii) such earlier date after March 15, 2011 as either (A) MDV or (B) the other Section 6 Parties determine an impasse with respect to the negotiation of any or all of the Final Documentation has been reached (the date established under (i) or (ii) above, the "***Impasse Date***"), the Section 6 Parties agree that the dispute(s) shall be mediated by Mr. Eric Galton during a single-day mediation in Houston, Texas at the offices of Jackson Walker LLP. The Section 6 Parties shall attempt to have such mediation occur within fifteen days of the Impasse Date, subject to Mr. Galton's availability. In the event that the mediation fails to resolve the dispute(s) to the satisfaction of the Section 6 Parties, the Section 6 Parties agree to submit their respective written proposals and draft language to former Judge Mark Davidson, or if he is unable, unwilling or not available, to former Judge Scott Link, either of whom shall retain jurisdiction over this matter for the purpose of dispute resolution as delineated herein. The Section 6 Parties further agree that the decision of either such mediator shall be **binding and final, without rights of appeal**. This provision is the exclusive dispute resolution procedure for the Section 6 Parties to address any dispute that pertains to Section 6.

EXHIBIT C - 148

13.    **Amendment.**  This Agreement is binding upon the Parties, their successors and assigns and may not be modified except upon express written consent of all of the Parties, and/or their successors and assigns, if applicable.  Any such successor or assign shall execute and deliver an instrument, reasonably acceptable to the Parties, acknowledging the existence of this Agreement and agreeing to be bound by its terms, and the Company shall not transfer any shares of Common Stock into the name of any such successor assign until such person or entity executes and delivers such an instrument.  None of the agreements or documents constituting Final Documentation shall be amended, restated, changed or altered without the written consent of MDV (or a holder of a majority of Class B shares held by the MDV Parties if MDV is deceased or permanently incapacitated) after the execution or adoption thereof.

14.    **Entire Agreement.**  This Agreement sets forth the entire agreement between the Parties as it relates to the resolution of this matter.   The MDV Parties acknowledge that they have not relied on any representation, promises, or agreements of any kind made in connection with the decision to sign this Agreement, except for those set forth in this Agreement.

15.    **Breach of Agreement.**  If one of the Parties breaches this Agreement, including non-compliance with any provision of Section 12(b), a non-breaching Party may institute an action in the 281st District Court of Harris County, Texas to specifically enforce the terms of this Agreement, in addition to any other legal or equitable relief permitted by law and/or by this Agreement.

16.    **Applicable Law.**  This Agreement is made and entered into in the State of Texas, and shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Texas.

17.    **Fees and Expenses.**  Each of the Parties will bear its own costs, including attorneys fees and expenses relating to or arising from the Litigation or the negotiation execution or delivery of this Agreement or any of the agreements contemplated herein; provided, however, that nothing in this Section 17 shall effect, or be deemed to effect, any right of indemnification to which any SDI Party may be entitled.

18.    **Counterparts.**  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original copy of this Agreement and all of which, when taken together, shall be deemed to constitute one and the same agreement.  Delivery of a copy of this Agreement bearing an original signature by facsimile transmission or by electronic mail in "portable document format" form shall have the same effect as physical delivery of the paper document bearing the original signature.

**SIGNATURES APPEAR ON THE FOLLOWING PAGES**

EXHIBIT C - 149

MDV:

Matthew D. Van Steenwyk, *individually and as Trustee of The Matthew Donald Van Steenwyk GST Trust and The Issue Trust for Matthew Donald Van Steenwyk*

SDI:

Scientific Drilling International, Inc.

By:_____
   William B. Wade, *Chief Executive Officer*

ATA:

Applied Technologies Associates, Inc.

By:_____
   William B. Wade, *Chief Executive Officer*

Elizabeth A. Van Steenwyk, *individually, as Executrix of the Estate of Donald H. Van Steenwyk, as a member of the Board of Directors of Scientific Drilling International, Inc. and Applied Technologies, Inc., and as Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust*

_____
Gene Durocher

_____
Gordon Thomson

6014907

Signature Page to
Settlement and Release Agreement

EXHIBIT C - 150

_____

Barbara Helbach


_____

Denis Bandera

**VSH:**

Van Steenwyk Holdings, LLC

By: _Elizabeth A Van Steen jr._
Elizabeth A. Van Steenwyk
Sole Manager

Signature Page to
Settlement and Release Agreement

EXHIBIT C - 151

MDV:

_____

Matthew D. Van Steenwyk, *individually and as Trustee of The Matthew Donald Van Steenwyk GST Trust and The Issue Trust for Matthew Donald Van Steenwyk*

SDI:

Scientific Drilling International, Inc.

By: _____

William B. Wade, *Chief Executive Officer*

ATA:

Applied Technologies Associates, Inc.

By: _____

William B. Wade, *Chief Executive Officer*

_____

Elizabeth A. Van Steenwyk, *individually, as Executrix of the Estate of Donald H. Van Steenwyk, as a member of the Board of Directors of Scientific Drilling International, Inc. and Applied Technologies, Inc., and as Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust*

_____

Gene Durocher

_____

Gordon Thomson

EXHIBIT C - 152

MDV:

_____

Matthew D. Van Steenwyk, *individually and as Trustee of The Matthew Donald Van Steenwyk GST Trust and The Issue Trust for Matthew Donald Van Steenwyk*

SDI:

Scientific Drilling International, Inc.

By:_____
    William B. Wade, *Chief Executive Officer*

ATA:

Applied Technologies Associates, Inc.

By:_____
    William B. Wade, *Chief Executive Officer*

*Elizabeth A Van Steenyk*

Elizabeth A. Van Steenwyk, *individually, as Executrix of the Estate of Donald H. Van Steenwyk, as a member of the Board of Directors of Scientific Drilling International, Inc. and Applied Technologies, Inc., and as Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust*

_____

Gene Durocher

_____

Gordon Thomson

6014907                          Signature Page to
                Settlement and Release Agreement

EXHIBIT C - 153

**MDV:**

_____

Matthew D. Van Steenwyk, *individually and as Trustee of The Matthew Donald Van Steenwyk GST Trust and The Issue Trust for Matthew Donald Van Steenwyk*

**SDI:**

Scientific Drilling International, Inc.

By: _____

William B. Wade, *Chief Executive Officer*

**ATA:**

Applied Technologies Associates, Inc.

By: _____

William B. Wade, *Chief Executive Officer*

_____

Elizabeth A. Van Steenwyk, *individually, as Executrix of the Estate of Donald H. Van Steenwyk, as a member of the Board of Directors of Scientific Drilling International, Inc. and Applied Technologies, Inc., and as Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust*

_____
Gene Durocher

_____

Gordon Thomson

6014907                    Signature Page to
                    Settlement and Release Agreement

EXHIBIT C - 154

_Barbara Helbach_
Barbara Helbach

_Denis Bandera_
Denis Bandera

**VSH:**

Van Steenwyk Holdings, LLC


By:_____
     Elizabeth A. Van Steenwyk
     Sole Manager

Signature Page to
Settlement and Release Agreement

EXHIBIT C - 155

# EXHIBIT E

EXHIBIT E

EXHIBIT C - 156

## SHAREHOLDERS' AGREEMENT PURSUANT TO
## SETTLEMENT AND RELEASE AGREEMENT

THIS SHAREHOLDERS' AGREEMENT PURSUANT TO SETTLEMENT AND RELEASE AGREEMENT (this "*Agreement*") is entered into as of October 20, 2011, by and among Scientific Drilling International, Inc., a Texas corporation ("*SDI*"), Applied Technologies Associates, Inc., a California corporation ("*ATA*" and collectively with SDI, the "*Corporations*" and each individually, the "*Corporation*"), The Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust, as the sole Class A Shareholder (as defined below) (the "*DHV/EAV Trust*"), Van Steenwyk Holdings, LLC ("*VSH*"), Matthew van Steenwyk individually and the Class B Shareholders (as defined below) executing this Agreement (the "*Contracting Class B Shareholders*").

This Agreement constitutes the Final Documentation as defined in the Settlement and Release Agreement dated January 24, 2011, by and among Matthew van Steenwyk, on behalf of himself and as trustee of the Matthew Donald Van Steenwyk GST Trust and the Issue Trust for Matthew Donald Van Steenwyk and their respective successors and assigns, and the Corporations, Elizabeth A. Van Steenwyk, individually, as Executrix of the Estate of Donald H. Van Steenwyk, as a member of the boards of directors of the Corporations, and as trustee of The Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust, Gene Durocher, Gordon Thomson, Barbara Helbach, Denis Bandera and Van Steenwyk Holdings, LLC, and their respective successors and assigns, as amended by the Amendment to Settlement Agreement among the same parties, dated as of February 28, 2011, the Second Amendment to Settlement Agreement, dated as of April 29, 2011, and the Third Amendment to such Settlement Agreement, dated June 6, 2011 (the "*Third Amendment*," and such agreement as so amended, the "*Settlement Agreement*"), and is being entered into and delivered in satisfaction of Section 12 of the Settlement Agreement.

The parties hereto agree as follows:

1.      **Definitions**. As used in this Agreement, the following terms have the meanings assigned such terms in this Section 1:

        (a)     "*Agreement*" means this Shareholders' Agreement Pursuant to Settlement and Release Agreement, as the same may be amended or amended and restated from time to time.

        (b)     "*Board*" means the board of directors of either Corporation and "*Boards*" means the boards of directors of the Corporations collectively.

        (c)     "*Capital Stock*" means any shares of the capital stock of the Corporation, however designated, including, without limitation, the Common Stock, and any warrants, options or other rights to purchase or acquire any such Capital Stock and any securities convertible into or exchangeable or exercisable for any such Capital Stock.

        (d)     "*Change in Control*" means, with respect to either Corporation, the occurrence of any of the following:

6044485v.10

EXHIBIT C - 157

(i)    any person (as that term is used in Sections 13(d) and 14(d) of the Exchange Act), other than:  (A) a trustee of the survivor's trust under the agreement that created the DHV/EAV Trust, (B) a trustee of a marital trust or other trust under the agreement that created the DHV/EAV Trust, (C) a recipient of a gift by EAV or under the agreement that created the DHV/EAV Trust, by gift or bequest, (D) any person to whom EAV grants a proxy or (E) a subsidiary of the Corporation, becoming the beneficial owner (as that term is defined in Rule 13d-3 under the Exchange Act) of a majority or more of the Corporation's then-outstanding shares of Capital Stock having the right to vote generally in the election of directors of the Corporation;

(ii)    the liquidation or dissolution of the Corporation; or

(iii)    the consummation of a Fundamental Business Transaction or series of transactions, unless immediately following such Fundamental Business Transaction or series of transactions, the persons who were the respective beneficial owners of the outstanding shares of Capital Stock of the Corporation immediately before such transaction or series of transactions beneficially own, directly or indirectly, more than fifty percent (50%) of the outstanding shares of Capital Stock of the Corporation, in substantially the same proportions as their ownership in the outstanding shares of Capital Stock of the Corporation immediately before such transaction or series of transactions.

(e)    "*Class A Common Stock*" means the shares of SDI's and ATA's, as applicable, Class A Common Stock, par value $0.01 per share, whether outstanding on the date of this Agreement or issued after the date hereof, and any equity securities issued or issuable with respect to such Class A Common Stock in connection with a combination or division of shares, recapitalization, merger, consolidation or other reorganization.

(f)    "*Class A Shareholder*" means: (i) the DHV/EAV Trust; and (ii) and each Permitted Shareholder who acquires shares of Class A Common Stock after the date of this Agreement.

(g)    "*Class B Common Stock*" means the shares of SDI's and ATA's, as applicable, Class B Common Stock, par value $0.01 per share, whether outstanding on the date of this Agreement or issued after the date of this Agreement, and any equity securities issued or issuable with respect to such Class B Common Stock in connection with a combination or division of shares, recapitalization, merger, consolidation or other reorganization.

(h)    "*Class B Shareholder*" means each of:

(i)    the Matthew Donald Van Steenwyk GST Trust;

(ii)    the Issue Trust for Matthew Donald Van Steenwyk;

(iii)    the Kedrin Elizabeth Van Steenwyk GST Trust;

(iv)    the Issue Trust for Kedrin Elizabeth Van Steenwyk;

(v)    the Brett Harler Van Steenwyk GST Trust;

6044485v.10

EXHIBIT C - 158

(vi)    the Issue Trust for Brett Harler Van Steenwyk;

(vii)    the Gretchen Marie Van Steenwyk-Marsh GST Trust;

(viii)    the Issue Trust for Gretchen Marie Van Steenwyk-Marsh; and

(ix)    and each Permitted Shareholder who acquires shares of Class B Common Stock after the date of this Agreement.

(i)    "**Common Stock**" means the Class A Common Stock and the Class B Common Stock.

(j)    "**Contracting Class B Shareholders**" has the meaning set forth in the introductory paragraph of this Agreement.

(k)    **Control**" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, seats on the board of directors or similar governing body, by contract or otherwise.

(l)    "**Corporation**" and "**Corporations**" have the meanings set forth in the introductory paragraph of this Agreement.

(m)    "**DHV/EAV Trust**" has the meaning set forth in the introductory paragraph of this Agreement.

(n)    "**Exchange Act**" means the Securities Exchange Act of 1934, as amended, or any similar successor federal statute, and the rules and regulations promulgated thereunder, as in effect from time to time.

(o)    "**Existing Shareholders' Agreements**" means: (i) the Agreement of Shareholders dated as of December 19, 1995, by and between Donald H. Van Steenwyk and Scientific Drilling International; and (ii) the Agreement of Shareholders dated as of December 19, 1995, by and between Donald H. Van Steenwyk and Applied Technologies Associates, Inc., in either case, as amended or amended and restated from time to time.

(p)    "**Fundamental Business Transaction**" means with respect to either Corporation: (i) a merger; (ii) an interest exchange; (iii) a conversion; or (iv) sale of all or substantially all of such Corporation's assets; provided, however, that a Fundamental Business Transaction shall not mean any of the foregoing with respect to ATA's Non-Oilfield Business.

(q)    "**Non-Oilfield Business**" means the businesses and assets of ATA other than ATA's business of designing, building, and manufacturing oil industry technology products, including borehole surveying instruments (both gyroscopic and magnetic), MWD (measurement while drilling) systems, and production logging systems, and selling it to SDI to provide such services as borehole surveying, wireline steering, MWD, production logging services to the oil industry.

6044485v.10

EXHIBIT C - 159

(r)    "*Person*" means any individual, corporation, limited liability company, limited or general partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivisions thereof.

(s)    "*Pro Rata Share*" means, as to a particular Contracting Class B Shareholder and with respect to the particular shares of Class B Common Stock at issue, that number of such shares of Class B Common Stock equal to the product obtained by multiplying the total number of such shares of Class B Common Stock by a fraction:

(i)    the numerator of which shall be the number of shares of Class B Common Stock owned by such Contracting Class B Shareholder on the date of the applicable Offering Notice, and

(ii)    the denominator of which shall be the total number of outstanding shares of Class B Common Stock owned by all of the Contracting Class B Shareholders on the date of the applicable Offering Notice.

(t)    "*Sale Period*" has the meaning set forth in Section 3(b).

(u)    "*Securities Act*" means the Securities Act of 1933, as amended, or any similar successor federal statute, and the rules and regulations promulgated thereunder, as in effect from time to time.

(v)    "*Selling Shareholder*" has the meaning set forth in Section 3(a).

(w)    "*Shareholders*" means, collectively, the Class A Shareholder and the Contracting Class B Shareholders (each, a "*Shareholder*") and the Permitted Shareholders, if any, who otherwise hold shares of Capital Stock subject to the terms and conditions of this Agreement.

Capitalized terms used and not otherwise defined in Section 3 of this Agreement have the meanings assigned such terms in the Existing Shareholders' Agreements.

2.    **Restrictive Legends.**

(a)    Each certificate representing shares of Common Stock shall (unless otherwise permitted by the provisions of this Agreement) be stamped or otherwise imprinted with legends substantially similar to the following:

> "THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS, AND MAY NOT BE SOLD, PLEDGED, OR OTHERWISE TRANSFERRED WITHOUT AN EFFECTIVE REGISTRATION THEREOF UNDER SUCH ACT OR SUCH LAWS OR AN OPINION OF COUNSEL, SATISFACTORY TO THE CORPORATION AND ITS COUNSEL, THAT SUCH REGISTRATION IS NOT REQUIRED."

6044485v.10

EXHIBIT C - 160

"ANY SALE, ASSIGNMENT, TRANSFER, PLEDGE OR OTHER DISPOSITION OF THE SHARES OF STOCK REPRESENTED BY THIS CERTIFICATE IS RESTRICTED BY AND SUBJECT TO THE TERMS AND PROVISIONS OF AN AGREEMENT OF SHAREHOLDERS DATED AS OF DECEMBER 19, 1995 AMONG THE CORPORATION AND CERTAIN SHAREHOLDERS OF THE CORPORATION. A COPY OF SUCH AGREEMENT IS ON FILE AT THE CORPORATION'S PRINCIPAL PLACE OF BUSINESS AND REGISTERED OFFICE AND MAY BE OBTAINED WITHOUT CHARGE UPON WRITTEN REQUEST TO THE COROROATION AT ITS PRINCIPAL PLACE OF BUSINESS OR REGISTERED OFFICE. BY ACCEPTANCE OF THIS CERTIFICATE THE HOLDER HEREOF AGREES TO BE BOUND BY THE TERMS OF SUCH AGREEMENT."

"IN ADDITION, THE SHARES OF STOCK REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO THE FURTHER RESTRICTIONS ON TRANSFER AND TO THE VOTING AGREEMENTS SET FORTH IN THE SHAREHOLDERS' AGREEMENT PURSUANT TO SETTLEMENT AND RELEASE AGREEMENT DATED AS OF OCTOBER 20, 2011, AS AMENDED FROM TIME TO TIME, BY THE CORPORATION AND THE PARTIES THERETO, A COPY OF WHICH IS ON FILE AT THE CORPORATION'S PRINCIPAL PLACE OF BUSINESS."

(b)    The Class A Shareholder and the Contracting Class B Shareholders shall deliver their stock certificates representing their respective shares of Common Stock to the Corporations so that the Corporations may affix such legends.

3.    **Right of Co-Sale.**

(a)    After a Transferring Shareholder has complied with the provisions of Section 2.1 of the Existing Shareholders' Agreements with respect to a Disposition, to the extent that SDI or ATA, as applicable, and the Shareholders do not purchase all of the shares of Offered Stock offered by the Transferring Shareholder in the Offering Notice(s) delivered under Section 2.1 and Exhibit A of the Existing Shareholders' Agreements, each Contracting Class B Shareholder who elected not to purchase any shares of the Offered Stock (whether actively, by returning a negative Response Notice, or passively, by failing to timely return a Response Notice) shall have the right to participate with the Transferring Shareholder in the proposed Disposition by selling such Contracting Class B Shareholder's Pro Rata Share of Offered Stock, on the same terms and conditions as set forth in the Bona Fide Offer specified in such Offering Notice (whether or not any other Contracting Class B Shareholders choose to so participate). The right of a Contracting Class B Shareholder to participate in any such proposed Disposition shall be exercisable for a period of 15 days, beginning on the expiration of 30-day period from the receipt by the other Shareholders of the Offering Notice from the Transferring Shareholder (as set forth in Exhibit A

5

EXHIBIT C - 161

of the Existing Shareholders' Agreements). Each Contracting Class B Shareholder desiring to exercise such right (each, a "**Selling Shareholder**") shall provide written notice of such exercise to the Transferring Shareholder during such 15-day period, which notice shall indicate the number of shares of the Offered Stock such Selling Shareholder desires to sell under this Section 3.

(b)    The Transferring Shareholder may, at any time within 30 days after the expiration of the Contracting Class B Shareholders' co-sale right (the "**Sale Period**"), Dispose all of the Offered Stock so offered for sale pursuant to the Offering Notice giving rise to the co-sale right, to the extent the co-sale right is not exercised, to the transferee designated in the Offering Notice, at a price not less than the price, and on terms not more favorable to such transferee than the terms stated in the Offering Notice; provided, however, that the Transferring Shareholder shall not Dispose of any of the Offered Stock unless any Contracting Class B Shareholder who has elected to participate in the proposed Disposition as provided in Section 3(a) above is permitted to do so. If the Transferring Shareholder fails to Dispose all of the Offered Stock during the Sale Period, the Transferring Shareholder's right to Dispose any Offered Stock not so sold shall expire and the obligations of this Section 3 shall be reinstated.

4.    **Board of Directors; Voting Agreement**.    During the term of this Agreement, the following provisions shall govern, and be controlling over any conflicting provisions in the Corporations' respective Bylaws.

(a)    By December 31, 2011, the Corporations shall cause the Boards to: (i) increase the number of directors to a number that will permit the Class A Shareholder to elect a number of independent directors such that one less than a majority of the Boards are independent, and (ii) subject to the limitations of applicable law, take all actions reasonably necessary to implement the intent of this Section 4.  For example, assuming the Board's current composition of five directors, one of which is independent, the Corporations shall cause the Boards to increase the number of directors to seven, three of which shall be independent.  The independence of a director shall in all cases be determined based on the independence tests of Section 303A.02 of the NYSE Listed Company Manual, as the same existed on January 24, 2011.

(b)    The Class A Shareholder shall:

(i)    by December 31, 2011, in the election of directors to fill the additional director positions created by the Boards, vote all shares of Class A Common Stock to elect a number of independent directors such that one less than a majority of the members of the Boards are independent;

(ii)    at all times thereafter, subject only to the limitations in the last paragraph of this Section 4, in any election of directors of the Corporation, vote all shares of Class of Common Stock to elect a number of independent directors such that one less than a majority of the members of the Boards are independent; and

(iii)    vote all shares of Class A Common Stock to continue to elect the Chief Executive Officer of each Corporation as a member of its respective Board, but only for so long as such person continues to be the Chief Executive Officer of such Corporation.

6044485v.10

EXHIBIT C - 162

On July 27, 2010, the Class A Shareholder appointed the Chief Executive Officer of the Corporations as a member of the Boards and he continues to serve on the Boards.

Notwithstanding anything to the contrary in this Agreement, nothing in this Agreement shall impair the Boards' or the Class A Shareholder's right to remove an independent director or for an independent director to resign. If an independent director ceases to be a director for any reason, then the Class A Shareholder shall use all commercially reasonable efforts to fill the vacancy created with another independent director within 90 days of such vacancy. During any period in which one or more of the independent directors has been removed or for any reason is no longer serving as a director, a number of the other directors (other than the Chief Executive Officer) shall be removed as directors so that one less than a majority of the Board are independent. The Class A Shareholder shall remove such director or directors. At such time as a replacement independent director has become a director of the corporation, the Class A Shareholder or the Boards shall elect or appoint an additional director to replace the non-independent director removed pursuant to the preceding sentence.

(c)    After the relevant Board has considered and recommended a vote to approve a Fundamental Business Transaction, the relevant Board shall deliver written notice to its shareholders calling a special meeting for the purpose of considering such Fundamental Business Transaction, which notice shall include a written explanation and financial analysis of the proposed Fundamental Business Transaction. Such notice shall be delivered at least 20 days, but in no event more than 60 days, prior to such meeting. The shareholders shall, acting as a single class, be entitled to vote on such Fundamental Business Transaction. Any such proposed Fundamental Business Transaction shall require the approval of the holders of at least 66 2/3% of the outstanding Common Stock, acting as a single class, of SDI and/or ATA, as the case may be. Except as set forth in this Section 4(c) and as provided for under the Texas Business Organizations Code (as to SDI) and the California General Corporation Law (as to ATA), the Class B Shareholders shall not be entitled to vote on any other matter on which the holder(s) of Class A Shareholders are entitled to vote.

5.    **Delivery of Information**. The Corporations hereby covenant and agree that, subject to the execution and delivery of a Confidentiality Agreement in the form attached as **Exhibit 1** to the Settlement Agreement by the Corporations and the Class B Shareholder executing such Confidentiality Agreement (the "***Receiving Class B Shareholder***"), and subject to continued compliance therewith by such Receiving Class B Shareholder, the Corporations shall deliver to the Receiving Class B Shareholder:  (a) copies of all written materials provided to the Boards in preparation for any meeting of the Boards, at the same time as delivered to the members of the Boards, and for regularly scheduled meetings, in no event later than four (4) days before the date of the meeting; and (b) copies of all approved minutes of the Boards within a reasonable period (and in no event more than three (3) business days) after approval thereof by the Boards.

7

6044485v.10

EXHIBIT C - 163

6.    **Transfers and Sales of Common Stock**.  The Class A Shareholder and the Contracting Class B Shareholders shall not sell or transfer any shares of Common Stock or any interest therein except pursuant to the terms and provisions of the Existing Shareholders' Agreement.

7.    **Miscellaneous**.

(a)    **Notices**.  All notices, consents, waivers, and other communications under this Agreement must be in writing and shall be deemed to have been duly given:

(i)    two days after deposit in the mail, if sent first-class United States mail;

(ii)    when delivered by hand (with written confirmation of receipt);

(iii)    when sent by facsimile (with written confirmation of receipt); or

(iv)    when received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested);

in each case, to the appropriate address or facsimile number, as applicable, set forth below or on the signature pages hereof (or, in any instance, to such other address and facsimile number as a party may designate by written notice to the other parties):

if to a Shareholder, to the address set forth next to such Shareholder's name on the signature pages hereof;

if to the Corporations, to:

Scientific Drilling International, Inc.
16701 Greenspoint Park Drive
Suite 200
Houston, Texas 77070
Attn:  Dan R. Carter, Vice President, General Counsel & Secretary
Fax:  (866)-406-9167

with a copy to:

Jackson Walker L.L.P.
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Attn:  Sabrina A. McTopy
Fax:  (713) 308-4140

(b)    **Amendment; Waiver**.  This Agreement fully replaces and supersedes the provisions of Sections 6(a) (except for the form of Confidentiality Agreement that, pursuant to the Third Amendment, was attached as **Exhibit 1**), 6(b), Section 12, and the last sentence of Section 13, of the Settlement Agreement.  For the avoidance of doubt, the parties acknowledge and agree that, though this Agreement was not executed and delivered on or before the Final

8

EXHIBIT C - 164

Documentation Date of May 16, 2011, their execution and delivery of this Agreement fully satisfies their obligations under Section 12 of the Settlement Agreement, and that the dispute resolution procedures of Section 12(b) of the Settlement Agreement therefore no longer apply. This Agreement may not be amended or waived, except with the written consent of all of the parties; provided, however, that this Agreement may be amended to add the parties as provided in Section 7(k)below, without the written consent of all parties hereto.

(c)    **Governing Law**.  This Agreement, to the extent applicable to SDI and the shareholders of SDI, will be governed by the laws of the State of Texas without regard to conflicts of laws principles, and to the extent applicable to ATA and the shareholders of ATA, will be governed by the laws of the State of California without regard to conflicts of laws principles.

(d)    **Jurisdiction; Service of Process; Enforcement**.  Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties in the courts of the State of Texas, County of Harris, and each of the parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.  Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world.  The parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement, and to enforce specifically the terms and provisions hereof in any such court, in addition to any other remedy to which they are entitled at law or in equity.

(e)    **Severability; Conflicts with Other Agreements**.  If any provision of this Agreement would, under applicable law, be invalid or unenforceable in any respect, such provision shall (to the extent permitted by applicable law) be construed by modifying or limiting it so as to be valid and enforceable to the maximum extent compatible with, and possible under, applicable law.  The provisions of this Agreement are severable, and if any provision is held invalid or unenforceable in any respect, it shall not invalidate, render unenforceable or otherwise affect any other provision of this Agreement.  If there is a conflict between the terms and provisions of this Agreement and the Certificate or Articles of Incorporation or Bylaws of either Corporation, or any agreement (other than the Existing Shareholders' Agreements) to which either Corporation is subject, the terms of this Agreement shall prevail and shall be enforced; provided, however, that (i) if there is a conflict between the terms and provisions of this Agreement and those of the Existing Shareholders' Agreements to which the Corporation and all of its shareholders are subject, then the terms and provisions of the Existing Shareholders' Agreement shall prevail and be enforced, and (ii) all references to "voting rights holders" in the Bylaws of either Corporation shall be construed as referring solely to the Class A Shareholder(s), and there shall be no interpretation of Class B Shareholders as "voting rights holders" under either Corporation's Bylaws, for purposes of determining a conflict of this Agreement with those governing documents or otherwise.

(f)    **Waiver**.  The rights and remedies of the parties to this Agreement are cumulative and not alternative.  Neither the failure nor any delay by any party in exercising any right, power, or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right,

6044485v.10

EXHIBIT C - 165

power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

(g)    **Assignments; Successors**.  No party may assign any of its rights under this Agreement without the prior consent of each of the other parties hereto; provided, however, that the Shareholders on the signature pages of this Agreement may assign their respective rights under this Agreement to a Permitted Shareholder (as that term is defined in the Existing Shareholders' Agreements) without consent.  Subject to the preceding sentence, this Agreement will apply to, be binding in all respects upon, and inure to the benefit of the successors and permitted assigns of the parties.  Nothing expressed or referred to in this Agreement will be construed to give any Person other than the parties to this Agreement any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement.

(h)    **Section Headings; Construction**.  The headings of Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation.  All references to "*Section*" or "*Sections*" refer to the corresponding Section or Sections of this Agreement.  All words used in this Agreement will be construed to be of such gender or number as the circumstances require.  Unless otherwise expressly provided, the word "*including*" does not limit the preceding words or terms.

(i)    **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.  Delivery of a copy of this Agreement bearing an original signature by facsimile transmission or by electronic mail in "portable document format" form shall have the same effect as physical delivery of the paper document bearing the original signature.

(j)    **Termination**.  This Agreement shall terminate upon the occurrence of the earliest to occur of:

(i)    All of the parties' execution of a written agreement to that effect; or

(ii)    a Change in Control of either Corporation, in which event this Agreement shall terminate only with respect to such Corporation and the Shareholders of such Corporation as to his, her or its rights therein.

The rights of a particular Contracting Class B Shareholder under this Agreement shall terminate immediately upon such Shareholder ceasing to be a beneficial owner of at least 5% of the issued and outstanding shares of Common Stock of either Corporation, in which case this Agreement shall terminate with respect to such Shareholder and such Corporation only.

(k)    **Addendum Agreement**.  Any Permitted Shareholder who acquires shares of Common Stock after the date hereof must become a party to this Agreement upon the execution by such person and the Corporations (acting in its own capacity and in its capacity as agent for the Shareholders) of an Addendum Agreement to this Agreement in substantially the form attached hereto as **Exhibit A**.  All of the Shareholders hereby appoint the Corporations as their agent and attorney for the limited purpose of executing such Addendum Agreement on their behalf, and expressly bind themselves to the Addendum Agreement by the Corporations'

6044485v.10

EXHIBIT C - 166

execution of that Addendum Agreement without further action on their part. On the execution of an Addendum Agreement by the Corporations and any such person, such person shall be bound by, and shall have the benefit of, all the terms and conditions set out in this Agreement to the same extent as if such person was a party to this Agreement as of the date first written above.

## SIGNATURES APPEAR ON THE FOLLOWING PAGES

EXHIBIT C - 167

The parties hereto have executed this Agreement to be effective as of the date first written above.

CORPORATIONS:

**SCIENTIFIC DRILLING INTERNATIONAL INC.**, a Texas corporation

By: _William B. Wade_ _____
        William B. Wade, Chief Executive Officer

**APPLIED TECHNOLOGIES ASSOCIATES, INC.**, a California corporation

By: _William B. Wade_ _____
        William B. Wade, Chief Executive Officer

**VSH**:

Van Steenwyk Holdings, LLC

By:_____
        Elizabeth A. Van Steenwyk, Sole Manager


_____
Matthew D. van Steenwyk, *individually*

Signature Page

EXHIBIT C - 168

The parties hereto have executed this Agreement to be effective as of the date first written above.

**CORPORATIONS:**

**SCIENTIFIC DRILLING INTERNATIONAL INC.**, a Texas corporation

By: _____
      William B. Wade, Chief Executive Officer

**APPLIED TECHNOLOGIES ASSOCIATES, INC.**, a California corporation

By: _____
      William B. Wade, Chief Executive Officer

**VSH**:

Van Steenwyk Holdings, LLC

By:_____
      Elizabeth A. Van Steenwyk, Sole Manager

_____
Matthew D. van Steenwyk, *individually*

EXHIBIT C - 169

**THE CLASS A SHAREHOLDER:**

**THE DONALD H. VAN STEENWYK AND
ELIZABETH A. VAN STEENWYK 1996
REVOCABLE TRUST**

By:_____
    Elizabeth A. Van Steenwyk, Trustee

Address for Notices:

5785 Adelaida Road
Paso Robles, CA 93446
Fax:_____

Signature Page

EXHIBIT C - 170

**THE CONTRACTING CLASS B SHAREHOLDERS:**

**MATTHEW DONALD VAN STEENWYK GST TRUST**

By: _____
Matthew D. van Steenwyk, Trustee

Address for Notices:

2777 Paradise Road, #3004
Las Vegas, NV  89109
Fax: _NONE_____

**ISSUE TRUST FOR MATTHEW DONALD VAN STEENWYK**

By: _____
Matthew D. van Steenwyk, Trustee

Address for Notices:

2777 Paradise Road, #3004
Las Vegas, NV  89109
Fax: _NONE_____

EXHIBIT C - 171

**THE CONTRACTING CLASS B SHAREHOLDERS:**

**KEDRIN ELIZABETH VAN STEENWYK GST TRUST**

By:_____
    Kedrin E. Van Steenwyk, Trustee

Address for Notices:

10571 Falls Creek Lane
Centerville, OH 45458
Fax:_____

**ISSUE TRUST FOR KEDRIN ELIZABETH VAN STEENWYK**

By:_____
    Kedrin E. Van Steenwyk, Trustee

Address for Notices:

10571 Falls Creek Lane
Centerville, OH 45458
Fax:_____

Signature Page

EXHIBIT C - 172

**THE CONTRACTING CLASS B SHAREHOLDERS:**

**BRETT HARLER VAN STEENWYK GST TRUST**

By:_____
     Brett H. Van Steenwyk, Trustee

Address for Notices:

_____
_____

Fax:_____

**ISSUE TRUST FOR BRETT HARLER VAN STEENWYK**

By:_____
     Brett H. Van Steenwyk, Trustee

Address for Notices:

_____
_____

Fax:_____

EXHIBIT C - 173

## EXHIBIT A
## FORM OF ADDENDUM AGREEMENT

**THIS ADDENDUM AGREEMENT** is entered into as of this ____ day of _____, 20___, by and between _____ (the "*New Shareholder*"), Scientific Drilling International, Inc., a Texas corporation, Applied Technologies Associates, Inc., a California corporation, and the Shareholders of the Corporations who are parties to the Shareholders' Agreement pursuant to Settlement and Release Agreement dated as of _____, 2011 (the "*Agreement*"), between the Corporations and the Shareholders, among others. Capitalized terms used and not otherwise defined herein have the meanings assigned such terms in the Agreement.

### Recitals

The Corporations and the Shareholders entered into the Agreement to impose certain restrictions and obligations upon the Shareholders and the shares of capital stock of the Corporations owned by such Shareholders (the "*Shares*"). The New Shareholder desires to become a Shareholder of the Corporations.

The Corporations and the Shareholders have required in the Agreement that all persons being offered shares of Capital Stock must enter into an Addendum Agreement binding the New Shareholder to the Agreement to the same extent as if it was an original party thereto, so as to promote the mutual interests of the Corporations, the Shareholders and the New Shareholder by imposing the same restrictions and obligations on the New Shareholder and the shares of Capital Stock to be acquired by the New Shareholder as were imposed upon the Shareholders under the Agreement.

### Agreement

In consideration of the mutual promises of the parties, the New Shareholder acknowledges that the New Shareholder has read the Agreement. The New Shareholder shall be bound by, and shall have the benefit of, all the terms and conditions set out in the Agreement to the same extent as if the New Shareholder was a Shareholder. This Addendum Agreement shall be attached to and become a part of the Agreement.

_____

_____

[Printed Name of New Shareholder]

Address:

_____

_____

A-i

EXHIBIT C - 174

The spouse of the New Shareholder acknowledges that such spouse has read the Agreement. Such spouse is fully aware of, understands and fully consents and agrees to the Agreement and that such spouse's awareness, understanding, consent, and agreement is evidenced by such spouse's execution and delivery of this Addendum Agreement.

_____

_____
[Printed Name of Spouse of New Shareholder]

Agreed to on behalf of the Shareholders and the Corporations

**SCIENTIFIC DRILLING INTERNATIONAL, INC.**

By: _____
    Name:_____
    Title:_____

**APPLIED TECHNOLOGIES ASSOCIATES, INC.**

By: _____
    Name:_____
    Title:_____

A-ii

EXHIBIT C - 175

EXHIBIT D

*Matthew D. Van Steenwyk v. Kedrin E. Van Steenwyk, et al.,* 23CVP-0146

| Hearing: | (1) Motion Pursuant to Corporations Code Section 800(c) (Motion for Bond) |
| | (2) Motion to Stay |
| | (3) Demurrer |

**FILED**

Date:    November 14, 2023

**NOV 15 2023**



SAN LUIS OBISPO SUPERIOR COURT
BY_____
Victoria Miller, Deputy Clerk

### RULING AFTER HEARING

**Background.**

This is a shareholder lawsuit with derivative and direct claims.

On May 1, 2023, Plaintiff Matthew Van Steenwyk, individually as trustee and beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue trust, and as co-trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust; and derivatively on behalf of Nominal Defendants Applied Technologies Associates, Inc. and ATA Ranches, Inc. filed a lawsuit. On October 10, 2023, Plaintiff filed a first amended complaint (FAC).

The named Defendants in the FAC include Kedrin E. Van Steenwyk, individually as successor trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk[1] 1996 Revocable Trust; Daniel Carter; Kiernan Duggan; Pamela Pierce; Joseph McCoy; Steve Orr; Wesley Shedd; Gordon Thompson; Adelaida Cellars, Inc (Adelaida); and KMBG, LLC. Applied Technologies Associates, Inc. (ATA) and ATA Ranches, Inc. (ATA Ranches) are named as Nominal Defendants.

The FAC includes shareholder derivative claims for (1) breach of fiduciary duty, (2) corporate waste, and (3) declaratory relief. The shareholder direct claims include (4) breach of fiduciary duty by controlling shareholder, (5) aiding and abetting breach of fiduciary duty, (6) production of corporate records, (7) breach of contract, and (8) violation of Colorado Rev. Stat. § 7-80-408.

Allegations in the FAC.

Plaintiff alleges Nominal Defendant ATA is a gas and oil drilling technology company owned by the four Van Steenwyk children: Plaintiff, Defendant, Brett, and Gretchen. (FAC, ¶ 2.) Plaintiff alleges each of the four siblings owns 23.75% of the non-voting Class B shares of ATA. Plaintiff further alleges that Kedrin is ATA's controlling shareholder via her 51% interest in the Class A voting shares, representing 5% of ATA's total equity. (FAC, ¶¶ 2, 18.) Plaintiff alleges that ATA, through its wholly-owned subsidiary, ATA Ranches, also owns two vineyard properties, Viking and HMR Ranches (the Ranches), in Paso Robles, which produce premium quality wine grapes. (FAC, ¶ 2.)

---

[1] The late Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk had four children: the Plaintiff, Matthew; the Defendant, Kedrin; Brett, and Gretchen. Due to the shared Van Steenwyk surname, the Court uses first names for ease of reference. No disrespect is intended.

EXHIBIT D - 001

Plaintiff alleges Defendant KMBG is a Colorado holding company that owns the Adelaida winery in Paso Robles, as well as the real property the winery sits on and other assets. (FAC, ¶ 3.) Plaintiff alleges Kedrin holds a majority interest in KMBG, Plaintiff holds a 0.16% interest, and Gretchen does not own any interest[2]. (FAC, ¶ 3.)

Plaintiff alleges Kedrin controls ATA, ATA Ranches, KMBG, and Adelaida because: (a) she controls the majority of all issued and outstanding Class A voting shares in ATA; (b) she is a director of ATA; (c) she controls Adelaida through her control over its only shareholder, KMBG[3]; (d) she controls a majority interest in KMBG; (e) she is KMBG's Manager; and (f) she is Adelaida's CEO and Director. (FAC, ¶ 18.)

Plaintiff alleges that Defendants have a documented history of self-dealing, which is the subject matter of a shareholder derivative lawsuit pending in the Central District of California (*Steenwyk v. Van Steenwyk et al.*, Case No. 2:20-cv-02375 FLA (AFMx), the Federal Action[4]; see FAC, Ex. C.) (FAC, ¶¶ 4, 5.)

Plaintiff alleges that on March 11, 2023, Defendants informed Plaintiff of a scheduled ATA Board meeting the next day to enter into a letter of intent (LOI) to sell the Ranches for $22,500,000 to Mount Paso, LLC (Mount Paso). (FAC, ¶ 7.) Plaintiff alleges this purchase price was significantly below the two appraisals ATA had received within the past two years for the Ranches ($28 million and $27.5 to $35.2 million). (FAC, ¶ 7.)

Plaintiff alleges that, on or about November 11, 2021, ATA entered into an agreement with Zepponi & Company (Zepponi) to sell the Ranches. (FAC, ¶ 42.) Plaintiff alleges neither Kedrin nor any of the other Defendants told Matthew and Gretchen that the Ranches were put up for sale. (*Ibid.*) Plaintiff alleges that, upon information and belief, KMBG entered into a similar agreement with Zepponi to market and sell properties owned by KMBG, including Adelaida. (*Ibid.*)

Plaintiff alleges that, on March 11, 2023, ATA's General Counsel Carter sent Plaintiff an email informing him that ATA was calling a special board of directors meeting the next day to:
- consider and approve a letter of intent (the Letter of Intent), "including the $22,500,000 purchase price for ATAR's real property assets";

---

[2] Plaintiff also alleges that, through his trusts, he owns a 0.16736% interest in Defendant KMBG. (FAC, ¶ 14.) Plaintiff alleges that his brother, Brett, is an "interested non-party" and is a trustee of the Brett H. Van Steenwyk Nonexempt Marital Trust under the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust, which trust is the holder of record title to 24,500/50,000 (49%) of the outstanding shares of ATA Class A Voting Stock. Plaintiff further alleges Brett owns 23.75% of the Class B shares in ATA and a "less-than-majority" interest in KMBG. (FAC, ¶ 28.) Plaintiff alleges Brett was forced to file a separate lawsuit against Kedrin and others in San Luis Obispo Superior Court, Case No. 23CVP-0068, "because Defendants had used an artifice to improperly deny Brett the right to vote for independent directors of his choice, even though he held 49% of the voting rights, which was sufficient to elect at least two and potentially three independent directors." (FAC, ¶ 29.)]
[3] Plaintiff alleges KMBG is a Colorado LLC with its principal place of business in Paso Robles and owns 100% of Adelaida's stock. (FAC, ¶ 19.)
[4] In the instant motion for bond, ATA states it has pending motions for summary judgment in the Federal Action "and have zealously advocated against any allegations of self-dealing or wrongdoing." (Mtn. for Bond, p. 3, ll. 26-27.)

2

- authorize ATA senior management to negotiate a definitive purchase and sale agreement with a preselected buyer, Mount Paso LLC (Mount Paso); and
- authorize ATA senior management to perform all acts necessary to finalize the sale of ATA Ranches' real property assets.

(FAC, ¶ 43.)

Plaintiff alleges he was also informed that after several rounds of discussion with Mount Paso, the LOI was agreed to in principle with the following terms: $22,500,000 for ATA Ranches' real property assets; 2023 grape crop stays with ATA Ranches; 120-day diligence period + 30 days to close; buyer takes over the task and expense of the search for water; and Purchase & Sale Agreement (PSA) to be negotiated over the next 30 days. (FAC, ¶ 44.)

Plaintiff alleges that ATA also disclosed, for the first time, that: (i) Zepponi had conducted an appraisal that valued the Ranches between $27,500,000 and $35,200,000, as of June 13, 2022; and (ii) Zepponi had received "two verbal offers" prior to receiving the current offer from Mount Paso. (FAC, ¶ 45.) Plaintiff alleges the first potential purchaser offered $35 million to buy all assets of ATA Ranches and KMBG, and that the second potential purchaser made an offer of $31 million for the same properties with a $7 million payout contingent on a groundwater threshold. (*Ibid.*) Plaintiff alleges both offers were "all in" offers for all real and personal property held by ATAR and KMBG, including brands, goodwill, equipment, inventory, and crops. (*Ibid.*)

Plaintiff alleges that, on March 12, 2023, the ATA Board held a special meeting and voted to approve entering into the LOI with Mount Paso to sell the Ranches. (FAC, ¶ 46.) Plaintiff alleges that, on March 13, 2023, Defendants Pierce and Carter held a Microsoft Teams meeting with Matthew, Gretchen, and Brett to discuss the transaction that the Board had already approved. (*Id.* at ¶ 48.) Plaintiff alleges Pierce and Carter stated they chose not to follow-up on offers exceeding $30 million because they did not believe they were serious offers, with Carter allegedly stating they were "not worth the paper they were not written on." (*Ibid.*) Plaintiff also alleges that during this meeting, Pierce indicated the $21+ million in sale proceeds would not be given to the shareholders, but rather ATA intended to retain the cash for "litigation needs." (*Id.* at ¶ 49.) Plaintiff alleges that the Federal Action, however, is a shareholder derivative suit and that if successful, ATA would not pay out money, but rather would receive money from Kedrin, its directors/officers, and Adelaida for breaching their fiduciary duties and/or aiding and abetting those breaches to ATA. (*Ibid.*) Plaintiff also alleges that ATA and SDI[5] have insurance policies providing coverage for legal fees, and thus Defendants' proposed reason for keeping the sale proceeds is false. (*Ibid.*)

Thus, Plaintiff alleges, Defendants' desire to create a "slush fund" for their potential liability in the Federal Action sheds light on the true motivation for selling the Ranches at a lower price than two other offers, which Plaintiff identities as "more self-dealing." (FAC, ¶ 51.)

Plaintiff alleges that on March 15, 2023, he sent a written corporate record request to ATA seeking documents and information, but that the response was to "regurgitate the same

---

[5] As alleged in the FAC, SDI is Scientific Drilling International, Inc., identified as ATA's "sister company." (FAC, ¶ 10.)

EXHIBIT D - 003

information it had previously provided." (FAC, ¶ 53.) Plaintiff alleges he also sent a company records request pursuant to Colorado Rev. Stat. § 7-80-408, to KMBG requesting six categories of records relating to offers received or potential sales of Adelaida. (*Id.* at ¶ 54.) Plaintiff alleges that instead of allowing an inspection or providing the information he requested, KMBG responded with a threatening letter from counsel. (*Id.* at ¶ 55.)

Plaintiff's complaint also references another lawsuit, filed in 2009 in Harris County, Texas (the Texas Litigation). (FAC, ¶ 59.) Plaintiff alleges he filed the Texas Litigation against SDI, ATA, and certain of their officers and directors for breach of fiduciary and statutory duties, as well as shareholder oppression. (*Ibid.*) Plaintiff alleges this lawsuit resulted in a settlement agreement and shareholders agreement. (*Id.* at ¶ 60.) Plaintiff alleges these agreements include provisions regarding the rights of Class A and Class B shareholders to receive information on board meetings and vote on corporate matters. (*Id.* at ¶ 61.) Plaintiff alleges Defendants have used these provisions as justification to deny Plaintiff access to information regarding Defendants' self-dealing transactions between ATA Ranches and Adelaida and the possible sale of ATA Ranches. (*Id.* at ¶ 65.) Plaintiff alleges, however, that as a Class B shareholder, he is entitled to information regarding those transactions. (*Id.* at ¶ 66.)

\*\*\*

Now before the Court are two motions[6]:
  (1) Motion pursuant to Corporations Code section 800(c) filed by ATA and ATA Ranches (collectively, ATA); and
  (2) Motion to stay and/or dismiss this action due to earlier-filed federal action, filed by Kedrin, Adelaida, and KMBG (collectively, KMBG).

**Motion for Bond.**

Legal Authority.

If a corporation is presented with, and refuses to enforce, a claim against third persons for damage to the corporation, a stockholder may under certain circumstances maintain a derivative suit on the corporation's behalf. The corporation is named as a defendant (or involuntary plaintiff) in such actions because of its refusal to sue as plaintiff. Nonetheless, the corporation is the real party in interest in the claim sued upon. (*Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 107; *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 311-312; see also *Sprengel v. Zbylut* (2019) 40 Cal.App.5th 1028, 1040-1041.)

In a derivative action, the Court may require that the plaintiff furnish security upon motion by the limited liability company or the defendant. The purpose of this provision is "to prevent unwarranted shareholder derivative lawsuits." (*Donner Management Co. v. Schaffer* (2006) 142 Cal.App.4th 1296, 1305 [*Donner Management*].)

---

[6] Also before the Court is a demurrer filed by KMBG. Because Plaintiff filed his FAC before his deadline to oppose the demurrer, the demurrer is moot and will go off calendar. (Code Civ. Proc., § 472.)

EXHIBIT D - 004

A defendant moving for a security shall establish, via written and oral evidence, a "probability" that "there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the limited liability company or its members." (Corp. Code, § 800(c)(1), (d) [moving party must establish "a probability in support of any of the grounds upon which the motion is based"].) "In assessing whether there is no reasonable possibility the action will benefit the corporation, the court 'must evaluate the possible defenses which the plaintiffs would have to overcome before they could prevail at trial.' (Citation.)" (*Donner Management, supra,* 142 Cal.App.4th at pp. 1303-1304.)

The security shall not exceed $50,000 "in the aggregate for all defendants." (Corp. Code, § 800(e).)

<u>Discussion.</u>

As noted, Plaintiff has three derivative causes of action: breach of fiduciary duty, corporate waste, and declaratory relief. The FAC centers around Defendant's alleged sale of one of ATA's most valuable assets, the Ranches. (FAC, ¶ 1)

"The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach. [Citation.]" (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 646, quoting *Mosier v. Southern Cal. Physicians Ins. Exchange* (1998) 63 Cal.App.4th 1022, 1044.)

In support of his breach of fiduciary duty claim, Plaintiff alleges that Defendants "violated and are continuing to violate their fiduciary duties...by selling ATA's property in order to profit and protect their own interests rather than acting in ATA's and ATA Ranches' interests." (FAC, ¶ 77.) Plaintiff further alleges this wrongful conduct, unless abated by order of the Court, will cause great and irreparable injury to Plaintiff because the Ranches' sale is imminent. (*Id.* at ¶ 80.) Plaintiff further alleges he has no adequate remedy at law for these injuries, and that an award of monetary damages would be inappropriate because the Ranches are "one-of-a-kind properties that have been in Plaintiff's family since the 1980's." (*Id.* at ¶ 81.)

Similarly, with his corporate waste claim, Plaintiff alleges Defendants have authorized ATA to sell the Ranches at a price lower than its own appraisals to ensure Defendants have a reserve fund to indemnify themselves for any judgment against them in the Federal Action. (FAC, ¶ 84.) Plaintiff also alleges that the Defendants have agreed to permit Adelaida to keep the current 2023 grape crop harvest from ATA's properties without Adelaida paying ATA any compensation for the grapes, or rent for use of the Ranches. (*Ibid.*)

Plaintiff's declaratory relief claim also centers around the alleged sale of the Ranches. Plaintiff alleges the LOI and any agreement to sell the Ranches were and are invalid and unenforceable, or at least voidable. (FAC, ¶ 87.) Plaintiff alleges Defendants are using the proceeds of the Ranches' sale to indemnify themselves in the Federal Action, and Plaintiff desires a judicial determination and declaration on these issues. (*Id.* at ¶¶ 88, 90.)

The crux of ATA's motion is that the sale of the Ranches has not, and will not, go forward.

5

According to ATA, Mount Paso informed ATA "it was ending all negotiations related to the
Purchase and Sale Agreement and would no longer be pursuing the purchase of [the Ranches]
because Mount Paso had received a phone call from Plaintiff's attorney threatening litigation if
the sale was completed." (Mtn. for Bond, p. 1, fn. 1.) ATA further states that, since Mount Paso
withdrew from the deal, ATA has had no further negotiations or contact with potential buyers.

Thus, ATA argues, there is a probability that Plaintiff has no reasonable possibility of prevailing
on his claims, because those claims relate to a potential sale that did not and will not occur. ATA
also argues Plaintiff has no damages from a sale that did not and will not occur. Further, ATA
argues any potential declaratory relief is not ripe, because no sale has occurred and no actual
controversy exists.

In opposition, Plaintiff alleges ATA breached fiduciary duties by "ignoring more valuable offers
for the sale of the Ranches in favor of a transaction that provided greater benefit to Kedrin and
her winery, allowing to keep the 2023 grape crop." (Opp., p. 11, ll. 24-26.) Plaintiff also argues
ATA "breached their fiduciary duties by deciding to earmark any proceeds of the sale of the
Ranches for the indemnification" of various Defendants in the Federal Action. (Opp., p. 11, l. 26
– p. 12, l. 1.) Plaintiff does not, however, dispute that the sale to Mount Paso did not occur.
Plaintiff has not explained how the controversy regarding a sale that did not occur and is not
currently contemplated constitutes an actual controversy.

As to Plaintiff's claim regarding the 2023 grape crop harvest, offered in support of Plaintiff's
second cause of action for corporate waste, ATA argues that this allegation is misleading and
inaccurate. ATA argues that the LOI stated that the 2023 grape crop would stay with ATA
Ranches, which would retain all rights and interest in the 2023 grape crop. Thus, according to
ATA, Plaintiff's allegation that ATA agreed to permit Adelaida to keep the current 2023 grape
crop harvest without having to pay ATA any compensation is false. ATA argues that Adelaida
has already paid more than $500,000 to ATAR for the 2023 grape crop and will pay in excess of
$1,000,000 by the time grapes are harvested. (Carter decl., ¶ 5.) Moreover, given that the sale to
Mount Paso did not go forward, it is unclear whether this allegation is ripe.

At argument, Plaintiff contended that the potential transaction with Mount Paso, which has now
apparently been abandoned, is not the focus of the case and that in fact it was the other
purportedly oral offers for larger sums, which defendants passed on, that constitute the focus of
the alleged breach of fiduciary duty. This is not a fair characterization of the complaint. While
those potential offers are mentioned in the complaint, they are alleged to be evidence of the
defendants' misconduct in accepting the Mount Paso offer (at allegedly lower value) not as a
basis for liability. The thrust of the bond motion was directed at the claim presented in the
complaint, and it demonstrated that Plaintiff has no reasonable possibility of prevailing on that
claim. The moving parties have met their burden and the motion will be granted.

**Motion to Stay.**

KMBG moves to stay and/or dismiss this action in favor of the Federal Action. KMBG moves on
the basis that this action is substantially similar to the claims at issue in the Federal Action such
that this action should yield to the earlier-filed Federal Action. (Code Civ. Proc., § 410.30.)

6

KMBG further argues that Plaintiff filed the instant lawsuit "to avoid the federal court's jurisdiction." (Mtn., p. 1, ll. 22-23.) KMBG argues that Plaintiff is attempting to obtain discovery in this action because discovery has closed in the Federal Action.

In the Federal Action, Plaintiff names as defendants Kedrin, Adelaida, Pierce, Philip Gobe, Philip Longorio, Gene Durocher, McCoy, Carter, and Duggan. (Tricker decl., ¶ 6.) Kedrin, Adelaida, Pierce, McCoy, Carter, and Duggan are named Defendants in this action; Gobe, Longorio, and Durocher are not.

KMBG describes the operative complaint in the Federal Action, which is the fourth amended complaint, and includes the following causes of action: (1) derivative claim for breach of fiduciary duty; (2) derivative claim for corporate waste; (3) derivative claim for an accounting; (4) derivative claim for declaratory relief; (5) direct claim for breach of fiduciary duty; (6) direct claim for aiding and abetting breach of fiduciary duty; and (7) direct claim for order compelling production of corporate records.

KMBG argues that the value of the Ranches is a central focus of the Federal Action. KMBG notes that in the Federal Action, Defendants' non-retained expert values the Ranches at $28.3 million as of July 22, 2021; Plaintiff's experts valued the Ranches at $16.85. (Tricker decl., ¶ 11.)

The prices at which ATA sells its grapes is also a focus of the Federal Action. KMBG notes that the complaint in this action also includes allegations that ATA sells its grapes at discounted prices.

"When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (Code Civ. Proc., § 410.30(a).) The equitable doctrine of forum non conveniens "recognizes a trial court's authority to determine an action may be more appropriately and justly tried elsewhere. [Citation.]" (*Century Indemnity Co. v. Bank of America* (1997) 58 Cal.App.4th 408, 412, internal quotations omitted.)

"It is black letter law that, when a federal action has been filed covering the same subject matter as is involved in a California action, the California court has the discretion but not the obligation to stay the state court action." (*Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 cal.App.4th 800, 804.) The Court, in its discretion, declines to stay this action.

Some, but not all, of the claims alleged in this action are similar to the claims in the federal Action. Some, but not all, of the Defendants in this action are also named in the Federal Action[7]. Most importantly, the thrust of the claims in this action center around a proposed sale of property in San Luis Obispo County. According to Plaintiff, he did not learn about this sale until 2023.

---

[7] As noted by ATA in the motion for bond: "[T]he majority of the Board of Directors who authorized the transaction at issue in this case are not defendants in the 2020 federal litigation. These directors include CEO Westley Shedd, Gordon Thomson, and Steve Orr. Kedrin Van Steenwyk also abstained from voting on the transaction at issue. See Carter Decl., Ex. B." (Mtn. for Bond, p. 4, ll. 1-4.)

EXHIBIT D - 007

The Federal Action was filed in 2020; thus, this proposed sale could not have formed the basis for any claims in the Federal Action.

## ORDERS

The motion for bond pursuant to Corporations Code section 800(c), filed by Nominal Defendants Applied Technologies Associates, Inc. and ATA Ranches, Inc. is granted.

The motion to stay and/or dismiss this action due to earlier-filed federal action, filed by Defendants Kedrin E. Van Steenwyk, Adelaida Cellars, Inc., and KMBG, LLC, is denied.

Each of the moving parties is directed to prepare the proposed orders associated with their respective motions.

8

# STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO
## CERTIFICATE OF MAILING

| Matthew Van Steenwyk vs. Kedrin Van Steenwyk | 23CVP-0146 |
|---|---|

Matthew D Umhofer
UMHOFER, MITCHELL & KING, LLP
767 S. Alameda Street, Suite 270
Los Angeles, CA  90021

Timothy W Fredricks
WINGET SPADAFORA & SCHWARTZBERG LLP
1800 Century Park East, Suite 205
Los Angeles, CA  90067

Johnny L Antwiler
2615 Pacific Coast Highway, Ste. 300
Hermosa Beach, CA  90254

I, Victoria Miller, Deputy Clerk of the Superior Court of the State of California, County of San Luis Obispo, do hereby certify that I am over the age of 18 and not a party to this action.  Under penalty of perjury, I hereby certify that on **11/16/2023** I deposited in the United States mail at Paso Robles California, first class postage prepaid, in a sealed envelope, a copy of the attached **Ruling on Submitted Matter.** The foregoing document was addressed to each of the above parties.

OR

If counsel has a pickup box in the Courthouse a copy was placed in said pickup box this date.

OR

☒ Document served electronically pursuant to CRC§2.251(b)(1)(B).

Dated:  11/16/2023          Michael Powell, Clerk of the Court

By:    /s/ Victoria Miller_____Deputy Clerk
              Victoria Miller

# EXHIBIT E

| **SUPERIOR COURT OF SAN LUIS OBISPO COUNTY**<br>**San Luis Obispo,** 1035 Palm Street, Rm 385<br> San Luis Obispo, CA  93408<br>**Paso Robles Branch**, 901 Park Street, Paso Robles, CA  93446 | **CASE NUMBER**<br><br>**23CVP-0146** |
|---|---|
| Matthew Van Steenwyk vs. Kedrin Van Steenwyk | 5/22/2024 |

**Judge:** Honorable Michael C Judge Kelley
**Clerk:** Kimberly Hernandez


The Court sets an Order to Show Cause re: Discovery Referee 06/04/2024 9:00 a.m. P2 in the matter of 23CVP-0146 Matthew Van Steenwyk vs. Kedrin Van Steenwyk.


The Court is in receipt of Plaintiff Matthew D. Van Steenwyk's "Omnibus motion to compel and request for monetary sanctions," which combines several discovery motions into one motion:

1. Plaintiff's motion to compel deposition attendance of Kedrin Van Steenwyk;
2. Plaintiff's motion to compel Kendrin Van Steenwyk's responses to form interrogatories, set one;
3. Plaintiff's motion to compel KMBG, LLC's responses to form interrogatories, set one;
4. Plaintiff's motion to compel Adelaida Cellars, Inc.'s responses to form interrogatories, set one;
5. Plaintiff's motion to compel Applied Technologies Associates, Inc.'s responses to form interrogatories, set one;
6. Plaintiff's motion to compel ATA Ranches, Inc.'s responses to form interrogatories, set one;
7. Plaintiff's motion to compel Daniel Carter's responses to form interrogatories, set one;
8. Plaintiff's motion to compel Steve Orr's responses to form interrogatories, set one;
9. Plaintiff's motion to compel Gordon Thomson's responses to form interrogatories, set one;
10. Plaintiff's motion to compel Kieran Duggan's responses to form interrogatories, set one;
11. Plaintiff's motion to compel Joseph McCoy's responses to form interrogatories, set one;
12. Plaintiff's motion to compel Wesley Shedd's responses to form interrogatories, set one;
13. Plaintiff's motion to compel Pamela Pierce's responses to form interrogatories, set one;
14. Plaintiff's motion to compel Kendrin Van Steenwyk's responses to request for production, set one;

15. Plaintiff's motion to compel KMBG, LLC's responses to request for production, set one;

16. Plaintiff's motion to compel Adelaida Cellars, Inc.'s responses to request for production, set one;

17. Plaintiff's motion to compel Applied Technologies Associates, Inc.'s responses to request for production, set one;

18. Plaintiff's motion to compel ATA Ranches, Inc.'s responses to request for production, set one;

19. Plaintiff's motion to compel Daniel Carter's responses to request for production, set one;

20. Plaintiff's motion to compel Steve Orr's responses to request for production, set one;

21. Plaintiff's motion to compel Gordon Thomson's responses to request for production, set one;

22. Plaintiff's motion to compel Kieran Duggan's responses to request for production, set one;

23. Plaintiff's motion to compel Joseph McCoy's responses to request for production, set one;

24. Plaintiff's motion to compel Wesley Shedd's responses to request for production, set one;

25. Plaintiff's motion to compel Pamela Pierce's responses to request for production, set one;

26. Plaintiff's motion for an order overruling Defendant Adelaida's attorney-client privilege and attorney work product privilege objections concerning documents produced by third-party witness Zepponi & Company, brought under Code of Civil Procedure section 2031.285.

As indicated, this motion is 26 motions in one. Rather than obtain 26 law and motion settings, Plaintiff seeks to obtain just one law and motion setting, based on the Court's prior instructions to "obtain one law and motion setting per discovery set." (Emphasis added.)

There are 26 sets at issue, not one. The form interrogatories, set one, to Kedrin Van Steenwyk, for example, is one discovery set. The requests for production, set one, to Kedrin Van Steenwyk is one discovery set. The Court does not have the judicial resources to entertain 26 discovery motions in one law and motion setting. These motions would take up an entire law and motion calendar, if not several. Plaintiff must also pay the appropriate filing fee for each of the 26 motions, rather than one fee for all 26 motions.

The Court finds it necessary to issue an order to show cause why a discovery referee should not be appointed in this matter. Counsel is ordered to attend a hearing on the OSC on June 4, at 9:00 a.m. in Department P2. Appearances may be made in person or via Zoom.

The Court will take in the "Omnibus" filing with a note that the hearing date and time will be discussed at the June 4, 2024 OSC.

# STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO
# CERTIFICATE OF MAILING

| Matthew Van Steenwyk vs. Kedrin Van Steenwyk | 23CVP-0146 |
| --- | --- |

Matthew D Umhofer
UMHOFER, MITCHELL & KING, LLP
767 S. Alameda Street, Suite 270
Los Angeles, CA  90021

Timothy W Fredricks
WINGET SPADAFORA &
SCHWARTZBERG LLP
1800 Century Park East, Suite 205
Los Angeles, CA  90067

Johnny L Antwiler
2615 Pacific Coast Highway, Ste. 300
Hermosa Beach, CA  90254

matthew@umklaw.com
fredricks.t@wssllp.com
jantwiler@ohaganmeyer.com

II, Kimberly Hernandez, Deputy Clerk of the Superior Court of the State of California, County of San Luis Obispo, do hereby certify that I am over the age of 18 and not a party to this action. Under penalty of perjury, I hereby certify that on **05/22/2024** I deposited in the United States mail at Paso Robles, California, first class postage prepaid, in a sealed envelope, a copy of the attached **Miscellaneous Minute Order.** The foregoing document was addressed to each of the above parties.

OR

___X__ Document served electronically pursuant to CRC§2.251(b)(1)(B).

Dated:  5/22/2024          Michael Powell, Clerk of the Court

By:   __/s/Kimberly Hernandez,_ Deputy Clerk
Kimberly Hernandez

EXHIBIT E - 003

# EXHIBIT F

**CIV-110**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY    STATE BAR NUMBER: 206607<br>NAME: Matthew Donald Umhofer<br>FIRM NAME: Umhofer, Mitchell & King LLP<br>STREET ADDRESS: 767 South Alameda Street, Suite 270<br>CITY: Los Angeles    STATE: CA    ZIP CODE: 90021<br>TELEPHONE NO.: (213) 394-7979    FAX NO.: (213) 529-1027<br>E-MAIL ADDRESS: matthew@umklaw.com<br>ATTORNEY FOR (name): Plaintiff Matthew Van Steenwyk | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY**<br>**FILED**<br>**8/27/2024 5:39 PM**<br>SAN LUIS OBISPO SUPERIOR COURT<br>BY<br>Julie Vierra, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN LUIS OBISPO
STREET ADDRESS: 901 Park Street
MAILING ADDRESS:
CITY AND ZIP CODE: Paso Robles 93446
BRANCH NAME: Paso Robles

PLAINTIFF/PETITIONER: Matthew D. Van Steenwyk, et al.

DEFENDANT/RESPONDENT: Kedrin E. Van Steenwyk, et al.

| | |
|---|---|
| **REQUEST FOR DISMISSAL** | CASE NUMBER:<br>23CVP-0146 |

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. TO THE CLERK: Please **dismiss** this action as follows:
    a. (1) ☐ With prejudice    (2) ☒ Without prejudice
    b. (1) ☐ Complaint    (2) ☐ Petition
       (3) ☐ Cross-complaint filed by (name):                                    on (date):
       (4) ☐ Cross-complaint filed by (name):                                    on (date):
       (5) ☒ Entire action of all parties and all causes of action
       (6) ☐ Other (specify):*

2. (Complete in all cases except family law cases.)
    The court ☐ did    ☒ did not  waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed.)

Date: August 27, 2024

Matthew Donald Umhofer
_____
(TYPE OR PRINT NAME OF  ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed

▶ _____
(SIGNATURE)

Attorney or party without attorney for:
☒ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
Date:

_____
(TYPE OR PRINT NAME OF  ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

** If a cross-complaint - or Response (Family Law) seeking affirmative relief - is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

▶ _____
(SIGNATURE)

Attorney or party without attorney for:
☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

_____
(To be completed by clerk)

4. ☒ Dismissal entered as requested  on (date):8/27/2024 5:39 PM
5. ☐ Dismissal entered on (date):                              as to only (name):
6. ☐ Dismissal **not entered** as requested for the following reasons (specify):

8/29/2024

7. a. ☒ Attorney or party without attorney notified  on (date):                    **All future hearings vacated.**
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed          ☐ means to return conformed copy

Date:  8/27/2024 5:39 PM _____    Clerk, by _____ /s/Michael Powell , Deputy

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. January 1, 2013] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.;<br>Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390<br>www.courts.ca.gov |

EXHIBIT F - 001

**CIV-110**

| PLAINTIFF/PETITIONER:  Matthew D. Van Steenwyk, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Kedrin E. Van Steenwyk, et al. | 23CVP-0146 |

## COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*

   a. ☐ not recovering anything of value by this action.

   b. ☐ recovering less than $10,000 in value by this action.

   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. All court fees and court costs that were waived in this action have been paid to the court *(check one):*  ☐ Yes  ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____                    ▶ _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                          (SIGNATURE)

| | |
|---|---|
| CIV-110 [Rev. January 1, 2013] | **REQUEST FOR DISMISSAL** |

**Page 2 of 2**

EXHIBIT F - 002

# EXHIBIT G

1   UMHOFER, MITCHELL & KING LLP
    Matthew Donald Umhofer (SBN 206607)
2   J. Anthony King (SBN 297279)
    Diane H. Bang (SBN 271939)
3   767 S. Alameda St., Suite 270
    Los Angeles, California 90021
4   Telephone: (213) 394-7979
    Facsimile: (213) 529-1027
5   matthew@umklaw.com
    anthony@umklaw.com
6   dbang@umklaw.com
    *Attorneys for Plaintiff Matthew D. Van Steenwyk*
7

ELECTRONICALLY

FILED

12/8/2023 5:56 PM

SAN LUIS OBISPO SUPERIOR COURT
BY _____
Julie Vierra, Deputy Clerk

8                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE COUNTY OF SAN LUIS OBISBO**

10

11   MATTHEW D. VAN STEENWYK,
     Individually as Trustee and Beneficiary of
12   The Matthew Van Steenwyk GST Trust and
     The Matthew Van Steenwyk Issue Trust, and
13   as Co-Trustee of The Gretchen Marie Van
     Steenwyk-Marsh GST Trust and The
14   Gretchen Marie Van Steenwyk-Marsh Issue
     Trust; and derivatively on behalf of Nominal
15   Defendants APPLIED TECHNOLOGIES
     ASSOCIATES, INC., and ATA RANCHES,
16   INC.,

17                        Plaintiffs,

18          v.

19   KEDRIN E. VAN STEENWYK,
     Individually, as Successor Trustee of the
20   Donald H. Van Steenwyk and Elizabeth A.
     Van Steenwyk 1996 Revocable Trust;
21   DANIEL CARTER, Individually; KIERAN
     DUGGAN, Individually; PAMELA PIERCE,
22   Individually; JOSEPH MCCOY,
     Individually; STEVE ORR, Individually;
23   WESLEY SHEDD, Individually; GORDON
     THOMSON, Individually; ADELAIDA
24   CELLARS, INC.; and KMBG, LLC, and
     DOES 1 through 10 inclusive,
25
                         Defendants.
26

Case No. 23CVP-0146

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF IMPOSITION OF BOND PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 800(c)**

Date:   TBD
Time:  TBD  **3-5-24**
Dept.:  P-2   **9:00 AM**
Judge: Hon. Michael C. Kelley

Complaint Filed: May 1, 2023
Trial Date: Not set

27

28

---

*PLAINTIFF'S MOTION FOR RECONSIDERATION OF IMPOSITION OF BOND PURSUANT TO CALIFORNIA CORPORATIONS CODE § 800(c)*

**TO ALL DEFENDANTS AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on _____3-5-2024_____, at _9:00 AM_, or as soon thereafter as the matter may be heard, in Department P-2 of the above entitled Court, Plaintiff Matthew Van Steenwyk, through his attorneys, will move and hereby does move the Court pursuant to California Code of Civil Procedure section 1008 to request reconsideration of the Court's order granting Nominal Defendants Applied Technologies Associates, Inc. and ATA Ranches, Inc.'s, motion pursuant to California Corporations Code section 800(c) for the imposition of a bond.

The order should be rescinded on the following grounds: Plaintiff's Second Amended Complaint does not contain any derivative causes of action on behalf of Nominal Defendants Applied Technologies Associates, Inc. and/or ATA Ranches, Inc. Accordingly, California Corporations Code section 800 no longer applies to any claim in this action and the imposition of a bond is unnecessary and unsupported.

This motion is based on this notice, the pleadings, records, and files in this action, the attached memorandum of points and authorities, the attached declaration of Diane Bang, and oral argument to be presented at the hearing.

DATED:  December 8, 2023               UMHOFER, MITCHELL & KING, LLP

                                       By: _____
                                       Matthew Donald Umhofer
                                       J. Anthony King
                                       Diane Bang
                                       Attorneys for Matthew Van Steenwyk

ii

*PLAINTIFFS' MOTION FOR RECONSIDERATION OF IMPOSITION OF BOND PURSUANT TO CALIFORNIA CORPORATIONS CODE § 800(c)*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Matthew Van Steenwyk ("Plaintiff") requests the Court reconsider its ruling that a bond is required pursuant to California Corporations Code section 800(c) ("Section 800") because, due to new facts and circumstances, it is no longer necessary and contrary to law. See Cal. Civ. Code Proc. § 1008(a). Plaintiff's concurrently filed Second Amended Complaint ("SAC") alleges only direct causes of action and does not allege any derivative claims on behalf of Applied Technologies Associates, Inc. ("ATA") and ATA Ranches, Inc. ("ATA-R") or any other corporation.

By the clear terms of the statute, Section 800(c)[1] applies only to shareholder derivative suits brought on behalf of the nominal defendant corporations. Plaintiff's SAC does not allege any derivative causes of action. There is no mechanism for the imposition of a bond for claims for breach of fiduciary duty, breach of contract, failure to comply with California Corporations Code section 1600, and declaratory and injunctive relief when they are asserted **directly** against a controlling shareholder or directors and officers of a corporation and not derivatively on behalf of the corporation itself. Accordingly, there is no longer a factual basis or statutory authority for the imposition of any bond pursuant to Section 800(c).

Plaintiff respectfully requests the Court rescind its ruling imposing a bond pursuant to Section 800(c).

**II.    STATEMENT OF FACTS**

Over three years ago, Plaintiff filed a lawsuit in the Central District of California (the "2020 Shareholder Litigation"), alleging that Defendant Kedrin Van Steenwyk and other defendants were using company assets and resources to subsidize her pet project winery, Adelaida Cellars, Inc. ("Adelaida").

In March 2023, Defendants caused ATA Ranches to enter into a letter of intent ("LOI") to sell two ranch properties owned by ATA in order to create a slush fund to indemnify Kedrin and her cohorts for liability in the 2020 Shareholder Litigation at the expense of the other shareholders. Plaintiff was alerted to this fact during a call with Defendants Pamela Pierce and Daniel Carter in

---

[1] All statutory references are to the California Corporations Code unless otherwise specified.

3

March 2023 when details of the sale of the Ranches emerged.

On May 1, 2023, Plaintiff filed this case to obtain information about the sale that Defendants were refusing to provide and stop this indemnification scheme from occurring. Plaintiff's initial complaint in this case alleged derivative claims for breach of fiduciary duty, corporate waste, and declaratory relief on behalf of Nominal Defendants ATA and ATA-R, and direct claims for breach of fiduciary duty by a controlling shareholder, aiding and abetting breach of fiduciary duty, production of corporate records, against Kedrin, the director and officer defendants, Adelaida, KMBG, ATA, and ATA-R. (Declaration of Diane Bang in Support of Motion for Reconsideration ("Bang Decl.") ¶ 2.) Plaintiff subsequently filed a First Amended Complaint on October 10, 2023, adding claims for breach of contract against ATA and ATA-R, and for violation of Colorado Rev. Stat. sec. 7-80-408 against KMBG. (Bang Decl. ¶ 3.)

The Original Complaint and the First Amended Complaint alleged that Kedrin, her companies Adelaida and KMBG, and ATA Directors and Officers were: (i) selling the Ranches at a price that was millions of dollars below what their own appraisers had valued the Ranches at, causing harm to ATA; and (ii) rather than distributing the proceeds to shareholders, the funds from the sale of the Ranches would be kept by ATA to indemnify Kedrin and directors and officers for any judgment levied against them in the 2020 Shareholder Litigation.

However, after the lawsuit was filed, Defendants have since taken the position that the sale of the Ranches did not go through and that negotiations have been abandoned. ATA used this as a basis to file a motion pursuant to Section 800(c), requesting that Plaintiff be ordered to file a bond (the "Section 800 Motion") because Plaintiff's three derivative claims for breach of fiduciary duty, corporate waste, and declaratory relief were unlikely to benefit the company because no sale occurred. (Bang Decl. ¶ 4.)

Following a hearing on November 14, 2023, the Court issued an opinion on November 15, 2023, granting the Section 800(c) Motion without specifying the amount of the bond, based upon the fact that the sale of the property was apparently no longer pending. (Bang Decl. ¶ 5.) In its ruling, the Court stated that Plaintiff's "FAC centers around Defendant's alleged sale of one of ATA's most valuable assets, the Ranches." (Nov. 15, 2023 Ruling at 5.) The Court went on to note that the crux

4

of ATA's Section 800 Motion "is that the sale of the Ranches has not, and will not, go forward." (Id.)  In determining that the Section 800 Motion should be granted, the Court stated, inter alia, (1) that "Plaintiff has not explained how the controversy regarding a sale that did not occur and is not currently contemplated constitutes an actual controversy;" and (2) "given that the sale to Mount Paso did not go forward, it is unclear whether this allegation is ripe."  (Id. at 6.) The ruling asked ATA and ATA-R to provide a proposed order. (Id.)

ATA and ATA-R filed a proposed order on December 1, 2023, requesting a $50,000 bond, the statutory maximum. (Bang Decl. ¶ 6.) However, ATA and ATA-R's request for $50,000 was made without any justification or support as to why the maximum was necessary.

In order to address the concerns raised by the Court and Defendants in their demurrers, Plaintiff has filed a motion for leave to file a Second Amended Complaint ("SAC"). (Bang Decl. ¶ 7.)  The SAC does not allege any derivative causes of action on behalf of ATA or ATA-R or any other entity. (Id.)

On December 6, 2023, counsel for Plaintiff contacted counsel for Defendants to request agreement for leave to file the SAC and to waive the bond requirement on the basis that the SAC would not allege any derivative causes of action. (Bang Decl. ¶ 8.) Counsel for Defendants refused to stipulate to either of these requests. (Id.)

### III. **ARGUMENT**

Plaintiff requests the Court reconsider its prior ruling and rescind the order for a bond pursuant to Section 800(c) because Plaintiff's SAC does not contain any derivative causes of action and, accordingly, there is no longer any statutory authority for the imposition of a bond. The Court has authority under CCP 1008(a) and under its inherent authority to revoke the bond order.

"After an order is granted by a court, any party affected by the order may seek reconsideration based upon a showing of new or different facts." Glade v. Glade, 38 Cal. App. 4th 1441, 1457 (1995) (citing CCP 1008(a)). CCP section 1008(a) states:

> When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order.

5

The Court has "broad discretion" in ruling on motions for reconsideration. Monroy v. City of Los Angeles, 164 Cal. App. 4th 248, 265 (2008) (citing Horning v. Shilberg, 130 Cal. App. 4th 197, 208-09 (2005); County of Los Angeles v. James, 152 Cal. App. 4th 253, 256 (2007)). Plaintiff easily meets the requirements of CCP 1008(a).

*First*, the different facts and circumstances are obvious. The Court granted ATA and ATA-R's motion under Section 800, which applies only to actions "instituted or maintained in right of any domestic or foreign corporation by any holder of shares or of voting trust certificates[,]" i.e. shareholder derivative actions. Cal. Corp. Code § 800. "Section 800 addresses the terms and conditions under which a **shareholder derivative action** may be maintained." W. Hills Farms, Inc. v. RCO Ag Credit, Inc., 170 Cal. App. 4th 710, 715 (2009) (emphasis added) (citing Hale v. S. Cal. IPA Med. Grp., Inc., 86 Cal. App. 4th 919, 922 (2001). Section 800 applies **only** to shareholder derivative actions. Plaintiff's SAC does not allege any derivative causes of action. A proposed amended complaint is sufficient to support the "new or different facts, circumstances, or law" requirement in CCP 1008(a). Rains v. Superior Ct., 150 Cal. App. 3d 933, 944 (1984). ("'[A]lleged different state of facts' required under subdivision (a) may be properly alleged in an unverified proposed amended complaint.").

Accordingly, because there are no derivative claims, there is no longer any authority to impose a bond under Section 800(c).

*Second*, Plaintiff's motion is timely and within the ten days set by CCP 1008(a). While ATA and ATA-R filed a proposed order on December 1, 2023, the Court has not yet entered any order and there has been no service of the notice of entry of the order. The ten days in CCP 1008(a) starts to run from the date of "service of the notice of entry and not from the clerk's service of the" order. Forrest v. Dep't of Corps., 150 Cal. App. 4th 183, 203 (2007).

Even if the Court were to consider the motion untimely, CCP 1008(a) does not limit the Court's ability to "reconsider its prior interim orders." Le Francois v. Goel, 35 Cal. 4th 1094, 1107 (2005); see also Kerns v. CSE Ins. Grp., 106 Cal. App. 4th 368, 389-90 (2003) (CCP 1008 is "intended to regulate the actions of parties to a civil litigation rather than the inherent powers of the trial court itself."). "The requirements of Code of Civil Procedure section 1008 are not jurisdictional

*PLAINTIFF'S MOTION FOR RECONSIDERATION OF IMPOSITION OF BOND PURSUANT TO CALIFORNIA CORPORATIONS CODE § 800(c)*

1    and do not divest a court of its inherent power to correct its interim rulings." <u>Magallanes v. Superior</u>

2    <u>Ct.</u>, 167 Cal. App. 3d 878, 882 (1985).

3        Without a derivate cause of action, Section 800(c) does not apply to this case and no bond can

4    be imposed on Plaintiff.

5    **IV.    <u>CONCLUSION</u>**

6        Based on the foregoing, Plaintiff respectfully requests the Court rescind the order imposing a

7    bond pursuant to Section 800(c).

8

9    DATED:  December 8, 2023              UMHOFER, MITCHELL & KING, LLP

10

11                                        By: _____

12                                            Matthew Donald Umhofer
                                             J. Anthony King
                                             Diane Bang

13                                           Attorneys for Matthew Van Steenwyk

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

*PLAINTIFF'S MOTION FOR RECONSIDERATION OF IMPOSITION OF BOND PURSUANT TO CALIFORNIA CORPORATIONS CODE § 800(c)*

# EXHIBIT H



U.S.D.C. CENTRAL DISTRICT OF CALIFORNIA
2:20-cv-02375-FLA-AFM
CASE NO._____
MATTHEW D. VAN STEENWYK
VS.
KEDRIN E. VAN STEENWYK
PLAINTIFF'S EXHIBIT  **259**
DATE_____IDEN.
DATE_____EVID.
BY_____
Deputy Clerk

# NOTICE OF SPECIAL MEETING OF THE DIRECTORS
## OF
## SCIENTIFIC DRILLING INTERNATIONAL, INC.
### AND
## APPLIED TECHNOLOGIES ASSOCIATES, INC.

Notice is hereby given that Pamela S. Pierce has called a special meeting of the directors of APPLIED TECHNOLOGIES ASSOCIATES, INC., a California corporation, and SCIENTIFIC DRILLING INTERNATIONAL, INC., a Texas corporation, to be held Monday, June 28, 2021, immediately following the previously scheduled 2020 Audit Review. The meeting subject is ATA RANCHES, INC.

The meeting will be held virtually; you will receive a calendar invitation by email with instructions for participation by Microsoft Teams.

DATED: Wednesday, June 23, 2021



Daniel R Carter, Secretary





**Monday, June 28, 2021**
# Special Board of Directors Meeting



MVS-011694
EXHIBIT H - 002

# ATA Ranches

S D I – C O N F I D E N T I A L   &   P R O P R I E T A R Y



Ex. 259 - 3

MVS-011695
EXHIBIT H - 003



# ATA Ranches

## Overview

➢ ATA Ranches, Inc., a Delaware corporation, is a wholly owned subsidiary of ATA ("ATAR").

➢ ATAR was formed in 2018 as a necessary part of Project Satellite. Specifically, buyers interested in purchasing SDI and ATA were necessarily disinterested in purchasing the ranching and agricultural properties. When incorporated in November 2018, it was anticipated that ATAR would be spun off to the shareholders immediately prior to consummation of the sale.

➢ At the point of creation, the net book value of the ATAR assets was ~$1,900,000 with $2,000,000 cash issued at commencement as a capital contribution.

➢ ATAR owns ~1,050 acres with ~168 acres under grapes and ~179 acres under walnuts.

S D I  –  C O N F I D E N T I A L  &  P R O P R I E T A R Y



Ex. 259 - 4

MVS-011696
EXHIBIT H - 004



# ATA Ranches

## Currently

➤ ATAR grows and sells grapes to Adelaida Cellars at the contract rate.

- ➤ Contract rate is 94% of the reported average District 8 crush price.
- ➤ The contract is "take or pay" requiring Adelaida Cellars to take all grapes grown regardless of quality or volume.
- ➤ Average Annual Revenue: $650,000-$700,000
- ➤ Average Annual Operating Expenses: $2,200,000-$2,400,000

➤ Adelaida Cellars pays the salaries and benefits for ATAR employees and charges the cost back to ATAR.

- ➤ ATAR employee salaries: $550,000-$600,000 annually

➤ ATAR is responsible for all capital expenditures including:

- ➤ Land Improvements
- ➤ Vines
- ➤ Trees
- ➤ Machinery and Equipment
- ➤ Buildings

➤ ATAR is projected to run out of cash by end of June 2021.

3                                  SDI – CONFIDENTIAL & PROPRIETARY



MVS-011697
EXHIBIT H - 005



# ATA Ranches

## Proposed

➢ **ATAR invoices the cost of farming the property directly to Adelaida Cellars.**

> ➢ Monthly installment invoices, based on prior year expenses, will be sent to Adelaida Cellars.  Annual true-up to actual costs will take place at year-end.
> ➢ Adelaida Cellars will own all grapes and walnuts grown.  Third-party sales, if any, will be their responsibility and revenue.

➢ **ATAR will provide capital, at the sole discretion of ATA and based on economic justification, for:**

> ➢ Land Improvements
> ➢ Vines
> ➢ Trees
> ➢ Buildings

➢ **Adelaida Cellars will cover CAPEX associated with:**

> ➢ Machinery and Equipment

| | YTD-20 Actual | YTD-19 Actual | ATA | ACI |
|---|---|---|---|---|
| **Operating expenses** | | | | |
| Labor | **408,346** | 460,891 | | ✔ |
| Employee Related | **126,995** | 172,229 | | ✔ |
| Occupancy | **43,985** | 41,433 | | ✔ |
| Supplies and Equipment | **189,962** | 233,390 | | ✔ |
| Repairs & Maintenance | **316,505** | 175,871 | | ✔ |
| Taxes and Insurance | **48,396** | 33,779 | ✔ | |
| Outside Services | **885,002** | 862,559 | | ✔ |
| Other Expenses | **11,255** | 14,447 | | ✔ |
| Depreciation | **309,293** | 281,692 | ✔ | |
| **Total operating expenses** | **2,339,741** | **2,276,291** | | |
| Other Income | 31,655 | **4,724** | | ✔ |

4

S D I – C O N F I D E N T I A L & P R O P R I E T A R Y



Scientific Drilling

**Ex. 259 - 6**

MVS-011698
EXHIBIT H - 006



# ATA Ranches

## Action Requested

➢ Approval of the presented Proposal is requested, effective June 1, 2021.

S D I – C O N F I D E N T I A L  &  P R O P R I E T A R Y



Ex. 259 - 7

MVS-011699
EXHIBIT H - 007